**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**RUSSELL PATRICK and
MONA PATRICK,**

   Plaintiffs,

**v.**            **CIVIL ACTION NO. 3:12-CV-39
(JUDGE GROH)**

**TEAYS VALLEY TRUSTEES, LLC,
PHH MORTGAGE CORPORATION,
MORRIS HARDWICK SCHNEIDER, LLC,
INSTAMORTGAGE.COM, and
SCOTT STEWART,**

   Defendants.

**<u>AMENDED ORDER</u>**

   On this day, the above-styled matters came before the Court for consideration.

There are six motions pending before the Court.

   First, the Defendant InstaMortgage filed its "Motion to Dismiss InstaMortgage.com"

[Doc. 5] on May 2, 2012.  The Plaintiffs filed their "Response to Motion to Dismiss

InstaMortgage.com" [Doc. 7] on May 4, 2012.

   Second, the Defendants MHS, TVT, and Scott Stewart filed a Motion to Dismiss

Plaintiffs' Complaint [Doc. 9] pursuant to Rule 12(b)(6) on May 4, 2012.  The Plaintiffs filed

their "Response to Defendants Morris, Hardwick, Schneider, LLC, Teays Valley Trustees,

LLC, and Scott Stewart's Motion to Dismiss to Plaintiffs' Complaint" [Doc. 14] on May 16,

2012.  Then, the Plaintiffs filed their amended complaint [Doc. 13] on May 16, 2012

pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

Third, on June 4, 2012, the Defendants filed  "Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's Motion to Dismiss Plaintiffs' Second Amended Complaint" [Doc. 16].

On June 4, 2012, the fourth motion to be considered in this case was filed, the Defendant PHH Mortgage Corporation's  "Motion to Dismiss Certain Claims Asserted in Second Amended Complaint" [Doc. 17].  On June 14, 2012, Plaintiffs filed their Response to PHH Mortgage Corporation's Motion to Dismiss Certain Claims Asserted in Second Amended Complaint [Doc. 23] and their Response to Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 22].  On June 22, 2012, PHH Mortgage Company filed its Reply to Plaintiffs' Response [Doc. 26].

The fifth motion was filed on August 14, 2012; the Defendant PHH Mortgage Corporation's moved to file a surreply [Doc. 39].   On August 15, 2012, the Plaintiffs filed a "Response in Opposition to Defendant PHH Mortgage Corporation's Motion to File Surreply" [Doc. No. 41].  On August 22, 2012, the Defendant PHH Mortgage filed a Reply to Plaintiffs' Response [Doc. 42].

Last, on September 20, 2012, the Plaintiffs filed a Motion to Amend their Second Amended Complaint [Doc. 43].

On October 4, 2012, the Plaintiffs and the Defendants, Teays Valley Trustees, LLC, Morris Hardwick Schneider, LLC, and Scott Stewart filed a joint stipulation stating that they agree that the Defendants' "Motion to Dismiss the Second Amended Complaint and the Response are still properly before this Court for adjudication as the Third Amended Complaint sought to be filed by the Plaintiffs, does not change or alter the claims against

2

the Defendants TVT, MHS, and Stewart." [Doc. 44].

## I. JURISDICTION

This Court begins its analysis by examining the basis for jurisdiction.  The Defendants removed the case from the Circuit Court of Jefferson County, West Virginia to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1441 and 1446. [Doc. 3].  The Defendants alleged that this Court had jurisdiction pursuant to diversity under 28 U.S.C. § 1332.  In order for a court to exercise diversity jurisdiction, there must be complete diversity, which requires that no party shares common citizenship with any part on the other side.  ***Strawbridge v. Curtiss***, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).  To determine an LLC's citizenship for diversity, an LLC's citizenship is that of its members.  ***Gen. Tech. Applications, Inc. v. Extro Ltd.***, 388 F.3d 114, 120-22 (4th Cir. 2004).  For an LLC to be completely diverse, all partners, members, or stockholders must be diverse. ***Id.***  To determine a corporation's citizenship for purposes of diversity, a corporation is a citizen of both its state of incorporation and its principal place of business.  **28 U.S.C. § 1332(c)(1)**.  *See* ***Hertz Corp. v. Friend***, 130 S. Ct. 1181, 1192-95 (2010) (adopting the nerve center test for determining a corporation's principal place of business).  In determining the nerve center, courts look to the nucleus of corporate administrative activity, such as the location of corporate headquarters where its officers direct, control, and coordinate cooperate activities.  *See* ***Cent. W. Va. Energy Co. v. Mt. State Carbon***, 636 F.3d 101 (4th Cir. 2011).  In determining an individual's citizenship, it is determined by one's domicile.  ***Steigleder v. McQuesten***, 198 U.S. 141 (1905).

3

The Plaintiffs, Russell Patrick and Mona Patrick, are citizens and residents of Jefferson County, West Virginia.  There are multiple Defendants.  Morris, Hardwick, and Schneider, LLC's ("MHS") members are from Atlanta, Georgia.  Therefore, MHS is diverse.  Additionally, Scott Stewart ("Stewart"), the Assistant Vice President for TVT, has an address of 9409 Philadelphia Road, Baltimore, Maryland.  Thus, as far as this Court can determine, he is domiciled in Maryland and is diverse from the Plaintiffs.  Next, PHH Mortgage Corporation is also diverse.  Here, PHH Mortgage is incorporated in New Jersey, and its corporate headquarters is located in New Jersey.  Additionally, all of its corporate officers are located in New Jersey.  Thus, PHH Mortgage is a citizen of New Jersey.

However, the Defendant, Teays Valley Trustees, LLC, is an LLC.  Teays Valley Trustees, LLC ("TVT") has its principal office in Hurricane, West Virginia, and the members are citizens of Maryland and West Virginia.  Thus, TVT is not diverse from the Plaintiffs.  The Defendants argue that TVT was fraudulently joined because "there is no claim stated in the *Amended Complaint* upon which Plaintiffs can recover against Teays Valley." (Notice of Removal, p. 3) [Doc. 3].  For reasons explained later in this Order, there are claims that have been sufficiently alleged against TVT; thus, TVT was not fraudulently joined.  As a result, TVT is a non-diverse Defendant, and this Court does not have diversity jurisdiction.

This Court does have federal question jurisdiction under 28 U.S.C. § 1331.  Section 1331 confers federal question jurisdiction for all civil actions arising under the Constitution and laws or treaties of the United States.  Under the well-pleaded complaint rule, the plaintiff's complaint is determinative of federal jurisdiction.  Thus, the federal

question jurisdiction must be clear from the face of the complaint and cannot be based on federal law defense or plaintiff's anticipation of such defense. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232 (1986).

Also, district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Shanaghan v. Cahill*, 58 F.3d 106, 109-110 (4th Cir. 1995) (quoting 28 U.S.C. § 1367(a)). Therefore, supplemental jurisdiction "allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy." *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724-26, 86 S. Ct. 1130, 1138-39 (1966). In deciding whether the claims form part of the same case or controversy, the courts look to whether "[t]he state and federal claims . . . derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 1138-39; *see also White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (a district court may properly exercise supplemental jurisdiction over state claims if they arise out of a common nucleus of operative facts such that plaintiff would ordinarily be expected to try claims in one judicial proceeding). A court has discretion to exercise supplemental jurisdiction. Under 28 U.S.C. § 1367, a court may decline supplemental jurisdiction based on statutory factors and an analysis of judicial economy, convenience, and fairness to parties. *Id.* The section 1367(c) factors include whether: (1) the claim raises a novel or important issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has

5

original jurisdiction; (3) all claims over which the court has original jurisdiction are dismissed; or (4) other compelling reasons exist for declining jurisdiction. **28 U.S.C. § 1367(c).**

Here, the Plaintiff's Complaint alleges multiple violations of the Fair Debt Collection Practices Act.  *See* Compl. ¶¶ 133-140.  Thus, this is a civil action arising under federal law 15 U.S.C. § 1692 *et seq*, and the Court has federal question jurisdiction over these claims.  Additionally, the Court concludes that it is proper to exercise supplemental jurisdiction over the Plaintiffs' state claims against the Defendants.  The alleged state claims revolve around a central fact pattern involving an alleged disputed debt, illegal collection efforts by the Defendants, and the attempted foreclosure of the Plaintiffs' home.  Because the Plaintiffs' state and federal claims both revolve around alleged illegal collection efforts, these claims "are so related . . . that they form part of the same case or controversy under Article III," 28 U.S.C. § 1367, and would "ordinarily be expected to be tried all in one judicial proceeding."  **Osborn v. Haley**, 549 U.S. 225, 244, 127 S. Ct. 881, 896 (2007).

## II.  BACKGROUND

The Plaintiffs allege the Defendants violated the West Virginia Consumer Credit and Protection Act § 46A-2-101 *et seq.* ("WVCCPA") and the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Plaintiffs assert related common law claims for intentional infliction of emotional distress and fraud arising out of alleged illegal collection efforts.

According to the Third Amended Complaint [Doc. 45] ("Complaint"), the Plaintiffs,

Russell and Mona Patrick, are residents of West Virginia. Compl. ¶ 1.   In 2009, the

Plaintiffs obtained a mortgage note and deed of trust to finance the purchase of their

home with a company named InstaMortgage.com. *Id.*  The Plaintiffs fell behind on their

mortgage payments and applied for a loan modification under the Home Affordable

Mortgage Program ("HAMP"). *Id.*  The Plaintiffs were approved for and executed the

loan modification agreement in December 2010. *Id.*  The Plaintiffs allege that the loan

modification agreement "effectively modified their mortgage note and effectively brought

their note current and their loan was no longer deemed in default." *see id.* at ¶¶ 1, 38.  A

copy of the fully executed loan modification agreement was duly recorded in the land

records with the Clerk for the County Commission of Jefferson County, West Virginia.

*Id.* at ¶ 39.

The Plaintiffs allege that approximately two months after they began paying

under the loan modification agreement, in February 2011, they began to receive

collections calls from a company named PHH Mortgage Corporation. *Id.* at ¶ 1.  The

collection agents allegedly informed the Plaintiffs that they were in default of their

mortgage agreement. *Id.*  According to the Plaintiffs, the calls persisted throughout 2010

and 2011, and the Plaintiffs informed the collection agents calling on behalf of PHH

Mortgage Corporation that they were not in default. *Id.*  The Plaintiffs allege that some

times they were transferred to the customer service department or loan modification

department, and the customer service agents in these departments told them to ignore

the collection agents' calls because the loan modification payments were received and

the collection agents could simply not access or see the information regarding the loan

modification. *Id.*  According to the Plaintiffs, during one of these calls with a customer

7

service representative of PHH Mortgage Corporation, they were told that there was an excess of fourteen thousand dollars ($14,000.00) being held in escrow, which had not been applied to their loan. *Id.* During this same time period, the Plaintiffs allege they received notices from PHH Mortgage Corporation indicating they were current on their loan modification, had met the goal of making one full year of timely payments, and received an incentive payment that was applied to their loan pursuant to the terms of the HAMP loan. *Id.*

The Plaintiffs allege that in or about 2011, they started to receive more serious and threatening letters from PHH Mortgage Corporation stating that unless they brought their loan current, PHH would initiate foreclosure proceedings against them. *Id.* After receiving such communication, the Plaintiffs allegedly provided PHH Mortgage with their bank records showing that they were current on their obligations. *Id.* at ¶ 53. In or about September 2011, the Plaintiffs allegedly responded to one of PHH Mortgage Corporation's letters, which provided the name and number of the attorney for PHH Mortgage Corporation: Morris, Hardwick, Schneider, LLC ("MHS") with a telephone number of (678) 298-2117 in Atlanta Georgia. *Id.* at ¶ 1. According to the Plaintiffs, they spoke with Scott Stewart of MHS and informed him that their loan was not in default, provided information regarding their loan modification and their payments. Allegedly, Stewart informed the Plaintiffs that he would investigate the matter. *Id.* at ¶ 68. After this conversation, the Plaintiffs received another collection/foreclosure letter stating they were in default of their loan. *Id.* at ¶ 1. The Plaintiffs allegedly telephoned Stewart, but they were unable to speak with him. *Id.* Instead, the Plaintiffs left several voicemail messages advising Stewart that they disputed the debt. *Id.*

8

On or about October 11, 2011, the Plaintiffs received a letter from TVT threatening to foreclose on their property. *Id.* at ¶ 75.  The letter allegedly was on TVT letter head and was enclosed in an envelope with the name and address of MHS; the Plaintiffs were allegedly confused about what entity they were dealing with. *Id.* at ¶¶ 1, 76.  After receiving this letter, the Plaintiffs contacted TVT as instructed by the terms of the collection letter.  *Id.* at ¶¶ 1, 78. The Plaintiffs were transferred to the voicemail of an individual who was supposed to be handling their file for TVT.  *Id.* at ¶ 1. The Plaintiffs left a detailed voicemail message with TVT disputing the debt and explaining that they were current on their loan through the loan modification program. *Id.* The Plaintiffs never received a response from TVT. *Id.*

On or about January 30, 3012, the Plaintiffs received collection/foreclosure letters from TVT. *Id.* at ¶ 79.  After receiving this letter, the Plaintiffs contacted TVT to dispute the claimed default by PHH Mortgage Corporation. *Id.* at ¶ 82.  Again, the Plaintiffs were transferred to the voicemail of the person handling their file. *Id.*  The Plaintiffs again left a voicemail message, but TVT never responded to this telephone communication. *Id.*

Then, the Plaintiffs were served with certified mail letters stating their home would be sold on February 23, 2012. *Id.* at ¶¶ 1, 83.  The Plaintiffs wrote to TVT and asked them to cancel the foreclosure sale because they were not in default on their loan. *Id.* at ¶ 84. The foreclosure sale was not continued, and the Plaintiffs property was sold at a foreclosure sale. *Id.* at ¶¶ 1, 88.  The Plaintiffs learned of the sale when realtors and other persons came onto their property with notices of the foreclosure sale and requests for them to vacate their home. *Id.*  Allegedly, TVT falsely told PHH that the

property was sold at a foreclosure sale on February 23, 2012, even though the sale was never consummated through a legal recording. *Id.* at ¶ 1.   PHH also took steps to cancel the Plaintiffs' home owners' insurance with USAA Insurance, which was held by the Plaintiffs individually. *Id.* at ¶¶ 94-99.  The Plaintiffs then filed this civil action.

After filing this action, the Plaintiffs informed PHH through its attorney and Trustee that they would be escrowing their mortgage payments due to the misapplication and rejection of payments by PHH. *Id.* at ¶ 101.  In or about July 2012, PHH rejected a full and timely mortgage payment.  *Id.* at ¶ 103.  Also, PHH communicated directly with the Plaintiffs about its debt. *Id.*

In or about August 2012, the Plaintiffs sent in two monthly mortgage payments (representing the returned July payment and the August payment) to PHH. *Id.* at ¶ 104.  PHH rejected the two full mortgage payments. *Id.*  Again, PHH communicated directly with the Plaintiffs about its debt. *Id.*

Last, In or about July/August 2012, PHH refused to pay the homeowners' insurance premiums despite having received funds which are held in escrow to pay the policy. *Id.* at ¶ 105.

### III.  RULE 12(b)(6) STANDARD

In recognition of the Supreme Court's recently discussed plausibility standard for evaluating a motion to dismiss, a complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.'"  **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (quoting **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (emphasis added)).  Legal conclusions and

labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure, and only allegations of fact are entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1950 (2009). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). When rendering its decision, the Court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rules of Evidence 201. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); *see also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

## IV. ANALYSIS

### A. Defendant InstaMortgage.com's Motion to Dismiss [Doc. 5]

The Defendant, InstaMortgage.com, filed a Motion to Dismiss [Doc. 5] on May 2, 2012. The Plaintiffs filed their Response to Motion to Dismiss InstaMortgage.com [Doc. 7] on May 4, 2012. However, on May 23, 2012, the Plaintiffs filed a "Notice of Voluntary Dismissal of Defendant InstaMortgage.com" [Doc. 15]. As a result, the Court terminated InstaMortgage.com as a party. Accordingly, the Defendant's Motion to Dismiss is **MOOT.**

**B.    Defendants Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's First Motion to Dismiss Plaintiffs' Complaint [Doc. 9]**

The Defendants MHS, TVT, and Stewart filed a Motion to Dismiss Plaintiff's Complaint [Doc. 9] pursuant to Rule 12(b)(6) on May 4, 2012.  The Plaintiffs filed their Response to Defendants MHS, TVT, and Stewart's Motion to Dismiss Plaintiffs' Complaint [Doc. 14] on May 16, 2012.  Also, the Plaintiffs filed their amended complaint [Doc. 13] on May 16, 2012 pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure which state that a party can amend a pleading if: "the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Plaintiffs' Second Amended Complaint is timely because it was filed within 21 days after service of a motion under Rule 12(b).

It is well established that "[a] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." WRIGHT & MILLER, FED. PRAC. & PROC. CIV., § 1476 (3d ed.). The Fourth Circuit has reaffirmed this principle by stating that "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir. 2000); *see also Turner v. Knight*, 192 F. Supp. 21 391, 397 (D. Md. 2002) (denying defendants' first motion to dismiss as moot because an amended complaint had been filed, but considering the defendants' second motion to dismiss because it addressed the plaintiff's amended complaint).

As the Court previously noted, the Defendants filed their first motion to dismiss on May 4, 2012  that addressed the Plaintiffs' amended complaint.  Then, the Plaintiffs' Second Amended Complaint was timely filed as a matter of course on May 16, 2012. After the filing of Plaintiffs' Second Amended Complaint, the same Defendants filed a second motion to dismiss on June 4, 2012 "Defendants', Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's Motion to Dismiss Plaintiffs' Second Amended Complaint" [Doc. 16] that addressed the Plaintiffs' Second Amended Complaint.  Accordingly, this Court **DENIES AS MOOT** the Defendants' MHS, TVT, and Stewart's Motion to Dismiss Plaintiffs' Complaint [Doc. 9].

**C.** **Plaintiffs' Motion to Amend Second Amended Complaint [Doc. 43]**

Pending before this Court is the Plaintiffs' "Motion to Amend Second Amended Complaint" [Doc. 43].  The Plaintiffs have requested leave to amend their Second Amended Complaint to "add additional violations of the West Virginia Consumer Credit and Protection Act as well as supplementing and adding facts and claims to the existing the [sic] breach of contract and intentional infliction of emotion [sic] harm claims . . . ." Pls.' Mot. to Amend Second Amended Compl., p. 1.  The Defendants have not filed any responses to the Plaintiffs' motion.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." **FED. R. CIV. P. 15(a)(1)(B**).  However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court

13

should freely give leave when justice so requires." **FED. R. CIV. P. 15(a)(2)**.

Here, the Plaintiffs did not amend their Second Amended Complaint within 21 days after service of the Defendant PHH Mortgage Corporation's Motion to Dismiss Certain Claims Asserted in Second Amended Complaint [Doc. 17], filed on June 4, 2012, and the Defendants, Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 16], also filed on June 4, 2012.  Thus, the Plaintiffs must have leave of court to amend their Second Amended Complaint.

Rule 15(a)(2) clearly provides that "[t]he court should freely give leave [to amend] when justice so requires." **FED. R. CIV. P. 15(a)(2)**.  Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." **FED. R. CIV. P. 15(a)**; *see also* **Foman v. Davis**, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962) (Supreme Court declaring that "this mandate is to be heeded"). The law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." ***Johnson v. Oroweat Foods Co.***, 785 F.2d 503, 509 (4th Cir.1986). Delay alone is an insufficient reason to deny leave to amend. *See id.* Rather, the delay must be accompanied by prejudice, bad faith, or futility. *See **Edwards v. City of Goldsboro***, 178 F.3d 231, 242 (4th Cir. 1999). The Fourth Circuit has stated that

> [w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.  A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." (citing *Johnson v.*

> *Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (internal citations omitted).  An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

***Davis v. Piper Aircraft Corp.***, 615 F.2d 606, 613 (4th Cir. 1980)**.**

Here, the Plaintiffs claim that Defendant PHH has recently engaged in additional wrongful conduct, specifically in July and August 2012.  Thus, PHH's recent conduct has given rise to new and additional claims.  There is no evidence that the Plaintiffs have delayed in filing these additional claims.  Also, PHH will not be prejudiced by the amendment because the new claim arises out of recent actions by PHH, and the amendment is not offered shortly before or during trial, as trial is currently scheduled for October 22, 2013.

Because the second motion to amend is unopposed, was made for a legitimate purpose, and does not prejudice the Defendants, the Court finds good cause to permit the amendment.  Therefore, the Court **GRANTS** the Plaintiffs' "Motion to Amend Second Amended Complaint." [Doc. 43].  The Court directs the Clerk of Court to file the Plaintiffs' Third Amended Complaint, attached as "Exhibit A" to the Plaintiffs' motion.  All references to the Complaint for the remainder of this Order refer to the Plaintiffs' Third Amended Complaint.

**D.  Defendants Morris, Hardwick, Schneider, LLC, Teays Valley Trustees, LLC, and Scott Stewart's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 16]**

The Defendants TVT, MHS, and Stewart, and the Plaintiffs have stipulated that "the Motion to Dismiss the Second Amended Complaint and the Response are still properly before this Court for adjudication as the Third Amended Complaint sought to

be filed by the Plaintiffs does not change or alter th[e] claims against the Defendants TVT, MHS, and Stewart." Joint Stipulation [Doc. 44], p. 1.  Defendants ask this Court to dismiss the entirety of the Plaintiffs' Complaint because they failed to satisfy the condition precedent to filing suit (the "notice-and-cure" provision). Defs.' Mot. to Dismiss Pls.' Second Amended Compl. [Doc. 16], p. 6.  Alternatively, the Defendants ask for the Court to dismiss the Complaint because each alleged Count fails to state a claim upon which relief can be granted. *Id.* at 8.  Additionally, the Defendants ask this Court to dismiss Counts I, II, III, VI, IX, and the request for punitive damages of Plaintiffs' Complaint because they fail to state a plausible claim for relief under Federal Rules of Civil Procedure 8(a).  *Id.*

## 1.    Notice-and-Cure Provision

The Defendants, MHS, TVT, and Stewart, first argue that the Court should dismiss the Plaintiffs' Complaint in its entirety because the Plaintiffs "failed to give notice before commencing this action and did not provide a reasonable period after the giving of notice to take corrective action, in violation of the Deed of Trust." [Doc. 16] p. 7.  In section 20 of the Deed of Trust entitled "Sale of Note; Change of Loan Servicer; Notice of Grievance," the deed of trust provides in part that:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. A § 20.  "Notice" under Section 15 of the Deed of Trust means written notice.  *Id.* at § 15 ("All notices given by Borrower or

16

Lender in connection with this Security Instrument must be in writing.").  Because the Plaintiffs failed to give notice to these Defendants before commencing this action and did not provide a reasonable period after the giving of notice to take corrective action, the Defendant argues that they have failed to satisfy a condition precedent and that this action is improper.

Multiple district courts in the Fourth Circuit have dismissed cases in their entirety because the plaintiff failed to provide notice in accordance with the Deed of Trust.  *See Niyaz v. Bank of Am., et al.,* No. 1:10-CV-796, 2011 WL 63655 (E.D. Va. Jan. 3, 2011) (dismissing plaintiff's complaint because all of the plaintiff's allegations arose in connection with the deed of trust and plaintiff did not provide notice as required by the deed of trust); *Johnson v. Countrywide Home Loans, Inc.*, No, 1:10-CV-1018, 2010 WL 5138392 (E.D. Va. Dec. 10, 2010) (dismissing plaintiff's complaint against substitute trustee where all of plaintiff's allegations arise from actions taken pursuant to the deed of trust and the plaintiff failed to provide notice in accordance with the deed of trust).

However, the Notice-and-Cure Provision in the Plaintiffs' Deed of Trust expressly bind the borrower and the lender–not the borrower and a loan service provider or substitute trustee.  *See Schmidt v. Wells Fargo Home Mortg.*, 3:11-CV-059, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011) (holding that the notice-and-cure provision in the deeds of trust did not obligate the plaintiffs to provide notice to the loan service providers in accordance with the provision).   Defendants TVT, MHS, and Stewart are not parties to the Deed of Trust; therefore, the Plaintiffs were not obligated to provide notice to TVT, MHS, and Stewart based on the provision at issue.

Even assuming *arguendo* that Plaintiffs were obligated to provide notice to TVT,

17

MHS, and Stewart based on the notice-and-cure provision, a number of courts have acknowledged that identical notice-and-cure provisions do not extend to claims based on deceptive business practices.  See *id.* (noting that "several courts" have held that identical notice-and-cure provisions do not extend to claims based on deceptive business practices); ***Stovall v. Suntrust Mortg., Inc***., Civil Action No. RDB-10-2836, 2011 WL 4402680, at *6-*7 (D. Md. Sept. 20, 2011) (holding that plaintiff's failure to abide by the notice-and-cure provision in the deed of trust did not warrant dismissal of the case because the plaintiff's claims involved allegations of deceptive business practices); ***Gerber***, 2006 WL 581082, at *3 (holding that a claim of "deceptive business practices . . . clearly exists independent of any contract between the parties"); *see also* ***Niyaz***, 2011 WL 63655, at *2; ***Johnson***, 2010 WL 5138392, at *2 (holding that plaintiff was foreclosed from bringing claims because all arose pursuant to the Deed of Trust, did not include allegations involving deceptive business practices, and plaintiff failed to provide notice pursuant to the notice-and-cure provision in her deed of trust).

For the foregoing reasons, the Court **FINDS** that the notice-and-cure provision in the deed of trust is inapplicable.

### 2. Plaintiffs' Count II: FDCPA Violations

The Plaintiffs have alleged numerous violations of the Fair Debt Collection Practices Act.  In order to be subject to the FDCPA, the Defendants must first be found to be debt collectors.  Next, each alleged FDCPA violation is addressed in turn.

### a.    Debt Collectors Under the FDCPA

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors."  **15 U.S.C .§ 1692(e)**.  To state a claim under the FDCPA, a plaintiff

must show: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." ***See Wilson***, 443 F.3d at 377-379.  The FDCPA defines "debt" as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes . . . ." **15 U.S.C. § 1692a(5)**.  The Fourth Circuit has routinely held that a proceeding to foreclose on real property constitutes the collection of a "debt" under the FDCPA.  ***Rawlinson v. Law Office of William M. Rudow, LLC***, 460 Fed. Appx. 254, 256 (4th Cir. 2012) (citing ***Wilson v. Draper & Goldberg, P.L.L.C.***, 443 F.3d 373, 377 (4th Cir. 2006)).

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." **15 U.S.C. § 1692a(6)**.  An exception to the "debt collector" definition covers "any person collecting or attempting to collect any debt . . . due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." **15 U.S.C. § 1692a(6)(F)(I)**.  In deciding whether trustees or substitute trustees qualify as debt collectors, the Fourth Circuit has held that the "critical inquiry is whether a trustee's actions are 'incidental to a bona fide fiduciary obligation.'" ***Wilson***, 443 F.3d at 377.  In *Wilson*, Defendants were trustees who attempted to collect a debt by foreclosing on Plaintiff's real property. ***Id.* at 375.**

19

The district court concluded that trustees foreclosing on a property pursuant to a deed of trust are not debt collectors under the FDCPA.  *Id.*  The Fourth Circuit reversed holding that the trustee's actions were not incidental to a bona fide fiduciary obligation because the principal purpose of the attorney's work was the collection of debts. *Id.* **at 378.**  However, the Fourth Circuit cautioned that this decision was "not intended to bring every law firm engaging in foreclosure proceedings under the ambit of the Act. Nevertheless, it is well-established that the Act applies to lawyers "who 'regularly engage in consumer-debt-collection activity, even when that activity consists of litigation.'" *Id.* at 379 (quoting **Heintz v. Jenkins**, 514 U.S. 291, 299 (1995)).

First, the Plaintiffs fail to allege that Stewart is a debt collector or that he has violated the FDCPA under Plaintiffs' Second Count in their Complaint.

Thus, this count is **DISMISSED** as to any claims against Stewart.

Second, the Plaintiffs allege that TVT and MHS are debt collectors.  Compl. ¶¶ 14, 25.  The Plaintiff alleges that both TVT and MHS have sent foreclosure letters to the Plaintiffs; thus, using "any instrumentality of interstate commerce or the mails . . . ." *see id.* at ¶¶ 49-50; **15 U.S.C. § 1692a(6)**.  The Plaintiffs also allege that both TVT and MHS's purpose in sending the letters was to pursue foreclosure.   Compl. ¶ 54. Additionally, the Plaintiffs pled facts indicating that on multiple occasions TVT sent debt collection letters to the Plaintiffs threatening foreclosure.  *Id.* at ¶¶ 75, 79.  The Plaintiffs also allege that TVT created MHS to carry out foreclosure activities and that TVT is essentially the alter ego of MHS.  *Id.* at ¶¶ 55-58.  To support the Plaintiffs' assertion that TVT and MHS are essentially the same entity, the Plaintiffs allege that TVT mailed its foreclosure letters in envelopes containing the name and address of MHS.   *Id.* at ¶¶

76, 80.  Additionally, the Plaintiffs have alleged sufficient facts that if true indicate that the Defendants, TVT and MHS, were acting solely or primarily to collect debts through the foreclosure process.  Thus, the Plaintiffs have pled facts suggesting that the foreclosure was not simply "incidental" to MHS and TVT's fiduciary obligation to their client.  Accordingly, the Court **FINDS** Plaintiffs' allegations regarding the involvement of TVT and MHS in the underlying foreclosure action raise a plausible inference that the Defendants were sufficiently involved in the foreclosure proceedings to constitute a "debt collector" under the FDCPA.

Although the Plaintiffs have sufficiently pled that TVT and MHS are debt collectors under the FDCPA, the Plaintiffs must also sufficiently plead that the Defendants engaged in an act or omission prohibited by the FDCPA in order to state a claim. The Plaintiffs have alleged numerous FDCPA violations; each of these alleged violations are addressed in turn.

### b.  Harassment or Abuse- 15 U.S.C. § 1692d

Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." **15 U.S.C. § 1692d.**  The statute proceeds to highlight a list of non-exclusive conduct that violates the section: "(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person; (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this

21

title; (4) The advertisement for sale of any debt to coerce payment of the debt;

(5) Causing a telephone to ring or engaging any person in conversation repeatedly or

continuously with intent to annoy, abuse, or harass any person at the called number;

(6) Except as provided in section 1692b of this title, the placement of telephone calls

without meaningful disclosure of the caller's identity." *Id.*

The Plaintiffs have failed to allege that MHS and TVT engaged in conduct that

had the natural consequence of harassing or abusing a debtor.  The Plaintiffs have

alleged that TVT and MHS knew the Plaintiffs orally disputed the debt at issue;

however, despite this knowledge, TVT and MHS continued with the foreclosure process.

*See* Compl. ¶¶ 46, 47, 49, 53-54 (Plaintiffs allegedly informed MHS and TVT that they

were not in default and making monthly payments, but MHS and TVT continued the

foreclosure process). This is simply insufficient as the law requires some type of

harassment or abuse in collecting or attempt to collect the debt.   *See Nelid v. Wolpoff*

*& Abramson, L.L.P.,* 453 F. Supp. 2d 918, 924-25 (E.D. Va. 2006) (stating that merely

attempting to collect a disputed debt would not state a claim upon which relief can be

granted for a 1692d violation).   Indeed, the Plaintiffs did not notify TVT in writing of the

debt dispute until February 9, 2012–months after the initial communication of October

11, 2011 informing the Plaintiffs that they could dispute their debt in writing within thirty

days or the debt would be assumed to be valid.   Thus, TVT and MHS–as a matter of

law–could assume that the debt was valid.

The Plaintiffs have entirely failed to plead sufficient facts alleging TVT and MHS

harassed or abused the Plaintiffs in connection with the collection of or attempt to

collect the alleged debt.   In fact, TVT/MHS allegedly sent only a handful of letters to the

Plaintiffs.  *See* Compl. ¶¶ 49-50, 75, 80.  The Plaintiffs do allege that MHS trespassed

on the Plaintiffs' property to leave debt collection communications on behalf of PHH, but

this is not, by itself, unreasonably oppressive or abusive in connection with the

collection of or attempt to collect a debt.  Compl. ¶ 48.  The Court finds the Plaintiffs fail

to allege sufficient facts against MHS and TVT to state a claim upon which relief can be

granted under 15 U.S.C. § 1692d.  Thus, this Court **GRANTS** the Defendants TVT and

MHS's  motion to dismiss Plaintiffs' claim under 15 U.S.C. § 1692d.

### c. False or Misleading Representations– 15 U.S.C. § 1692e

The Plaintiffs allege that the Defendants MHS and TVT on multiple occassions

used "false deceptive or misleading representations or means in connection with the

collection of a debt."  Compl. ¶ 135.  Section 1692e provides that a "debt collector may

not use any false, deceptive, or misleading representation or means in connection with

the collection of debt."  The statute contains sixteen subsections listing types of conduct

that are considered false, deceptive, or misleading.

Plaintiffs' amended complaint alleges a violation of subsection three: "[t]he false

representation or implication that any individual is an attorney or that any

communication is from an attorney."  Compl. ¶¶ 66-69.  *See* **15 U.S.C. § 1692e(3).**  The

Plaintiffs allege that they were advised by PHH to call its attorney in response to a debt

collection/foreclosure threat letter the Plaintiffs had received; the Plaintiffs were

provided the telephone number of MHS and spoke with Stewart.  Compl. ¶ 59.  Stewart

is allegedly also the Vice President of TVT.  *Id.* The Plaintiffs further allege that Stewart

"represented himself and/or held himself out to be an attorney employed by MHS which

represented PHH."  Compl. ¶ 66.   Stewart "advised the Plaintiffs that he would

investigate their issues and dispute of the default." Compl. ¶ 68. The Plaintiffs allege

that Stewart is not an attorney licensed to practice law in West Virginia, Maryland,

Georgia, or New Jersey. Compl. ¶¶ 70-71. Therefore, taking the Plaintiffs' allegations

as true, the Plaintiffs have sufficiently alleged a violation of section 1692e(3).

Thus, this Court **FINDS** that the Plaintiffs have sufficiently alleged that the

Defendants violated section 1692e, and **DENIES** the motion to dismiss Plaintiffs' claim

under section 1692e.

### d.    Unfair Practices– 15 U.S.C. § 1692f

The Plaintiffs vaguely allege that the Defendants MHS and TVT used "unfair or

unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C.    §

1692f." Compl. ¶ 136. Section 1692f provides that "[a] debt collector may not use unfair

or unconscionable means to collect or attempt to collect any debt." **15 U.S.C.    §

1692f**. Here, the Plaintiffs only allege a legal conclusion against MHS and TVT that

they violated 1692f. The Plaintiffs fail to allege any facts against MHS and TVT that

would violate one of the non-exclusive subsections of the statute and fail to allege any

facts suggesting that MHS and TVT utilized unfair or unconscionable means to collect

or attempt to collect the debt. Indeed, the only allegations in the Complaint are against

PHH, which state that PHH improperly charged a late fee and a property preservation

fee on the Plaintiffs' account despite their compliance with the HAMP agreement.

Compl. ¶ 44-45. Because the Plaintiffs fail to allege facts against MHS and TVT

sufficient to state a claim upon which relief can be granted, this Court **GRANTS** the

Defendants TVT and MHS's motion to dismiss Plaintiffs' claim under section 1692f.

### e.      Validation of Debts – 15 U.S.C. § 1692g

The Plaintiffs allege that the Defendants "failed to, validate the debt despite the claimed disputes of the Plaintiffs in violation of 15 U.S.C. § 1692g." Compl. ¶ 137. Section 1692g provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . . ." **15 U.S.C.  § 1692g**.

Here, the Plaintiffs allege that MHS and TVT "received information directly from the Plaintiffs on multiple occasions that they disputed the claimed default." Compl. ¶ 53. Although the Plaintiffs allege that they communicated with Stewart–an employee of MHS–regarding their dispute of the debt, the Plaintiffs fail to allege that they ever provided written notice to the debt collector that the debt was disputed.  *See* Compl. ¶¶ 66-69.  Also, the Plaintiffs allege on January 30, 2012 that the Plaintiff "telephoned TVT disputing the debt."  Compl. ¶ 82.  In fact, the Plaintiffs did not send a written dispute letter to TVT until February 9, 2012. *See* Compl. ¶ 84.  TVT sent the initial communication of the notice of debt on October 11, 2011.  *See* Compl. ¶¶ 75-77.  The Plaintiff does not allege that this notice was insufficient or failed to comply with the contents of the notice of debt as provided in section 1692g(a).  The Plaintiffs' written notification to TVT disputing the debt did not occur within the thirty day period as required by 1692g(a); rather, the written notification came months after TVT's initial communication.  Because the Plaintiffs failed to notify the debt collector in writing within thirty days of receipt of the initial notice from TVT, TVT and MHS could assume the debt

25

to be valid.  *See* **15 U.S.C. § 1692g(a).**  Therefore, the Plaintiffs have failed to plead

sufficient facts to state a claim for violation of section 1692g, and this Court **GRANTS**

the Defendants' motion to dismiss Plaintiffs' section 1692g claims.

### f.    Communication in Connection with Debt Collection – 15 U.S.C. § 1692c

The Plaintiffs allege that the Defendants MHS and TVT "were informed by the

Plaintiffs that they were represented by counsel, provided the name and telephone

number of counsel, and subsequently communicated with the Plaintiffs when it knew or

should have known they were represented by counsel in violation of 15 U.S.C.

§ 1692c." Compl. ¶ 138.  Section 1692c provides that:

> a debt collector may not communicate with a consumer in connection with
> the collection of any debt if the debt collector knows the consumer is
> represented by an attorney with respect to such debt and has knowledge
> of, or can readily ascertain, such attorney's name and address, unless the
> attorney fails to respond within a reasonable period of time to a
> communication from the debt collector or unless the attorney consents to
> direct communication with the consumer . . . .

**15 U.S.C. §1692c(a)(2)**.

The Plaintiffs allege that after the foreclosure sale, they retained counsel.

Compl. ¶ 89.  Plaintiffs' counsel asked TVT not to consummate the foreclosure sale and

set it aside.  *Id.*  The only factual allegations in the Complaint, though, state that PHH

directly communicated with Plaintiffs about their debt; nothing in the Complaint alleges

that MHS or TVT communicated directly with Plaintiffs–rather than Plaintiffs' counsel–in

regard to their debt.  *See* Compl. ¶¶ 103-04.  Because the Plaintiffs fail to allege facts

against MHS and TVT sufficient to state a claim upon which relief can be granted, this

Court **GRANTS** the Defendants' motion to dismiss Plaintiffs' claim under section 1692c.

### 3. Plaintiffs' Count I: WVCCPA Violations

The Plaintiffs have alleged numerous violations of the West Virginia Consumer Credit Protection Act.  In order to be subject to the WVCCPA, the Defendants must first be found to be debt collectors.  Then, each alleged WVCCPA violation is addressed in turn.

### a.    Debt Collectors Under the WVCCPA

Defendants MHS and Stewart move to dismiss the Plaintiffs' WVCCPA claims because they acted on behalf of the substitute trustees–TVT–and not as a debt collector.  The Plaintiffs argue that MHS, TVT, and Stewart all acted as debt collectors in their communication with the Plaintiffs, including the debt collection letters sent to Plaintiffs.  This Court will examine whether the Plaintiff has alleged sufficient facts that if true would qualify the Defendants as debt collectors.

The West Virginia Code defines debt collector as "any person or organization engaging directly or indirectly in debt collection." **W. VA. CODE § 46A-2-122.**  Debt collection is "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer."  *Id.* Therefore, under the WVCCPA, an organization is deemed a "debt collector" even if its involvement in the debt collection is merely indirect.  *Rewalt v. Draper & Goldberg, P.L.L.C*, Civil Action No. 3:06-0540, 2008 WL 2566957 (S.D.W. Va. June 24, 2008).

The Defendants argue that they are not debt collectors under the WVCCPA because they were merely acting as the substitute trustee or as agents of the substitute trustee.  The duties of a trustee with respect to a sale under a trust deed are provided in West Virginia Code section 38-1-3 which states:

27

The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section [§ 38-1-4].

Interpreting this language, the Supreme Court of Appeals of West Virginia has held that "the fiduciary duty owed by the trustee in a trust deed given as security in connection with a home mortgage loan does not require the trustee to review account records to ascertain the actual amount due prior to foreclosing . . .." *Lucas v. Fairbanks Capital Corp.*, 217 W.Va. 479, 488, 618 S.E.2d 488, 497 (2005). In that same case, the Supreme Court of Appeals also held that "nothing in the language of W.Va. Code § 38-1-3 . . . suggest[s] that a trustee has a duty to consider objections to the foreclosure sale." *Id.* The Supreme Court of Appeals of West Virginia reiterated one of its previous observations: a trustee does not have the power to resolve disputes between the grantor and grantee. *Id.*

### 1. Stewart

Stewart is not a debt collector under the WVCCPA. First, the Plaintiffs fail to allege that Stewart was engaging directly or indirectly in debt collection. No where in the Complaint do the Plaintiffs allege that Stewart, individually, is a debt collector. Second, there are no allegations that Stewart engaged in debt collection; specifically, the Plaintiffs fail to allege that Stewart sent correspondence to the Plaintiffs in an attempt to collect a debt or in any of Stewart's telephonic communications with the

28

Plaintiffs that Stewart attempted to collect on the debt.  There is no allegation that
Stewart called the Plaintiffs or solicited the debt at any time.  The Plaintiffs merely allege
that Stewart "represented himself and/or held himself out to be an attorney employed by
MHS which represented PHH" and that "he would investigate [the Plaintiffs'] issues and
dispute of the default." Compl., ¶¶ 66, 68).  These allegations do not state a claim that
Stewart is a debt collector, and only allege that Stewart had limited involvement with the
Plaintiffs' alleged debt.  Additionally, agents of the substitute trustee, in this case
Stewart, "had no duty to investigate whether a modification agreement purportedly
entered between one of the borrowers and . . . [the] servicer precluded foreclosure."
Thus, the Plaintiffs' Complaint is **DISMISSED** as to all WVCCPA claims against Stewart.

### 2.    *MHS and TVT*

The Plaintiffs have sufficiently alleged that MHS and TVT are debt collectors. The
Plaintiffs allege legal conclusions that MHS and TVT are debt collectors, but legal
conclusions are not considered by the court.  *See* Compl. ¶¶ 14, 25.  Rather, the
Plaintiffs must allege facts that, if true, would make MHS and TVT debt collectors.
Here, the Plaintiffs have alleged that MHS trespassed on Plaintiff's property to leave
debt collection communications on behalf of PHH, that MHS was hired as PHH's
counsel to pursue foreclosure, and that MHS and TVT pursued foreclosure.  *See*
Compl. ¶¶ 48-50, 52, 54.

The Plaintiffs also allege that TVT created MHS to carry out foreclosure activities
and that TVT is essentially the alter ego of MHS.  Compl. ¶¶ 55-58.  In support of this,
the Plaintiffs allege that the debt collection letters threatening foreclosure mailed to the
Plaintiffs by TVT were enclosed in envelopes with the name and address of MHS.

29

Compl. ¶¶ 76, 80.  The Plaintiffs argue that "[i]t is clear that . . . MHS and TVT are

legally connected to one another, share a common knowledge and information base

even using the same telephone number, mailing and physical address for the TVT and

MHS office[s] in West Virginia." Pls.' Resp.  to Defs.' Mot. to Dismiss [Doc. 22], p. 17.

Additionally, the Plaintiffs have alleged sufficient facts that if true indicate that

Defendants TVT and MHS acted at least indirectly to collect debts through the

foreclosure process.  Thus, the Plaintiffs have pled facts suggesting that the foreclosure

was not simply MHS and TVT's fiduciary obligation to their client, but it was also an

attempt to collect a debt.  TVT did not simply send a notice of foreclosure sale; it is

alleged that the Plaintiffs received letters from TVT stating the communication was  "an

attempt to collect a debt . . . ." *See* Compl, Ex. F.  The Plaintiffs' allegations regarding

the involvement of TVT and MHS in the underlying foreclosure action raise a plausible

inference that the Defendants were sufficiently involved in the foreclosure proceedings

to be debt collectors under the WVCCPA.

Accordingly, this Court **FINDS** that the Plaintiffs have sufficiently pled facts that, if

true, would make MHS and TVT debt collectors under the WVCCPA.

### b.    Threats or Coercion – § 46A-2-124

The Plaintiffs have alleged that the Defendants, MHS and TVT, "on multiple

occasions did employ threats or coercion in an attempt to collect its debt in violation of

*West Virginia Code* § 46A-2-124 from February 2011 to the filing of this Amended

Complaint." Compl. ¶ 110.  West Virginia Code § 46A-2-124 provides that "[n]o debt

collector shall collect or attempt to collect any money alleged to be due and owing by

means of any threat, coercion or attempt to coerce."  **W. Va. Code § 46A-2-124**.  The

section also provides a list of non-exclusive conduct that is deemed to violate the section. *Id.* Here, the Plaintiffs have failed to plead sufficient facts alleging TVT and MHS collected or attempted to collect the alleged debt "by means of any threat, coercion, or attempt to coerce"; MHS and TVT never engaged in intimidating or threatening communications with the Plaintiffs while attempting to collect a debt. Additionally, no facts have been alleged indicating that TVT or MHS did any of the conduct deemed to violate section 46A-2-124. The Court finds the Plaintiffs fail to allege facts against MHS and TVT sufficient to state a claim upon which relief can be granted under West Virginia Code § 46A-2-124. Thus, this Court **GRANTS** the Defendants TVT and MHS's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-124.

### c.    Oppression and Abuse – § 46A-2-125

The Plaintiffs have alleged that the Defendants MHS and TVT, "on multiple occasions, did unreasonably oppress or abuse the Plaintiffs in an attempt to coerce payment of a debt which was not due beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-125." Compl. ¶ 111. West Virginia Code § 46A-2-125 prohibits debt collectors from unreasonably oppressing or abusing any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. The section outlines conduct that is deemed to violate the section such as using profane or obscene language and placing telephone calls without revealing the caller's identity with the intent to annoy, harass, or threaten any person at the called number. *See* **W. Va. Code § 46A-2-125**.

31

Here, the Plaintiffs have failed to plead sufficient facts alleging TVT and MHS were unreasonably oppressive or abusive in connection with the collection of or attempt to collect the alleged debt.   In fact, TVT/MHS allegedly sent only a handful of letters to the Plaintiffs. *See* Compl. ¶¶ 49-50, 75, 80.  The Plaintiffs do allege that MHS trespassed on the Plaintiffs' property to leave debt collection communications on behalf of PHH, but this is not, by itself, unreasonably oppressive or abusive in connection with the collection of or attempt to collect a debt.  Compl. ¶ 48.  Additionally, no facts have been alleged indicating that TVT or MHS did any of the conduct deemed to violate section 46A-2-125.  The Court finds the Plaintiffs fail to allege facts against MHS and TVT sufficient to state a claim upon which relief can be granted under West Virginia Code § 46A-2-125.  Thus, this Court **GRANTS** the Defendants TVT and MHS's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-125.

### d. Fraudulent, Deceptive or Misleading Representations – § 46A-2-127

The Plaintiffs allege that the Defendants MHS and TVT "on multiple occasions, did misrepresent the amount of the obligation due" and "employ fraudulent and/or misleading representations in an attempt to collect its debt beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-127."  Compl. ¶ 112.  West Virginia Code provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." **W. VA. CODE § 46A-2-127**.  The section provides an example of conduct that violates this section: "[a]ny false representation or implication of the character,

extent or amount of a claim against a consumer, or of its status in any legal

proceeding." *Id.*  As far as this Court can discern, the Plaintiffs allege a violation of this

section because MHS and TVT continued to pursue foreclosure proceedings after the

Plaintiffs communicated to the entities that they were not in default on their loan.  *See*

*generally* Compl. ¶¶ 52-92.  The Plaintiffs apparently base their claim for a violation of

section 46A-2-127 on the fact that TVT and MHS made representations that they were

entitled to foreclose on a note even though the Defendants knew the Plaintiffs disputed

the debt and contended they were not in default.

However, a trustee does not have a duty to investigate the actual amount of the

debt prior to foreclosing nor is a debt collector required to investigate the validity of a

debt it has been asked by a creditor to collect.  *See* **Wittenberg v. Wells Fargo Bank,**

**N.A.***,* 852 F. Supp. 2d 731, 752-54 (N.D.W. Va. 2012).  In *Wittenberg*, the plaintiff

claimed that the substitute trustees used false, deceptive, or misleading representations

when they claimed that she was delinquent in her mortgage.  **Id. at 753.** The plaintiff

argued that the Note was invalid; thus, any statements by the substitute trustee that it

was entitled to foreclose were false because there was not a valid note to initiate the

foreclosure process. *Id.*  In considering the plaintiff's claim, the court noted that a

"trustee in West Virginia does not have a duty to investigate the validity of a note.

Instead, a trustee acts upon the demand of a creditor." *Id.* (citing **Lucas v. Fairbanks**

**Capital Corp.**, 618 S.E.2d 488, 497 (W. Va. 2005); **W. V**ᴀ. **C**ᴏᴅᴇ **§ 38-1-3**).  The court

examined the West Virginia Supreme Court of Appeals' *Lucas* opinion which also

provided that the trustee is "not require[d] . . . to review account records to ascertain the

actual amount due prior to foreclosing" or to "consider objections to the foreclosure

sale." *Lucas*, 618 S.E.2d at 497.  Thus, the court dismissed the Plaintiff's claim of an alleged violation of West Virginia Code § 46A-2-127 because the substitute trustees had no duty to investigate the validity of a note, and the Plaintiff's claim therefore failed as a matter of law.

Here, the Plaintiffs allege that TVT and MHS violated West Virginia Code § 46A-2-127 because they pursued foreclosure proceedings even though the Plaintiffs had orally disputed the debt.  As far as this Court can discern, the Plaintiffs allege a violation of this section because MHS and TVT continued to pursue foreclosure proceedings after the Plaintiffs communicated to the entities that they were not in default on their loan.  *See generally* Compl. ¶¶ 52-92.  The Plaintiffs apparently base their claim for a violation of section 46A-2-127 on the fact that TVT and MHS made representations that they were entitled to foreclose on a note, which the Plaintiffs claim was not in default.  However, as trustees acting on behalf of its client, TVT and MHS had no duty to ascertain the amount of the underlying debt prior to foreclosure.  Accordingly, this Court **GRANTS** the Defendants TVT and MHS's motion to dismiss the Plaintiffs' claim under West Virginia Code § 46A-2-127.

### e.     Unfair or Unconscionable Means – § 46A-2-128

The Plaintiffs allege that the Defendants MHS and TVT "on multiple occasions, did employ unfair and/or unconscionable means in an attempt to collect its debt beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-128." Compl. ¶ 115.  Section 46A-2-128 provides that "[n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim."  **W. Va. Code § 46A-2-128**.  The statute

34

designates conduct that is "deemed to violate this section" including "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication." W. VA. CODE § 46A-2-128(e).

The Plaintiffs allege that after the foreclosure sale, they retained counsel. Compl. ¶ 89.  Plaintiffs' counsel asked TVT not to consummate the foreclosure sale and set it aside. *Id.*  The only factual allegations in the Complaint, though, state that PHH directly communicated with Plaintiffs about their debt; nothing in the Complaint alleges that MHS or TVT communicated directly with Plaintiffs–rather than Plaintiffs' counsel–in regards to their debt.  *See* Compl. ¶¶ 103-04.  Also, there are no other facts to indicate that MHS or TVT utilized unfair or unconscionable means in the collection or attempt to collect the alleged debt.  The Court finds that the Plaintiffs fail to allege facts against MHS and TVT sufficient to state a claim upon which relief can be granted under West Virginia Code § 46A-2-128.  Thus, this Court **GRANTS** the Defendants' motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-128 to the extent they are alleged against MHS and TVT.

### f.        Practice of Law by Debt Collectors – § 46A-2-123

The Plaintiffs allege that the Defendants MHS and TVT "held Stewart out to be an attorney and engaged in the conduct that deemed to be the practice of law when not licensed to practice law in West Virginia in violation of *West Virginia Code* § 46A-2-123." Compl. ¶ 117-118.  West Virginia Code section 46A-2-123 states that "[u]nless a

licensed attorney in this State, no debt collector shall engaged in conduct deemed the practice of law." **W. VA. CODE § 46A-2-123**.  The section also provides conduct that is deemed the practice of law including "[t]he performance of legal services, furnishing of legal advice or false representation, direct or by implication, that any person is an attorney" and "[a]ny communication with consumers in the name of an attorney or upon stationery or other written matter bearing an attorney's name."  *Id.*

The Plaintiffs allege that they were advised by PHH to call its attorney in response to a debt collection/foreclosure threat letter the Plaintiffs had received; the Plaintiffs were provided the telephone number of MHS and spoke with Stewart.  Compl. ¶ 59.  Stewart is allegedly also the Vice President of TVT. *Id.*  The Plaintiffs further allege that Stewart "represented himself and/or held himself out to be an attorney employed by MHS which represented PHH."  Compl. ¶ 66.  The Plaintiffs informed Stewart that "they had a loan modification and were current on the modification payments despite the claims of PHH."  Compl. ¶ 67.  Stewart "advised the Plaintiffs that he would investigate their issues and dispute of the default."  Compl. ¶ 68.  According to the Plaintiffs, "Stewart failed to investigate or perform any action to confirm or deny the claims of the Plaintiffs that they were not in default and were current on their HAMP agreement."  Compl. ¶ 69.  The Plaintiffs allege that Stewart is not an attorney licensed to practice law in West Virginia; however, he engaged in discussing legal matters with the Plaintiffs by leading them to believe that he–an alleged attorney–would investigate their claims.  Compl. ¶¶ 70, 118.  Therefore, taken the Plaintiffs' allegations as true, this Court **FINDS** that the Plaintiffs have sufficiently alleged a violation of West Virginia Code § 46A-2-123 against the Defendants MHS and TVT.

### g.   Unreasonable Publication– § 46A-2-126

The Plaintiffs allege that the Defendants, MHS and TVT, "did unreasonably publicize information relating to any alleged indebtedness of the Plaintiffs when it knew or had reason to know that the debt was not owed as claimed by the Defendants in violation of *West Virginia Code* § 46A-3-126." Compl. ¶ 125.  West Virginia Code         § 46A-2-126 provides that "[n]o debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer."  **W. VA. CODE § 46A-2-126.**  Conduct that is deemed to violate this section includes "[t]he disclosure, publication or communication of information relating to a consumer's indebtedness to any other person other than a credit reporting agency, by publishing or posting any list of consumers, commonly known as 'deadbeat lists,' except lists to prevent the fraudulent use of credit accounts or credit cards, by advertising for sale any claim to enforce payment thereof, or in any manner other than through proper legal action, process or proceeding." **W. VA. CODE § 46A-2-126(c).**

Here, the Plaintiffs fail to plead any facts that TVT or MHS unreasonably publicized information relating to the Plaintiffs or their alleged indebtedness.  The Plaintiffs fail to plead how MHS or TVT unreasonably publicized information relating to the Plaintiffs' indebtedness.  The Plaintiff may imply that TVT and/or MHS assisted in the foreclosure proceeding, thus requiring the publication of the foreclosure sale and a violation of section 46A-2-126.  However, this type of publication is specifically exempted from the statute.  *See* **W. VA. CODE § 46A-2-126** (section is inapplicable if publication is taken through "proper legal action, process or proceeding.").  Indeed, the only allegation made by the Plaintiffs against TVT and MHS is a bare legal assertion in

37

Paragraph 125 of their Complaint.  The Court finds that the Plaintiffs fail to allege facts against MHS and TVT sufficient to state a claim upon which relief can be granted. Thus, this Court **GRANTS** the Defendants' motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-126 to the extent they are alleged against MHS and TVT.

### h.  Willful Violations– § 46A-5-105

The Plaintiffs allege that MHS and TVT "violated the WVCCPA by illegally seeking to collect and foreclose upon residential realty when it knew the debt was not valid or intentionally, recklessly, willfully, or wantonly ignored the continued disputes raised by the Plaintiffs."  Compl. ¶ 123.  Moreover, the Plaintiffs request punitive damages for violations of WVCCPA.  *See* Compl.

West Virginia Code § 46A-5-105 provides that "[i]f a creditor has willfully violated the provisions of this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, in addition to the remedy provided in section one hundred one of this article, the court may cancel the debt when the debt is not secured by a security interest."  **W. VA. CODE § 46A-5-105**.  The available remedy under this section is cancellation of unsecured debt, not punitive damages.  Additionally, "the penalty provision of the WVCCPA has been interpreted to preclude the award of punitive damages."  ***Tucker v. Navy Fed. Credit Union***, Civil Action no. 3:10-CV-59, 2011 WL 6219852 *10 (N.D.W. Va. Dec. 14, 2011) (citing ***One Valley Bank of Oak Hill, Inc. v. Bolen,*** 425 S.E.2d 829, 834 (W. Va. 1992)).  For these reasons, the Court **GRANTS** the Defendants TVT and MHS's motion to dismiss Plaintiffs' claim for punitive damages to the extent asserted against MHS and TVT for the alleged violations of the WVCCPA.

### 4.    Plaintiffs' Count III: Intentional Infliction of Emotional Distress

The Plaintiffs allege that TVT, MHS, and Stewart engaged in conduct that was "atrocious, intolerable and extreme as to exceed the bounds of decency" that caused the Plaintiffs to suffer "severe emotional distress." Compl. ¶ 142.  The Defendants MHS, TVT, and Stewart argue that MHS and Stewart "are individuals which have not been involved in any actions regarding the Plaintiffs, Plaintiffs have offered no facts related to any act or omission by MHS or Stewart.  Therefore, none of the four elements are applicable as to MHS and Stewart."  Defs.' MHS, TVT, and Stewart's Mem. of Law in Support of Mot. to Dismiss Pls.' Second Amended Compl., p. 15-16.  The Defendants also argue that TVT was simply fulfilling its duties as a substitute trustee under the Deed of Trust and lacked the requisite intent needed to establish the intentional infliction of emotional distress.  *Id.* at 16.

In West Virginia, for a plaintiff to prevail on a claim for intentional infliction of emotional distress, four elements must be established.  The plaintiff must show:

> (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 7, **Hatfield v. Health Mgmt. Assocs. of W. Va., Inc.**, 672 S.E.2d 395 (2008) (quoting Syl. pt. 3, **Travis v. Alcon Labs., Inc.**, 504 S.E.2d 419 (1998)).

The Plaintiffs fail to allege all four elements that are required to state a claim for intentional infliction of emotional distress in West Virginia.  The Plaintiffs allege that the

39

Defendants' actions caused the Plaintiffs to suffer "severe emotional distress such that no reasonable person could be expected to endure it."  Compl. ¶ 142(b-c)).  However, the Plaintiffs fail to include any factual allegations regarding the Plaintiffs' severe emotional distress.  The Plaintiffs do not allege "enough facts to state a claim to relief that is plausible on its face." ***Twombly***, 127 S. Ct. at 1974.  The Plaintiffs merely allege legal conclusions, and these legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil procedure. *See **Iqbal***, 129 S. Ct. at 1950.

Accordingly, this Court **GRANTS** the Defendants TVT, MHS, and Stewart's motion to dismiss  Plaintiffs' intentional infliction of emotional distress claim.

### 5.    Plaintiffs' Count VI: Breach of Fiduciary Duty

Upon Motion by the Plaintiffs for Voluntary Dismissal of Count VI of Plaintiffs' Complaint [Doc. 24], this Court granted said motion by Order [Doc. 25] on June 21, 2012.  Therefore, this section of Defendant MHS, TVT, and Stewart's Motion to Dismiss is **MOOT.**

### 6.    Plaintiffs' Count VIII: Fraud

The Plaintiffs argue that the Defendants committed fraud because "each of the Defendants PHH, MHS, TVT, and Stewart was informed that the debt was not owed and further that the provisions of the deed of trust as modified by agreement of the parties, was not in default."  Compl. ¶ 170. Additionally, the Plaintiffs argue that the Defendants "acknowledged the disputed debt and agreed to continue the foreclosure sale to investigate the claims of the Plaintiffs." *Id.* at ¶ 172.  The Plaintiffs contend they "justifiably relied upon the representations of Stewart and MHS that the dispute would be investigated and that no further collection activity would occur until the alleged debt was

40

validated." *Id.* at ¶ 177.

Under Rule 9(b) of the Federal Rules of Civil Procedure, when a party alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." **FED. R. CIV. P. 9(b).**  The Fourth Circuit Court of Appeals has stated that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (citing **5 WRIGHT & MILLER, FED. PRAC. & PROC. CIV., § 1297**, at 590 (2d ed. 1990)).  Where multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Bluestone Coal Corp. v. CNX Land Res., Inc.*, Civil Action No. 1:07-00549, 2007 WL 6641647 (S.D.W. Va. Nov. 16, 2007) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.3d 1242, 1247 (2d Cir. 1987); *see also Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (affirming district court's dismissal of complaint because complaint referenced "defendants" generally, not to action of specific defendants regarding the alleged fraud and thus failed to meet the pleading requirement).

When a plaintiff seeks to establish a claim of fraud under West Virginia law, the plaintiff must prove (1) the alleged fraudulent act is that of the defendant, (2) the act was material, false, and the plaintiff justifiably relied upon it, and (3) the plaintiff suffered injury as a result of the act.  *Ashworth v. Albers Med., Inc.,* 410 F. Supp. 2d 471, 477

(S.D.W. Va. 2005) (citing *Lengyel v. Lint*, 280 S.E.2d 66, 67 (W. Va. 1981)).

The Plaintiffs' Complaint fails to meet the particularity requirements of Rule 9(b) because it does not adequately set forth the time, place, and content of each false representation, nor does it identify the person making the representation.  First, in Paragraphs 170-173, the Plaintiffs fail to adequately set forth the time, place, and content of each false representation.  MHS, TVT, and Stewart are lumped together with no particular allegation of each Defendant's participation in the alleged fraud, and Plaintiffs fail to allege any specific act by MHS, TVT, and Stewart that would support a fraud claim.  In fact, the only allegation is that TVT stated it would continue the foreclosure sale pending an investigation of the disputed debt. Compl. ¶¶ 84-86.  Even with this factual allegation, the Plaintiffs have failed to sufficiently plead the remaining elements.

Second, the Plaintiffs fail to plead facts that the Plaintiffs justifiably relied upon the representations of the Defendants.  The Fourth Circuit held that a party claiming fraud must plead with particularity facts showing that the alleged detrimental reliance on the misrepresentations was "reasonable and justified."  *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999).  The Plaintiffs only state that they "justifiably relied upon the representations of Stewart and MHS that the dispute would be investigated and that no further collection activity would occur until the alleged debt was validated."  Compl. ¶ 175.  The Plaintiffs plead a legal conclusion–that their reliance was justified–but fail to allege *facts* indicating that their reliance was justified.  There is nothing in the Complaint to indicate how the Plaintiffs relied on the Defendants' representations that the foreclosure sale would be continued or how they were deprived

of an opportunity to do something to prevent the foreclosure sale. Indeed, in the Plaintiffs' Complaint, the Defendant altogether fails to plead that they justifiably relied upon the representations of TVT, much less fails to plead sufficient facts that if taken as true would prove justifiable reliance.

Last, the Complaint has failed to satisfy an essential element of a fraud claim: damages. The Plaintiffs allege that they "were damaged because they relied upon the representations made by the Defendants . . . ." Compl., ¶ 177. However, the Complaint fails to state exactly how the Plaintiffs suffered any damages. In fact, the foreclosure sale was never consummated, and MHS, TVT, and Stewart have not caused any damage to be suffered by the Plaintiffs. *See Wittenberg*, 852 F. Supp. 2d 731, 751-52 (N.D.W. Va. 2012) (dismissing fraud claim against Defendant because the Plaintiff "had no damages because her property had not been foreclosed."). After carefully examining the Plaintiffs' Complaint, it is clear to this Court that it has not met the heightened pleading standard required by Rule 9(b). The Court finds that the Plaintiffs make conclusory statements regarding fraud and fail to plead detailed factual allegations of fraud sufficient to raise a right to relief above the speculative level as to the Defendants, TVT, MHS, and Stewart.

Accordingly, the Court **GRANTS** the Defendants' motion to dismiss Plaintiffs' Count VIII Fraud claim as to TVT, MHS, and Stewart.

**E.     Defendant PHH's Motion to Dismiss Certain Claims Asserted in Plaintiffs' Second Amended Complaint [Doc. 17]**

It is well established that "[a] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it

subsequently is modified." **WRIGHT & MILLER, FED. PRAC. & PROC. CIV., § 1476** (3d ed.). The Fourth Circuit has reaffirmed this principle by stating that "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir. 2000); *see also* **Turner v. Knight**, 192 F. Supp. 21 391, 397 (D. Md. 2002) (denying defendants' first motion to dismiss as moot because an amended complaint had been filed, but considering the defendants' second motion to dismiss because it addressed the plaintiff's amended complaint).

As the Court previously noted,  the Defendant PHH Mortgage filed its Motion to Dismiss Certain Claims Asserted in Plaintiffs' Second Amended Complaint [Doc. 17] on June 4, 2012.   The Plaintiffs filed a motion to amend their Second Amended Complaint on September 20, 2012. [Doc. 43].  The Court granted that motion previously in this Order [Doc. 47].  The Third Amended Complaint appears to state new claims against PHH Mortgage.  Accordingly, this Court **DENIES AS MOOT** the Defendant PHH Mortgage's "Motion to Dismiss Certain Claims Asserted in Plaintiffs' Second Amended Complaint."

**F.    Defendant PHH's Motion for Leave to File Surreply [Doc. 39]**

The local rules of this Court provide that "[p]arties shall not file surreply memoranda except by leave of court." **N.D.W. VA. R. CIV. P. 7.02(b)(4)**; *Thomas v. Branch Banking & Trust Co.*, 443 F. Supp. 2d 806, 809 n.2 (N.D.W. Va. 2006).  A surreply is generally permitted when a party seeks to respond to new material that an

opposing party has introduced for the first time in its reply brief. *See **Greene, ex rel. C.**

***G. v. Nationwide Mut. Ins. Co.***, Civil Action No. 5:09-CV-134, 2010 WL 892211 (N.D.W.

Va., Mar. 10, 2010); *see also* DAVID F. HERR, ROGER S. HAYDOCK, AND JEFFREY W.

STEMPEL, MOTION PRACTICE § 3.08 (2012).  If a court does not rely upon the new material

raised in the opposing party's reply brief to reach its decision in a matter, then a surreply

is superfluous and unnecessary. *See **E.E.O.C. v. LA Weight Loss***, 509 F. Supp. 2d

527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court

did not rely upon the new case law and evidence in making its decision).

The Defendant PHH Mortgage Corporation requests leave to file a surreply in

order to address the merits of the *Travis* decision.  The Defendant contends that the

Plaintiffs attempted to distinguish the *Travis* decision, which resulted in a misconstruction

of the case.  Prior to this motion, the Defendant PHH Mortgage Corporation filed a

Supplemental Memorandum of Law In Support of "Motion of PHH Mortgage Corporation

to Dismiss Certain Claims Asserted in the Second Amended Complaint" [Doc. 36] to

direct the Court's attention to a decision which had not been rendered at the time PHH

Mortgage filed its Reply to "Plaintiffs' Response to Defendant PHH Mortgage

Corporation's Motion to Dismiss Certain Claims Asserted in Plaintiffs' Second Amended

Complaint."  PHH Mortgage directed the Court's attention to *Travis v. JP Morgan Chase*

*Bank, N.A.*, 2012 WL 3193341 (N.D.W. Va. Aug. 6, 2012). The Defendant alleges that

the Plaintiffs argued the merits of the decision in their "Objection to Defendant PHH

Mortgage Corporation's Supplemental Memorandum of Law in Support of PHH Mortgage

Corporation's Motion to Dismiss Certain Claims Asserted in the Second Amended

Complaint" [Doc. 37].  This Court ultimately disregarded PHH Mortgage's Supplemental

45

Memorandum [Doc. 36] because it was untimely filed pursuant to L.R. Civ. P. 7.02 which clearly provides that "responses to motion shall be filed and served within fourteen (14) days from the date of service of the motion," and that "replies shall be filed and served within seven (7) days from the date of service of the response to the motion."  Because PHH Mortgage did not seek leave of the Court to file outside of this time frame, its Supplemental Memorandum was disregarded.

The Court holds that a surreply is not warranted.  A surreply is unnecessary because the Plaintiffs did not raise any new material in their reply to the Defendant PHH Mortgage Corporation's Motion to Dismiss.  In fact, this case was never presented in Plaintiffs' reply that was filed on June 22, 2012.  Thus, it is not necessary for the Defendant PHH Mortgage Corporation to file a surreply.  Accordingly, the Defendant PHH's motion for leave to file surreply is **DENIED.**

## V.   CONCLUSION

In summary, for the reasons discussed above, the Court:

**1.  FINDS** the Defendant InstaMortgage.com's Motion to Dismiss [Doc. 5] is **MOOT** because the Plaintiffs filed a Notice of Voluntary Dismissal of Defendant InstaMortgage.com [Doc. 15]**;**

**2.  DENIES AS MOOT** the Defendants MHS, TVT, and Stewart's first Motion to Dismiss Plaintiffs' Complaint [Doc. 9]**;**

**3.  GRANTS** the Plaintiffs' Motion to Amend Second Amended Complaint [Doc. 43].

**4.  GRANTS IN PART** and **DENIES IN PART** the Defendants MHS, TVT, and

46

Stewart's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 16].  To summarize the Court's rulings:

    a. as to Defendant Stewart, the following claims are **DISMISSED**:

        1. Plaintiffs' Count II, FDCPA claims in its entirety;

        2. Plaintiffs' Count I, WVCCPA claims in its entirety;

        3. Plaintiffs' Count III, Intentional Infliction of Emotional Distress claim;

        4. Plaintiffs' Count VI, Breach of Fiduciary Duty claim upon Motion by the Plaintiffs for Voluntary Dismissal of said claim [Doc. 24];and

        5. Plaintiffs' Count VIII, Fraud claim.

    b. as to Defendant Stewart, no claims remain.  Thus, the Court **DIRECTS** the Clerk of the Court to terminate Defendant Stewart as a party.

    c. as to Defendants TVT and MHS, the following claims are **DISMISSED**:

        1.  the FDCPA Harassment or Abuse claim under 15 U.S.C. § 1692d;

        2.  the FDCPA Unfair Practices claim under 15 U.S.C. § 1692f;

        3.  the FDCPA Validation of Debts claim under 15 U.S.C. § 1692g;

        4.  the FDCPA Communication in Connection with Debt Collection claim under 15 U.S.C. § 1692c;

        5.  the WVCCPA Threats or Coercion claim under W. Va. Code § 46A-2-124;

        6.  the WVCCPA Oppression and Abuse claim under W. Va. Code § 46A-2-125;

7.  the WVCCPA Fraudulent, Deceptive or Misleading Representations claim under W. Va. Code § 46A-2-127;

8.  the WVCCPA Unfair or Unconscionable Means claim under W. Va. Code § 46A-2-128;

9.  the WVCCPA Unreasonable Publication claim under W. Va. Code § 46A-2-126;

10. the WVCCPA Willful Violations claim under W. Va. Code § 46A-5-105;

11. Plaintiffs' Count III, Intentional Infliction of Emotional Distress claim;

12. Plaintiffs' Count VI, Breach of Fiduciary Duty claim upon Motion by the Plaintiffs for Voluntary Dismissal of said claim [Doc. 24]; and

13. Plaintiffs' Count VIII, Fraud claim.

d.  as to Defendants TVT and MHS, the following claims remain:

1. the FDCPA False or Misleading Representations claim under 15 U.S.C. § 1692e; and

2. the WVCCPA Practice of Law by Debt Collectors claim under W. Va. Code § 46A-2-123.

**5.  DENIES AS MOOT** Defendant PHH's Motion to Dismiss Certain Claims Asserted in Plaintiffs' Second Amended Complaint [Doc. 17];

**6.  DENIES** Defendant PHH's Motion to File Surreply [Doc. 39].

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** November 30, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE