**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**RUSSELL PATRICK and
MONA PATRICK,**

        Plaintiffs,

**v.**                           **CIVIL ACTION NO. 3:12-CV-39
(JUDGE GROH)**

**PHH MORTGAGE CORPORATION,**

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART PHH MORTGAGE CORPORATION'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT**

      Currently pending before the Court is Defendant PHH Mortgage Corporation's

Motion to Dismiss the Third Amended Complaint filed on December 10, 2012.  On January

11, 2013, Plaintiffs filed their Response to Defendant PHH Mortgage Corporation's Motion

to Dismiss.  On January 22, 2013, Defendant PHH Mortgage Corporation filed its Reply.

Therefore, the motion has been fully briefed and is ripe for this Court's review.  For the

following reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendant PHH

Mortgage Corporation's Motion to Dismiss the Third Amended Complaint [Doc. 56].

**I.  BACKGROUND**

      Plaintiffs allege Defendant PHH Mortgage Corporation ("PHH") violated the West

Virginia Consumer Credit and Protection Act § 46A-2-101 *et seq.* ("WVCCPA") and the

Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Plaintiffs assert

related common law claims for intentional infliction of emotional distress and fraud

arising out of PHH's alleged illegal collection efforts.

According to the Third Amended Complaint [Doc. 45] ("Complaint"), Plaintiffs, Russell and Mona Patrick, are residents of West Virginia. Compl. ¶ 1.   In 2009, Plaintiffs obtained a mortgage note and deed of trust to finance the purchase of their home with a company named InstaMortgage.com. *Id.*  Plaintiffs fell behind on their mortgage payments and applied for a loan modification under the Home Affordable Mortgage Program ("HAMP"). *Id.*  Plaintiffs were approved for and executed the loan modification agreement in December 2010. *Id.*  Plaintiffs allege that the loan modification agreement "effectively modified their mortgage note and effectively brought their note current and their loan was no longer deemed in default." *see id.* at ¶¶ 1, 38.  A copy of the fully executed loan modification agreement was duly recorded in the land records with the Clerk for the County Commission of Jefferson County, West Virginia. *Id.* at ¶ 39.

Plaintiffs allege that approximately two months after they began paying under the loan modification agreement, in February 2011, they began to receive collections calls from a company named PHH. *Id.* at ¶ 1.  The collection agents allegedly informed the Plaintiffs that they were in default of their mortgage agreement. *Id.*  According to Plaintiffs, the calls persisted throughout 2010 and 2011, and Plaintiffs informed the collection agents calling on behalf of PHH that they were not in default. *Id.*  Plaintiffs allege that some times they were transferred to the customer service department or loan modification department, and the customer service agents in these departments told them to ignore the collection agents' calls because the loan modification payments were received and the collection agents could simply not access or see the information

2

regarding the loan modification. *Id.* According to Plaintiffs, during one of these calls with a customer service representative of PHH, they were told that there was an excess of fourteen thousand dollars ($14,000.00) being held in escrow, which had not been applied to their loan. *Id.* During this same time period, Plaintiffs allege they received notices from PHH indicating they were current on their loan modification, had met the goal of making one full year of timely payments, and received an incentive payment that was applied to their loan pursuant to the terms of the HAMP loan. *Id.*

Plaintiffs allege that in or about 2011, they started to receive more serious and threatening letters from PHH stating that unless they brought their loan current, PHH would initiate foreclosure proceedings against them. *Id.* After receiving such communication, Plaintiffs allegedly provided PHH with their bank records showing that they were current on their obligations. *Id.* at ¶ 53. In or about September 2011, Plaintiffs allegedly responded to one of PHH's letters, which provided the name and number of the attorney for PHH: Morris, Hardwick, Schneider, LLC ("MHS") with a telephone number of (678) 298-2117 in Atlanta Georgia. *Id.* at ¶ 1. According to Plaintiffs, they spoke with Scott Stewart of MHS and informed him that their loan was not in default and provided information regarding their loan modification and their payments. Allegedly, Stewart informed Plaintiffs that he would investigate the matter. *Id.* at ¶ 68. After this conversation, Plaintiffs received another collection/foreclosure letter stating they were in default of their loan. *Id.* at ¶ 1. Plaintiffs allegedly telephoned Stewart, but they were unable to speak with him. *Id.* Instead, Plaintiffs left several voicemail messages advising Stewart that they disputed the debt. *Id.*

On or about October 11, 2011, Plaintiffs received a letter from TVT threatening to

foreclose on their property. *Id.* at ¶ 75.  The letter allegedly was on TVT letter head and was enclosed in an envelope with the name and address of MHS; Plaintiffs were allegedly confused about what entity they were dealing with. *Id.* at ¶¶ 1, 76.  After receiving this letter, Plaintiffs contacted TVT as instructed by the terms of the collection letter.  *Id.* at ¶¶ 1, 78. Plaintiffs were transferred to the voicemail of an individual who was supposed to be handling their file for TVT.  *Id.* at ¶ 1. Plaintiffs left a detailed voicemail message with TVT disputing the debt and explaining that they were current on their loan through the loan modification program.  *Id.* Plaintiffs never received a response from TVT.  *Id.*

On or about January 30, 2012, Plaintiffs received collection/foreclosure letters from TVT.  *Id.* at ¶ 79.  After receiving this letter, Plaintiffs contacted TVT to dispute the claimed default by PHH.  *Id.* at ¶ 82.  Again, Plaintiffs were transferred to the voicemail of the person handling their file.  *Id.*  Plaintiffs again left a voicemail message, but TVT never responded to this telephone communication. *Id.*

Then, Plaintiffs were served with certified mail letters stating their home would be sold on February 23, 2012. *Id.* at ¶¶ 1, 83.  Plaintiffs wrote to TVT and asked them to cancel the foreclosure sale because they were not in default on their loan. *Id.* at ¶ 84. The foreclosure sale was not continued, and Plaintiffs' property was sold at a foreclosure sale. *Id.* at ¶¶ 1, 88.  Plaintiffs learned of the sale when realtors and other persons came onto their property with notices of the foreclosure sale and requests for them to vacate their home. *Id.*  Allegedly, TVT falsely told PHH that the property was sold at a foreclosure sale on February 23, 2012, even though the sale was never consummated through a legal recording. *Id.* at ¶ 1.   PHH also took steps to cancel the

4

Plaintiffs' home owners' insurance with USAA Insurance, which was held by the Plaintiffs individually. *Id.* at ¶¶ 94-99.  Plaintiffs then filed this civil action.

After filing this action, Plaintiffs informed PHH through its attorney and trustee that they would be escrowing their mortgage payments due to the misapplication and rejection of payments by PHH. *Id.* at ¶ 101.  In or about July 2012, PHH rejected a full and timely mortgage payment.  *Id.* at ¶ 103.  Also, PHH communicated directly with the Plaintiffs about their debt. *Id.*

In or about August 2012, Plaintiffs sent in two monthly mortgage payments (representing the returned July payment and the August payment) to PHH. *Id.* at ¶ 104.  PHH rejected the two full mortgage payments. *Id.*  Again, PHH communicated directly with Plaintiffs about their debt. *Id.*  Last, in or about July/August 2012, PHH refused to pay the homeowners' insurance premiums despite having received funds which are held in escrow to pay the insurance policy. *Id.* at ¶ 105.

## II.  RULE 12(b)(6) STANDARD

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.'"  **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (quoting **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (emphasis added)).  Legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure, and only allegations of fact are entitled to the presumption of truth. *See* **Ashcroft v. Iqbal**, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1950 (2009).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the

allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rules of Evidence 201. ***Philips v. Pitt Cnty. Mem'l Hosp.***, 572 F.3d 176, 180 (4th Cir. 2009) (citing ***Blankenship v. Manchin***, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); *see also* ***Katyle v. Penn Nat'l Gaming, Inc.***, 637 F.3d 462, 466 (4th Cir. 2011).

### III.   ANALYSIS

Defendant PHH moves the Court, pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, to dismiss all of the claims asserted by Plaintiffs against PHH in the Third Amended Complaint.  Plaintiffs have alleged eight counts in their Complaint, and each count is addressed below.

#### 1.  Plaintiffs' Count I: WVCCPA Violations

Plaintiffs alleged numerous violations of the WVCCPA in Count I.  In order to be subject to the WVCCPA, Plaintiffs must have alleged sufficient facts to qualify PHH as a debt collector.

##### a.      Debt Collector Under the WVCCPA

The West Virginia Code defines debt collector as "any person or organization engaging directly or indirectly in debt collection." **W. Va. Code § 46A-2-122.**  Debt

6

collection is "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer."  *Id.* Therefore, under the WVCCPA, an organization is deemed a "debt collector" even if its involvement in the debt collection is merely indirect.  ***Rewalt v. Draper & Goldberg, P.L.L.C****,* 2008 WL 2566957 (S.D.W. Va. June 24, 2008).  Additionally, the West Virginia Supreme Court of Appeals declined to create exceptions for creditors collecting their own debts, and the Court held that "all who engage in debt collection are alike subject to [the WVCCPA's] prohibitions."  ***Thomas v. Firestone Tire and Rubber Co.****,* 266 S.E.2d 905, 909 (W. Va. 1980).  The Court emphasized the legislature's use of the word "any" in defining a debt collector, and stated "it would be improper for this Court to limit the application of the statute to the activities of professional collection agencies."  *Id.*

Plaintiffs have alleged that PHH is "a debt collector engaging directly or indirectly in debt collection within the State of West Virginia, including Jefferson County, West Virginia."  Compl. ¶ 20.  Plaintiffs state that PHH "sought to collect from Plaintiffs an alleged debt stemming from a mortgage note for the Plaintiffs' residential property."  Compl. ¶ 35.  Additionally, Plaintiffs have alleged that PHH sought collection of past due amounts that were no longer due and violated the terms of the HAMP agreement.  Compl. ¶ 42.  Plaintiffs also alleged that PHH sent threatening letters misrepresenting the debt, claiming a default when none existed, and threatening foreclosure.  Compl. ¶¶ 49, 50.  Accordingly, Plaintiffs have alleged sufficient facts that, if true, qualifies PHH as a debt collector under the WVCCPA.

### b.      Statements of Accounts – § 46A-2-114

Plaintiffs allege that PHH on multiple occasions violated W. Va. Code § 46A-2-114 "by failing to provide the Plaintiffs with a statement of their account or monthly statement showing the receipt of payment and application of the payment to the outstanding debt, from February 2011 to the filing of this Amended Complaint." Compl. ¶ 108.  Defendants argue that dismissal is appropriate because no where in Plaintiffs' Complaint do they allege that they made a written request for a statement of their account.  West Virginia Code § 46A-2-114(1) does not require Plaintiffs to make a written request.  Plaintiffs have alleged that Defendants failed to provide them with a monthly statement showing receipt of payment.  Therefore, accepting the factual allegation as true, the Court **DENIES** Defendant's motion to dismiss this claim.

### c.      Limitation on Default Charges – § 46A-2-115

Plaintiffs allege that PHH held "multiple payments made by the Plaintiffs and failed to properly apply the payments to principal and interest as required by the terms of the note, deed of trust and applicable legal provisions . . . from February 2011 to the filing of this Amended Complaint."  Compl. ¶ 109.  Plaintiffs allege that they made "each and every payment pursuant to the HAMP agreement from approximately January 2011 to present date."  Compl. ¶ 40.  Plaintiffs also allege that PHH refused full and timely mortgage payments in July 2012 and in August 2012.  Compl. ¶¶ 103, 104.  On the other hand, Defendant argues that Plaintiffs do not state a claim upon which relief may be granted because they "do not give the dates of the payments allegedly held and not applied in violation of W. Va. Code § 46A-2-115 . . . ." ([Doc. 57], p. 3).

The statute provides that "[a]ll amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due . . . ." **W. VA. CODE § 46A-2-115**.  The statute does not require Plaintiffs to allege the dates of the payments.  Rather, Plaintiffs satisfied the statute by pleading that money they paid to PHH pursuant to their loan agreement was not credited against payments due.  Therefore, considering the factual allegations in the light most favorable to Plaintiffs, the Court **DENIES** Defendant's motion to dismiss as to this claim.

### d.    Threats or Coercion – § 46A-2-124

Plaintiffs allege that PHH "on multiple occasions did employ threats or coercion in an attempt to collect its debt in violation of West Virginia Code § 46A-2-124 from February 2011 to the filing of this Amended Complaint."  Compl. ¶ 110.  West Virginia Code § 46A-2-124 provides that "[n]o debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce."  **W. VA. CODE § 46A-2-124**.  The section also provides a list of non-exclusive conduct that is deemed to violate the section. *Id.*  Specifically, section 46A-2-124(c) provides that "[f]alse accusations made to another person, including any credit reporting agency, that a consumer is willfully refusing to pay a just debt, or the threat to so make false accusations." *Id.*  In their Complaint, Plaintiffs pled that PHH employed "threats or coercion in an attempt to collect its debt in violation of *West Virginia Code* § 46A-2-124." Compl. ¶ 110.  Plaintiffs allege that they made "each and every payment pursuant to the HAMP agreement from approximately January 2011 to present date" and that PHH continued to "seek collection of past due amounts that were no longer due."  Compl. ¶¶

9

40-42.  Plaintiffs also state that PHH threatened foreclosure against them although they were not in default and that PHH hired MHS as counsel to pursue a foreclosure of Plaintiffs' property.  Compl. ¶ 49, 52.  Additionally, PHH made statements to USAA Insurance providing false information–that Plaintiffs were foreclosed upon–that resulted in the cancellation of Plaintiffs' homeowner's insurance policy.   Compl. ¶ 94.  The Court finds Plaintiffs allege sufficient facts to state a claim upon which relief could be granted under West Virginia Code § 46A-2-124.  Thus, this Court **DENIES** PHH's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-124.

### e.    Oppression and Abuse – § 46A-2-125

Plaintiffs allege that PHH "on multiple occasions, did unreasonably oppress or abuse the Plaintiffs in an attempt to coerce payment of a debt which was not due beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-125." Compl. ¶ 111.  West Virginia Code § 46A-2-125 prohibits debt collectors from unreasonably oppressing or abusing any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another.  The section outlines conduct that is deemed to violate the section such as using profane or obscene language and placing telephone calls without revealing the caller's identity with the intent to annoy, harass, or threaten any person at the called number. *See* **W. VA. CODE § 46A-2-125**.

In this case, Plaintiffs have failed to plead sufficient facts alleging PHH was *unreasonably* oppressive or abusive in connection with the collection of or attempt to collect the alleged debt.   Plaintiffs allege that a representative of PHH trespassed on

Plaintiffs' property to leave debt collection communications on behalf of PHH, but this is not, by itself, unreasonably oppressive or abusive in connection with the collection of or attempt to collect a debt.  Compl. ¶ 48.  Additionally, no facts have been alleged indicating that PHH did any of the conduct deemed to violate section 46A-2-125 or committed similarly unreasonably oppressive or abusive conduct in an attempt to collect the alleged debt.  The Court finds Plaintiffs failed to allege facts against PHH sufficient to state a claim upon which relief can be granted under West Virginia Code § 46A-2-125.  Thus, this Court **GRANTS** PHH's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-125.

### f. Fraudulent, Deceptive or Misleading Representations – § 46A-2-127

Plaintiffs allege that PHH "on multiple occasions, did misrepresent the amount of the obligation due" and "employ fraudulent and/or misleading representations in an attempt to collect its debt beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-127." Compl. ¶ 112.  Plaintiffs also allege that PHH "on multiple occasions, did improperly charge or represent charges not permitted by contract or law" and "employ[ed] fraudulent and/or misleading representations in an attempt to collect its debt" beginning in February 2011 and continuing each month until the filing of Plaintiffs' Amended Complaint.  Compl. ¶¶ 113-114.

West Virginia Code provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." **W. VA. CODE § 46A-2-127**.  The section

provides an example of conduct that violates this section: "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding."  *Id.*  Plaintiffs specifically allege that PHH sought "collection of past due amounts that were no longer due and violated the terms of the HAMP agreement."  Compl. ¶ 42.  Also, Plaintiffs state that PHH sent "threatening letters misrepresenting the debt and claiming a default when none existed."  Compl. ¶ 50.  Section 46A-2-127 provides a second pertinent example of conduct that violates it: "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation."  W. VA. CODE § 46A-2-127(g).  Plaintiffs have alleged that PHH improperly charged default interest, late fees, and property preservation fees on Plaintiffs' account even though they were in full compliance with the terms of the HAMP agreement. Compl. ¶¶ 43-45.  Accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs have sufficiently alleged violations of West Virginia Code § 46A-2-127. Accordingly, the Court **DENIES** PHH's motion to dismiss this claim.

### g.      Unfair or Unconscionable Means – § 46A-2-128

Plaintiffs allege that PHH "on multiple occasions, did employ unfair and/or unconscionable means in an attempt to collect its debt beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-128." Compl. ¶ 115.  Plaintiffs specifically allege that PHH "was informed by the Plaintiffs that they were represented by counsel, provided the name and telephone number of counsel, and subsequently communicated with the Plaintiffs when

12

it knew or should have known they were represented by counsel in violation of *West Virginia Code* § 46A-2-128(e)."  Compl. ¶ 116.

Section 46A-2-128 provides that "[n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim."  **W. VA. CODE § 46A-2-128**.  The statute designates conduct that is "deemed to violate this section" including "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication." **W. VA. CODE § 46A-2-128(e)**.

Plaintiffs allege that after the foreclosure sale, they retained counsel.  Compl. ¶ 89.  Plaintiffs allege that PHH knew or should have known that they retained counsel as PHH was provided with Plaintiffs' counsel's name and telephone number.  Compl. ¶ 116.  *See also* Compl. ¶ 127.  Also, Plaintiffs allege that PHH communicated directly with Plaintiffs about its debt, rather than communicating with Plaintiffs' counsel, in July and August 2012.  Compl. ¶¶ 103, 104.  The Court finds that viewing the factual allegations as true, Plaintiffs have alleged facts sufficient to state a claim upon which relief can be granted under West Virginia Code § 46A-2-128.  Thus, the Court **DENIES** PHH's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-128.

### h.    Practice of Law by Debt Collectors – § 46A-2-123

Plaintiffs allege that PHH "held Stewart out to be an attorney and engaged in the conduct that deemed to be the practice of law when not licensed to practice law in West Virginia in violation of *West Virginia Code* § 46A-2-123." Compl. ¶ 117.  West Virginia

13

Code section 46A-2-123 states that "[u]nless a licensed attorney in this State, no debt collector shall engage in conduct deemed the practice of law." **W. VA. CODE § 46A-2-123**.  The section also provides conduct that is deemed the practice of law including "[t]he performance of legal services, furnishing of legal advice or false representation, direct or by implication, that any person is an attorney" and "[a]ny communication with consumers in the name of an attorney or upon stationery or other written matter bearing an attorney's name."  *Id.*

Plaintiffs allege that PHH advised them to call its attorney in response to a debt collection/foreclosure threat letter Plaintiffs had received; Plaintiffs were provided the telephone number of MHS and spoke with Stewart.  Compl. ¶ 59.  Stewart is allegedly also the Vice President of TVT. *Id.*  Plaintiffs further allege that Stewart "represented himself and/or held himself out to be an attorney employed by MHS which represented PHH."  Compl. ¶ 66.  Plaintiffs informed Stewart that "they had a loan modification and were current on the modification payments despite the claims of PHH."  Compl. ¶ 67.  Stewart "advised the Plaintiffs that he would investigate their issues and dispute of the default."  Compl. ¶ 68.  According to Plaintiffs, "Stewart failed to investigate or perform any action to confirm or deny the claims of the Plaintiffs that they were not in default and were current on their HAMP agreement."  Compl. ¶ 69.  Plaintiffs allege that Stewart is not an attorney licensed to practice law in West Virginia; however, he engaged in discussing legal matters with Plaintiffs by leading them to believe that he–an alleged attorney–would investigate their claims.  Compl. ¶¶ 70, 118.

However, Plaintiffs' allegations go to the actions of TVT, MHS, and Stewart.  The allegations against PHH simply state that PHH hired MHS as counsel.  Compl. ¶ 52.

14

Therefore, this Court finds that Plaintiffs have not sufficiently alleged a violation of West Virginia Code § 46A-2-123 against PHH as PHH did not engage in conduct deemed the practice of law.  Accordingly, the Court **GRANTS** PHH's motion to dismiss this claim.

### i.    Unreasonable Publication– § 46A-2-126[1]

Plaintiffs allege that PHH "did unreasonably publicize information relating to any alleged indebtedness of the Plaintiffs when it knew or had reason to know that the debt was not owed as claimed by the Defendants in violation of *West Virginia Code* § 46A-3-126." Compl. ¶ 125.  West Virginia Code § 46A-2-126 provides that "[n]o debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer."  **W. VA. CODE § 46A-2-126**.  Conduct that is deemed to violate this section includes "[t]he disclosure, publication or communication of information relating to a consumer's indebtedness to any other person other than a credit reporting agency, by publishing or posting any list of consumers, commonly known as 'deadbeat lists,' except lists to prevent the fraudulent use of credit accounts or credit cards, by advertising for sale any claim to enforce payment thereof, or in any manner other than through proper legal action, process or proceeding." **W. VA. CODE § 46A-2-126(C).**

In this case, Plaintiffs sufficiently plead facts that PHH unreasonably publicized information relating to Plaintiffs or their alleged indebtedness.  Plaintiffs allege that they made "each and every payment pursuant to the HAMP agreement from approximately January 2011 to present date" and that PHH continued to "seek collection of past due

---

[1]Plaintiffs' Complaint states their claim as a violation of West Virginia Code § 46A-3-126; however, the code section does not exist.  Because Plaintiffs allege PHH "unreasonably publiciz[ed] information," the Court analyzed the claim under West Virginia Code § 46A-2-126.

amounts that were no longer due." Compl. ¶¶ 40-42. Plaintiffs also state that PHH made statements to USAA Insurance providing false information–that Plaintiffs were foreclosed upon–that resulted in the cancellation of Plaintiffs' homeowner's insurance policy. Compl. ¶ 94. Accordingly the Court finds that Plaintiffs sufficiently allege facts to state a claim upon which relief can be granted. Thus, this Court **DENIES** PHH's motion to dismiss Plaintiffs' claim under West Virginia Code § 46A-2-126.

### j.    Willful Violations– § 46A-5-105

Plaintiffs allege that PHH "violated the WVCCPA by illegally seeking to collect and foreclose upon residential realty when it knew the debt was not valid or intentionally, recklessly, willfully, or wantonly ignored the continued disputes raised by the Plaintiffs." Compl. ¶ 123. Moreover, Plaintiffs request punitive damages for violations of WVCCPA. *See generally* Compl.

West Virginia Code § 46A-5-105 provides that "[i]f a creditor has willfully violated the provisions of this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, in addition to the remedy provided in section one hundred one of this article, the court may cancel the debt when the debt is not secured by a security interest." **W. VA. CODE § 46A-5-105**. The available remedy under this section is cancellation of unsecured debt, not punitive damages. Additionally, "the penalty provision of the WVCCPA has been interpreted to preclude the award of punitive damages." *Tucker v. Navy Fed. Credit Union*, Civil Action No. 3:10-CV-59, 2011 WL 6219852 *10 (N.D.W. Va. Dec. 14, 2011) (citing *One Valley Bank of Oak Hill, Inc. v. Bolen,* 425 S.E.2d 829, 834 (W. Va. 1992)). For these reasons, inasmuch as Plaintiffs seek punitive damages under this section, the Court **GRANTS** PHH's motion

16

to dismiss Plaintiffs' claim for punitive damages for the alleged violations of the WVCCPA.

> **k. Delinquency Charges on Precomputed Consumer Credit Sales or Consumer Loans– § 46A-3-112**

Plaintiffs allege that PHH violated this section by improperly charging and representing as charged late fees or default fees on Plaintiffs' account beginning in February 2011 and continuing each month until the filing of Plaintiffs' Amended Complaint.  Compl. ¶ 124.  West Virginia Code § 46A-3-112 provides that "[n]o delinquency charge may be collected on an installment which is paid in full within ten days after its scheduled or deferred installment due date, even though an earlier maturing installment or a delinquency or deferral charge on an earlier installment may not have been paid in full." **W. VA. CODE § 46A-3-112(3)**.   Plaintiffs allege that in December of 2010, "Plaintiffs entered into a loan modification under the Home Affordable Mortgage Program (hereafter "HAMP agreement") which deemed their account current and began new mortgage payments pursuant to the HAMP agreement." Compl. ¶ 38.  Plaintiffs state that they made "each and every payment pursuant to the HAMP agreement from approximately January 2011 to present date."  Compl. ¶ 40.  Plaintiffs allege that beginning in February 2011, PHH charged a default interest, a late fee, and a property preservation fee on Plaintiffs' account despite their compliance with the terms of the HAMP agreement.  Compl. ¶¶ 43-45.  Plaintiff has alleged factual allegations that if true would be sufficient to state a claim for relief.  Therefore, the Court **DENIES** PHH's motion to dismiss as to this claim.

17

I.      **Claims Under § 46A-3-109, § 46A-3-115, and § 46A-6-101** *et seq.*

Plaintiffs allege that PHH's failure "to pay the insurance premiums from funds collected and escrowed or to pay said funds over to the Plaintiffs, constitutes a violation of *West Virginia Code* § 46A-3-109 and § 46A-3-115 as well as an unfair and deceptive practice pursuant to *West Virginia Code* § 46A-6-101 et seq."  Compl. ¶ 130.

First, West Virginia Code § 46A-3-109 provides that a creditor "may contract for and receive the following additional charges in connection with a . . . consumer loan: (2) Charges for insurance as described in subsection (b) of this section."  Subsection (b) provides that a creditor "may take, obtain or provide . . . reasonable insurance on any real or personal property offered as security."  Also, "[w]hen the insurance is obtained or provided by or through a creditor, the creditor may collect from the consumer or include . . . as part of the principal of a consumer loan . . . the identifiable charge." **W. VA. CODE § 46A-3-109(b)(3)**.  Section 46A-3-109 also provides that "[a]n insurer, seller or creditor who fails to refund any unused insurance premium or provide the proper notification of payoff is liable for civil damages up to three times the amount of the unused premium . . . ." **W. VA. CODE § 46A-3-109(b)(8)**.  Plaintiffs allege that PHH collected and escrowed funds paid by Plaintiffs for purposes of paying their insurance and that PHH then failed to pay Plaintiffs' insurance premiums from the escrowed funds.  Compl. ¶ 130.  Plaintiffs have alleged sufficient facts to state a plausible claim.  Therefore, the Court **DENIES** PHH's motion to dismiss as to this claim.

Second, West Virginia Code § 46A-3-115 provides that if the consumer loan "contains covenants by the consumer to perform certain duties pertaining to insuring . . . collateral . . . and if the creditor pursuant to the [loan] pays for performance of such

18

duties on behalf of the consumer, the creditor may add the amounts so paid to the debt."  **W. Va. Code § 46A-3-115(1)**.  This statute is inapplicable.  Plaintiffs alleged that "in or about August of 2012, PHH did fail to pay the home owner's insurance despite holding funds held in escrow for said purpose."  Compl. ¶ 105.  Plaintiffs' allegations do not fit under this statute.  Plaintiffs do not allege that their loan contains covenants for them to perform duties pertaining to insuring their home.  Plaintiffs also do not allege that PHH had a duty to pay for the insurance on behalf of Plaintiffs.  Because this statute does not apply, the Court **GRANTS** PHH's motion to dismiss as to Plaintiffs' claim under West Virginia Code § 46A-3-115.

Last, Plaintiffs allege PHH violated West Virginia Code § 46A-6-101 *et seq.* by failing to pay insurance premiums to USAA Insurance from funds collected from Plaintiffs and escrowed to pay the insurance funds and by representing to USAA Insurance that Plaintiffs' property was foreclosed upon.  Plaintiffs allege PHH's actions constituted an unfair and deceptive practice.  Compl. ¶¶ 94, 105.  West Virginia Code § 46A-6-104 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Additionally, West Virginia Code § 46A-6-102 defines "unfair methods of competition and unfair or deceptive acts or practices" to include, but not be limited to "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" and "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omissions of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of

any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby." **W. Va. Code § 46A-6-102(L), (M).**

Plaintiffs allege that PHH knew the foreclosure sale had occurred in error and that no trustee's report of foreclosure sale had been filed, no deed recorded or other evidence confirming the foreclosure sale and that PHH on February 29, 2012, intentionally and willfully provided false information to USAA Insurance in an attempt to seek the cancellation of the Plaintiffs' homeowner's insurance policy. Compl. ¶ 94. Accordingly, in viewing the factual allegations in the light most favorable to Plaintiffs, the Court **DENIES** PHH's motion to dismiss this claim.

### 2. Plaintiffs' Count II: FDCPA Violations

Plaintiffs allege numerous violations of the Fair Debt Collection Practices Act ("FDCPA"). In order to be subject to the FDCPA, the Defendant, PHH, must be a debt collector under the FDCPA. PHH argues that Plaintiffs' cause of action fails as a matter of law because PHH does not meet the FDCPA's definition of a debt collector.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." **15 U.S.C. § 1692a(6)**. The FDCPA also provides exceptions to the broad definition of "debt collector." The term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow management; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by

such person; or (iv) concerns a debt obtained by such person as a
secured party in a commercial credit transaction involving the creditor.

**15 U.S.C. § 1692a(6)**.    Additionally, other district courts have found that "[t]he FDCPA

specifically excludes creditors collecting their own consumer debts . . . Mortgage loan

beneficiaries and servicing companies are not 'debt collectors' under the FDCPA."

***Derakshan v. Mortg. Elec. Registration Sys.***, 2009 WL 3346780, *7 (C.D. Cal. Oct.

13, 2009) (citing ***Perry v. Stewart Title Co.***, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[t]he

legislative history of section 1692a(6) indicates conclusively that a debt collector does

not include the consumer's creditors, a mortgage servicing company, or an assignee of

a debt, as long as the debt was not in default at the time it was assigned")).  Indeed,

multiple district courts in this Circuit have held that "debt collectors do not include

creditors, mortgagors, mortgage servicing companies, trustees exercising their fiduciary

duties, or assignees of debt so long as the debt was not in default at the time it was

assigned."  ***Velez v. Bank of N.Y. Mellon Trust Co., N.A.***, 2012 WL 5305508, *4 (E.D.

Va. Oct. 23, 2012) (citing ***Ruggia v. Washington Mut.***, 719 F. Supp. 2d 642, 648 (E.D.

Va. 2010) (collecting and reviewing cases)); *see also* ***SunTrust Mortg., Inc. v. Pippin***,

2012 WL 5023109, *5 (W.D.N.C. Oct. 16, 2012) (holding that "SunTrust, as owner and

holder of the Promissory Note, had the ability to seek to collect on its own debt"); ***Blick***

***v. Wells Fargo Bank, N.A.***, 2012 WL 1030137, *7 (W.D. Va. Mar. 27, 2012) (servicer of

a loan is not a "debt collector" under the FDCPA).

In this case, Plaintiffs state that PHH "is a debt collector engaging directly or

indirectly in debt collection within the State of West Virginia, including Jefferson

County."  Compl. ¶ 20.  This allegation essentially recites the FDCPA's definition without

21

including any factual allegations to support this legal conclusion.  Plaintiffs also allege

that PHH "on multiple occasions from February 2011 to the present, did send

threatening letters misrepresenting the debt and claiming a default when none existed."

Compl. ¶ 50.  However, Plaintiffs state that in 2009, they obtained a mortgage note and

deed of trust to finance the purchase of their home with a company named

InstaMortgage.com. *Id.*  Plaintiffs fell behind on their mortgage payments and applied

for a loan modification under the Home Affordable Mortgage Program ("HAMP"). *Id.*

Plaintiffs acknowledge in their Complaint that PHH is not a separate entity from

InstaMortgage.com and that InstaMortgage.com was simply a trade name for PHH.

Compl. ¶¶ 18-19.  Plaintiffs state that "PHH is the holder of the mortgage note and

assigned the rights under the deed of trust securing the Plaintiffs' residential property."

Compl. ¶ 37.  In fact, the HAMP agreement attached to Plaintiffs' Third Amended

Complaint lists PHH as the lender or servicer.  Compl Ex. A, p. 2.   Therefore, Plaintiffs

have alleged that PHH is a mortgagee or mortgage loan servicing company collecting

its own consumer debt. Plaintiffs also make no allegation that the principal purpose of

the business of PHH is the collection of debts.  Accordingly, Plaintiffs have failed to

allege that PHH is a debt collector under the FDCPA, and the Court **GRANTS** PHH's

motion to dismiss as to Plaintiffs' Count II.

### 3.      Plaintiffs' Count III: Intentional Infliction of Emotional Distress

Plaintiffs allege that PHH engaged in conduct that was "atrocious, intolerable and

extreme . . . as to exceed the bounds of decency" that caused the Plaintiffs to suffer

severe emotional distress. Compl. ¶ 142.  In West Virginia, for a plaintiff to prevail on a

claim for intentional infliction of emotional distress, four elements must be established.

The plaintiff must show:

> (1) that the defendant's conduct was so atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 7, **Hatfield v. Health Mgmt. Assocs. of W. Va., Inc.**, 672 S.E.2d 395 (2008) (quoting Syl. Pt. 3, **Travis v. Alcon Labs., Inc.**, 504 S.E.2d 419 (1998)).  Additionally, Plaintiffs' Complaint must "contain sufficient factual allegations to plead the fourth element, i.e., that the plaintiffs' emotional distress was 'so severe that no reasonable person could be expected to endure it.'" **Travis v. JP Morgan Chase Bank, N.A.**, 2012 WL 3193341, *5 (N.D.W. Va. Aug. 6, 2012) (citations omitted).  In *Travis*, the court held that plaintiffs failed to adequately plead the fourth element because the Amended Complaint and proposed Second Amended Complaint had only two allegations: (1) "'As a result of each of the Defendants' actions your Plaintiffs have suffered severe emotional and psychological pain and stress at losing their home of over 11 years' and (2) 'each of the Defendants knew or should have known that their actions . . . were so reckless that emotional distress would and did result there from, that no reasonable person could be expected to endure.'" *Id.*  Accordingly, the court held that the Amended Complaint and Second Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because these types of "'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing **Iqbal**, 129 S. Ct. at 1949).

Plaintiffs fail to allege all four elements that are required to state a claim for intentional infliction of emotional distress in West Virginia.  Plaintiffs allege that the Defendants' actions caused Plaintiffs to suffer "severe emotional distress such that no reasonable person could be expected to endure it."  Compl. ¶ 142(b-c).  Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives.  Indeed, Plaintiffs' Third Amended Complaint fails to state "more than labels and conclusions," and in fact, merely provides "a formulaic recitation of the elements of a cause of action."  ***Twombly***, 127 S. Ct. at 1964-65.  Plaintiffs' legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure. *See **Iqbal***, 129 S. Ct. at 1950.  Accordingly, the Court **GRANTS** PHH's motion to dismiss Plaintiffs' Count III.

### 4.    Plaintiffs' Count VI: Common Law Invasion of Privacy

Plaintiffs allege that they "have an expectation of privacy to be free from harassing and annoying telephone calls to their telephone within the confines of [their] home."  Compl. ¶ 145.  Plaintiffs also state that "[t]he acts of [PHH], in placing telephone calls to Plaintiffs' telephone number, invaded, damaged and harmed Plaintiffs' right of privacy."  Compl. ¶ 146.  In West Virginia, there are at least four grounds upon which support a claim for an invasion of privacy.  An invasion of privacy claim may be asserted by "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public."

24

Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1984).  An unreasonable intrusion upon another's seclusion occurs when "[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person."  *Harbolt v. Steel of W. Va., Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W. Va. 2009) (quoting Restatement (Second) of Torts § 652B).

Plaintiffs have not alleged that PHH placed a volume of telephone calls to their place of residence or that the calls were placed at inconvenient or annoying times.  In fact, Plaintiffs only state that "PHH, in placing telephone calls to Plaintiffs' telephone number invaded, damaged and harmed Plaintiffs' rights of privacy."  Plaintiffs do not plead facts alleging that the telephone calls placed by PHH were an *unreasonable* intrusion.  Plaintiffs have merely stated legal conclusions and a recitation of the elements of the claim.  Therefore, the Court **GRANTS** PHH's motion to dismiss Count IV.

### 5.      Plaintiffs' Count V: Breach of Contract

In Count V, Plaintiffs claim that PHH "breached the terms of the note and deed of trust as originally executed by the parties and later modified by agreement upon due consideration and agreement as well as executed under the provisions of the Home Affordable Modification Program."  Compl. ¶ 150.  In support of their breach of contract claim, Plaintiffs allege the following: (1) PHH was compensated for participating in the HAMP program and received funds based upon Plaintiffs' successful participation in HAMP; (2) PHH intentionally and willfully breached its contractual obligations by refusing to pay the homeowners' insurance premiums required to preserve and protect the

25

residential property, despite having escrowed the funds and having sufficient funds to remit immediate payment; (3) PHH failed to pay the homeowner's insurance premiums in retaliation against Plaintiffs for filing this civil action; and, (4) Plaintiffs advanced money for homeowner's insurance to preserve and protect the property despite having already advanced funds necessary for the payment of insurance and taxes to PHH.  Compl.  ¶¶ 151-53.

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach.  *See **Wince v. Easterbrooke Cellular, Corp.**, 681 F. Supp. 2d 688, 693 (N.D.W. Va. 2010).  Additionally, "[a] modification of a contract requires the assent of both parties to the contract and mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."  **Wheeling Downs Racing Ass'n v. W. Va. Sportservice**, 199 S.E.2d 308, 311 (W. Va. 1973).   In this case, Plaintiffs pled facts alleging the elements for a breach of contract.  Plaintiffs also state that the contract was modified by both parties "upon due consideration and agreement."  Compl. ¶ 150.  In construing Plaintiffs' factual allegations in the light most favorable to them, the Court finds that Plaintiffs have sufficiently alleged a breach of contract claim against PHH.  Therefore, the Court **DENIES** PHH's motion to dismiss this claim.

### 6.    Plaintiffs' Count VI: Tortious Interference with Contract

Under West Virginia law, there are four essential elements for a tortious interference with a contract claim.  **Hatfield**, 672 S.E.2d at 403.  To survive a motion to dismiss pursuant to 12(b)(6), a plaintiff must allege: (1) existence of a contractual or

business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.  *Id.*

In Count VI, Plaintiffs allege that PHH "knew of the contractual relationship between the Plaintiffs and USAA Insurance as it was provided with proof of insurance in relation to its position as a mortgagee on said contract."  Compl. ¶ 155.  In support of this claim Plaintiffs allege the following: (1) PHH knew that the foreclosure sale had occurred in error and that no trustee's report of foreclosure sale had been filed, no deed recorded or other evidence confirming the foreclosure sale; (2) PHH on February 29, 2012, intentionally and willfully provided false information to USAA Insurance in an attempt to seek the cancellation of Plaintiffs' homeowner's insurance policy; (3) USAA Insurance cancelled Plaintiffs' homeowner's insurance contract on March 14, 2012, based solely upon the letter it received from PHH stating the property had been foreclosed; (4) PHH's actions were intended to and designed to interfere with the Plaintiffs' contractual relationship with USAA Insurance in an attempt to illegally and unlawfully create a default under the terms of Plaintiffs' deed of trust and HAMP loan modification; (5) PHH's actions were intended to complete its illegal foreclosure/collection efforts in an attempt to seize Plaintiffs' property in order to seek monetary compensation in the form of federal guarantees in relation to the mortgage loan; and (6) Plaintiffs suffered damages as a result of PHH's actions.

PHH argues that Plaintiffs have made conflicting allegations.  PHH states that Plaintiffs first allege that TVT falsely reported to PHH that the sale had taken place and was completed.  Therefore, PHH did not know the foreclosure sale had not been

completed.  However, PHH argues that the Third Amended Complaint also alleges that PHH knew that the foreclosure sale had occurred in error and intentionally provided false information to USAA Insurance.  Rule 8 of the Federal Rules of Civil Procedure permit a party to make alternative statements of a claim.  **FED. R. CIV. P. 8.**  Rule 8 provides that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  *Id.*  Although Plaintiffs arguably made alternative statements regarding the tortious interference claim, the allegations were sufficient because at least one of the statements was adequate to state a claim: that PHH knew the foreclosure sale had occurred in error because no trustee's deed of foreclosure sale was ever filed or any deed recorded.  Upon review of Plaintiffs' allegations, the Court finds that they state a claim for tortious interference that is plausible on its face.  Therefore, the Court **DENIES** PHH's motion to dismiss Count VI.

### 7.     Plaintiffs' Count VII: Tort of Trespass

"Under West Virginia law, to constitute a trespass, the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property."  ***Rhodes v. E.I. du Pont de Nemours & Co.***, 636 F.3d 88, 96 (4th Cir. 2011); *see also* ***Hark v. Mountain Fork Lumber Co.***, 34 S.E.2d 348, 352 (W. Va. 1945) ("Trespass is defined . . . as an entry on another man's ground *without lawful authority*, and doing some damage, however inconsiderable, to his real property." (emphasis added)).  If an owner has consented to an alleged trespass, "they cannot recover in an action of tort for the harm resulting from it."  ***Perrine v. E.I. du Pont de Nemours & Co.***, 694 S.E.2d 815, 846 (W. Va. 2010) (quoting Restatement (Second) of Torts § 892A(1) (1979)).

28

In Count VII of their Complaint, Plaintiffs allege that PHH "on multiple occasions from February 2011 to the present, did intentionally direct agents to unlawfully trespass on the residential property of the Plaintiffs in order to carry out debt collection activities." Compl. ¶ 163; *see also* Compl. ¶¶ 87-88.  Specifically, Plaintiffs allege that PHH entered their property on February 23, 2012 and placed a door hanger on their door knob requesting they call PHH at (800) 330-0423.  Compl. ¶ 87, Ex. J.  Plaintiffs allege they did not consent to the trespasses of these individuals and "were never informed or requested to permit these individuals to enter onto their property."  Compl. ¶¶ 164-65.  As a result of PHH's and their agent's entry onto their property, PHH interfered with Plaintiffs' possession and use of their property and suffered damages.  Compl. ¶¶ 166-67.  In viewing Plaintiffs' factual allegations in the light most favorable to the Plaintiff, the Court finds that Plaintiffs sufficiently alleged a plausible claim for relief.  Accordingly, the Court **DENIES** PHH's motion to dismiss Plaintiffs' Count VII.

### 8.      Plaintiffs' Count VIII: Fraud

Plaintiffs allege that PHH committed fraud.  Compl. ¶ 169.  Under Rule 9(b) of the Federal Rules of Civil Procedure, when a party alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." **FED. R. CIV. P. 9(b).**  The Fourth Circuit Court of Appeals has stated that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (citing **5 WRIGHT & MILLER, FED.**

PRAC. & PROC. CIV., § 1297, at 590 (2d ed. 1990)).  "These facts are often 'referred to as the 'who, what, when, where and how' of the alleged fraud.'" *United States ex rel.*

*Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citations omitted).  Where multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Bluestone Coal Corp. v. CNX Land Res., Inc.*, 2007 WL 6641647 (S.D.W. Va. Nov. 16, 2007) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.3d 1242, 1247 (2d Cir. 1987)); *see also Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (affirming district court's dismissal of complaint because complaint referenced "defendants" generally, not to action of specific defendants regarding the alleged fraud and thus failed to meet the pleading requirement).

When a plaintiff seeks to establish a claim of fraud under West Virginia law, the plaintiff must prove (1) the alleged fraudulent act is that of the defendant, (2) the act was material, false, and the plaintiff justifiably relied upon it, and (3) the plaintiff suffered injury as a result of the act.  *Ashworth v. Albers Med., Inc.,* 410 F. Supp. 2d 471, 477 (S.D.W. Va. 2005) (citing *Lengyel v. Lint*, 280 S.E.2d 66, 67 (W. Va. 1981)).

In support of Count VIII, Plaintiffs allege the following: (1) that "each of the Defendants PHH, MHS, TVT and Stewart was informed that the debt was not owed and further that the provisions of the deed of trust as modified by agreement of the parties, was not in default"; (2) that "Defendants PHH, MHS, TVT and Stewart acknowledged the disputed debt and agreed to continue the foreclosure sale to investigate the claims of the Plaintiffs"; (3) that "Defendants PHH, MHS, TVT, and Stewart knew that the debt alleged

30

to be owed by the Plaintiffs was material and false"; (4) Plaintiffs "justifiably relied upon the representation that the foreclosure sale would be continued so the debt could be validated or invalidated and a payment history provided to them"; (5) Plaintiffs "were damaged because they relied upon the representations made by the Defendants, PHH, MHS, TVT, and Stewart"; and (6) "Defendant PHH fraudulently misrepresented, on multiple occasions the account was in default and that it intentionally misrepresented the status of the account and further that it had been sent to an attorney to begin the foreclosure process." Compl. ¶ 170, 172, 174, 176, 180.

First, Plaintiffs' Third Amended Complaint fails to meet the particularity requirements of Rule 9(b) because it does not adequately set forth the time, place, and content of each false representation.  Also, only one allegation identifies PHH as making a representation, but it fails to set forth the time or place of the false representation.  In paragraphs 170-174, Plaintiffs fail to adequately set forth the time, place, and content of each false representation.  In the majority of Count VIII's allegations, Defendants PHH, MHS, TVT, and Stewart are lumped together with no particular allegation of each Defendant's participation in the alleged fraud.

Second, Plaintiffs fail to plead facts that Plaintiffs justifiably relied upon PHH's representations.  The Fourth Circuit held that a party claiming fraud must plead with particularity facts showing that the alleged detrimental reliance on the misrepresentations was "reasonable and justified."  *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999).  Plaintiffs allege that "PHH fraudulently misrepresented, on multiple occasions the account was in default and that it intentionally misrepresented the status of the account and further that it had been sent to an attorney to begin the

31

foreclosure process." Compl. ¶ 180.  However, this allegation does not suggest that Plaintiffs *justifiably relied* on PHH's representation of the status of their account.  Indeed, Plaintiffs disagreed with PHH's representation and eventually filed this civil action against Defendant.  Thus, Plaintiffs have not pled facts establishing that they justifiably relied on PHH's material and false representations.

Last, Plaintiffs' Complaint failed to satisfy an essential element of a fraud claim: damages.  Plaintiffs allege they "were damaged because they relied upon the representations made by the Defendants . . . ." Compl. ¶ 177.  However, the Complaint fails to state exactly how the Plaintiffs suffered any damages.  In fact, the foreclosure sale was never consummated.  *See Wittenberg*, 852 F. Supp. 2d 731, 751-52 (N.D.W. Va. 2012) (dismissing fraud claim against Defendant because the Plaintiff "had no damages because her property had not been foreclosed.").  After carefully examining Plaintiffs' Complaint, it is clear that Plaintiffs have not met the heightened pleading standard required by Rule 9(b).  The Court finds that Plaintiffs alleged conclusory statements regarding fraud and failed to plead detailed factual allegations of fraud sufficient to raise a right to relief above the speculative level as to PHH.  Thus, the Court **GRANTS** PHH's Motion to Dismiss Plaintiffs' Count VIII.

## IV.   CONCLUSION

In summary, for the reasons discussed above, the Court **ORDERS** the following:

1.    The Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss the Claims in Count I under the WVCCPA;

      a. The Court **DENIES** Defendant's Motion to Dismiss as to the following WVCCPA claims, and they may proceed:

1.  Statements of Accounts – W. Va. Code § 46A-2-114;

2.  Limitation on Default Charges – W. Va. Code § 46A-2-115;

3.  Threats or Coercion – W. Va. Code § 46A-2-124;

4.  Fraudulent, Deceptive, or Misleading Representations – W. Va. Code § 46A-2-127;

5.  Unfair or Unconscionable Means– W. Va. Code § 46A-2-128;

6.  Unreasonable Publication – W. Va. Code § 46A-2-126;

7.  Delinquency Charges on Precomputed Consumer Credit Sales or Consumer Loans – W. Va. Code § 46A-3-112;

8.  Additional Charges, etc. – W. Va. Code § 46A-3-109; and

9.  Unlawful Acts or Practices – W. Va Code § 46A-6-104.

b.  The Court **GRANTS** Defendant's Motion to Dismiss as to the following WVCCPA claims:

1.  Oppression and Abuse – W. Va. Code § 46A-2-125;

2.  Practice of Law by Debt Collectors – W. Va. Code § 46A-2-123;

3.  Advances to Perform Covenants of Consumer – W. Va. Code § 46A-3-115; and

4.  Willful Violations – W. Va. Code § 46A-5-105.

2.  The Court **GRANTS** Defendant's Motion to Dismiss Count II, FDCPA Violations, in its entirety;

33

3.      The Court **GRANTS** Defendant's Motion to Dismiss Count III, Intentional Infliction of Emotional Distress;

4.      The Court **GRANTS** Defendant's Motion to Dismiss Count IV, Common Law Invasion of Privacy;

5.      The Court **DENIES** Defendant's Motion to Dismiss Count V, Breach of Contract;

6.      The Court **DENIES** Defendant's Motion to Dismiss Count VI, Tortious Interference with Contract;

7.      The Court **DENIES** Defendant's Motion to Dismiss Count VII, Tort of Trespass; and

8.      The Court **GRANTS** Defendant's Motion to Dismiss Count VIII, Fraud.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** March 27, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE