IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RUSSELL PATRICK,
and MONA PATRICK,

       Plaintiffs,

    v.                                   Civil Action No. 3:12-cv-39

TEAYS VALLEY TRUSTEES, LLC, et. al.,

       Defendants.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL; DENYING
DEFENDANT'S MOTION TO COMPEL; GRANTING PLAINTIFFS' MOTION TO
STRIKE**

On November 26, 2013, came the above named Plaintiffs, by Aaron C. Amore, Esq., by

telephone, and Defendant PHH Mortgage Corporation ("Defendant"), by R. Terrance Rodgers, Esq.,

by telephone, for an evidentiary hearing and argument on Plaintiffs' Motion to Compel Discovery

Responses, Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion to Compel, and

Defendant's Motion to Compel Discovery Responses. No additional testimony or evidence was

presented at the hearing.

## I. INTRODUCTION

### A. Background

This case revolves around Defendant's handling of Plaintiffs' home mortgage loan account

after Plaintiffs modified their loan through the Home Affordable Mortgage Program ("HAMP").

Plaintiffs initially filed this action on March 6, 2012, in the Circuit Court of Jefferson County, West

Virginia, alleging invasion of privacy, intentional infliction of emotional distress, and numerous

violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). On April 27, 2012, the Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiffs later amended their complaint to add claims for violations of the Fair Debt Collection Practice Act ("FDCPA"), tortuous interference with contractual relations, trespass, fraud, and breach of contract. On March 27, 2013, the Court issued a Memorandum Opinion and Order[1] granting in part Defendant's Motion to Dismiss as to Plaintiffs' FDCPA, intentional infliction of emotional distress, invasion of privacy, and fraud claims. In addition, the Court dismissed several of Plaintiffs' claims under the WVCCPA. However, the Court denied Defendant's Motion to Dismiss as to nine of Plaintiffs' WVCCPA claims, as well as Plaintiffs' state-law claims for breach of contract, tortuous interference with contract, and trespass. After Defendant responded to Plantiffs' complaint with an answer, the parties engaged in discovery and several disputes arose.

**B.     *The Motions***

1. Plaintiffs' Motion to Compel Discovery.

2. Defendant's Motion to Compel Discovery.

3. Plaintiffs' Motion to Strike.

**C.     *Decision***

Plaintiffs' Motion to Compel (Dkt. 103) is **GRANTED IN PART** and **DENIED IN PART**, because the discovery sought is reasonably calculated to lead to the discovery of admissible evidence, and no valid claims of burden, over-broadness, or privilege have been advanced by Defendant. The Court does, however, find that all of the requests, except for Request for Production 4, must be limited to the time period of January 1, 2010, to November 9, 2012. Defendant's Motion

---

[1]Dkt. No. 75.

to Compel (Dkt. 121) is **DENIED** because Defendant failed to make a good faith effort to confer with Plaintiffs prior to filing the motion. Plaintiffs' Motion to Strike (Dkt. 124) is **GRANTED** because Defendant's Response violates Local Rule 7.02(b).

## II. FACTS

1.  On September 27, 2013, Plaintiffs filed a Motion to Compel Defendant to Fully Answer Plaintiffs' First Set of Interrogatories and Requests for Production of Documents.[2]

2.  On October 18, 2013, this Court set an evidentiary hearing and argument on Plaintiff's Motion for October 25, 2013.

3.  On October 22, 2013, Defendant filed a Motion to Compel Plaintiffs to Fully Answer Defendant's First Set of Interrogatories and First Set of Requests for Production of Documents.[3]

4.  On October 23, 2013, Defendant filed a Response in Opposition to Plaintiffs' Motion to Compel,[4] and Plaintiffs filed a Response in Opposition to Defendant's Motion to Compel.[5]

5.  Plaintiffs filed a Motion to Strike Defendant's Response in Opposition to their Motion to Compel on October 24, 2013.[6]

6.  At the conclusion of the evidentiary hearing and argument on Plaintiffs' Motion to

---

[2]Dkt. No. 103.

[3]Dkt. No. 121.

[4]Dkt. No. 123.

[5]Dkt. No. 123.

[6]Dkt. No. 124.

Compel held on October 25, 2013, this Court ordered Defendant to file a compilation

of its responses and objections, including all supplemental answers, to Plaintiffs'

First Set of Interrogatories and Requests for Production of Documents. The Court

also ordered Plaintiffs to respond to the compilation with any outstanding objections

to Defendant's responses.[7]

7.      On November 1, 2013, Defendant filed a Compilation of all answers, responses, and

objections it made in its initial and first, second, third, and fourth supplemental

responses to Plaintiffs' First Set of Interrogatories and Requests for Production of

Documents.[8]

8.      On November 8, 2013, Plaintiffs filed a Response to Defendant's Compilation.[9]

9.      This Court held an evidentiary hearing and argument on Plaintiffs' Motion to

Compel, Defendant's Motion to Compel, and Plaintiffs' Motion to Strike on

November 26, 2013.

### III. PLAINTIFFS' MOTION TO COMPEL DISCOVERY

*A. Contentions of the Parties*

Plaintiffs seek an order compelling Defendant to supplement its responses to Interrogatories

1, 2, 3, 4, 5, 6, 12, 14, 15, 17, 18, 19, 24, 25 and Requests for Production of Documents 1, 3, 4, 5,

---

[7]Dkt. No. 126.

[8]Dkt. No. 127. On November 25, 2013, Defendant filed an amended compilation to account for subsequently served fifth, sixth, and seventh supplemental responses. (Dkt. No. 142).

[9]Dkt. No. 129.

6, 7.[10] Plaintiffs contend that Defendant's responses to these discovery requests are incomplete and that its objections are frivolous and without merit. Defendant raises several procedural arguments in support of its contention that Plaintiffs' Motion to Compel should be denied.[11] First, Defendant argues that Plaintiffs' Motion is untimely, and, therefore, pursuant to Local Rule of Civil Procedure 37.02(b), Plaintiffs have waived their right to object to Defendant's discovery responses. Second, Defendant contends that even if Plaintiffs' motion was timely, it must still be denied because Plaintiffs "cite no authority supporting their right to the discovery they seek" as required by Local Rule of Civil Procedure 37.02(a)(1). Substantively, Defendant maintains that it fully responded to Plaintiffs' requests and that where it did not respond, its objections are valid.

## B. Discussion

### 1. L.R. Civ. P. 37.02 and Its Effect on Plaintiff's Motion to Compel

Pursuant to Fed. R. Civ. P. 37(a), a party may move for an order to compel discovery or disclosure from an opposing party where the opposing party fails to respond or where the party's response is evasive or incomplete. Local Rule 37.02 states that "[a] motion to compel...is deemed waived if it is not filed within thirty (30) days after the discovery response or disclosure requirement sought was due, which date is determined in accordance with a rule or by mutual agreement among the parties, unless such failure to file the motion was caused by excusable neglect or by some action of the non-moving party." L.R. Civ. P. 37.02(b). The Federal Rules of Civil Procedure provide that

---

[10]Plaintiffs contend in their Motion that Requests No. 9, 10, and 11 are also deficient, but at the motion hearing, Plaintiffs stated that Request No. 7 is broad enough to cover the documents requested in Requests 9, 10, and 11, and withdrew their objections to Defendant's responses.

[11]Although Plaintiffs' Motion to Strike Defendant's Response is granted, the Court still considers Defendant's arguments because they were presented during oral argument and because the Court ordered Defendant to file a compilation of all objections.

responses to interrogatories and requests for production are due within 30 days of service unless the parties or the court stipulate to a different due date. Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P.34(b)(2). However, the Court has discretion to examine the circumstances surrounding an untimely motion to compel in order "to avoid what may constitute overly 'technical' applications of the Rule." *Ayers v. Continental Cas. Co.*, 250 F.R.D. 216, 225 (N.D.W.V. 2007).

Here, Plaintiffs served their First Set of Interrogatories and Requests for Production upon Defendant on May 10, 2013. Plaintiffs allege that on June 6, 2013, four days before responses were due, Defendant's counsel requested an extension of the response deadline. On June 7, 2013, the parties filed a joint stipulation extending the response deadline to June 24, 2013.[12] Plaintiffs state that Defendant requested another extension on June 21, 2013, and, on June 24, 2013, the parties filed another stipulation further extending Defendant's response deadline to July 9, 2013.[13] According to Plaintiffs, Defendants asked for a third extension, and, on July 8, 2013, the parties filed a third stipulation making Defendant's responses due by July 16, 2013.[14] Defendant served its Objections, Answers and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents upon Plaintiffs on July 16, 2013. Thus, pursuant to the Local Rules, Plaintiffs had until August 19, 2013, to file a Motion to Compel if they found Defendant's responses deficient.

On August 7, 2013, Plaintiffs' counsel sent an email to Defendant's counsel detailing numerous alleged deficiencies in Defendant's responses and requesting that the parties schedule a teleconference to discuss the deficiencies so as to "avoid the necessity of filing a Motion to

---

[12]Dkt. No. 83.

[13]Dkt. No. 84.

[14]Dkt. No. 85.

Compel."[15] Plaintiffs' counsel asserts that he followed up with Defendant's counsel several times in an attempt to schedule a time to meet and confer to discuss the deficiencies outlined in the August 7 email, but due to scheduling conflicts, he was not able to confer with Defendant's counsel until a teleconference held on August 19, 2013, the day a motion to compel was due. During the teleconference, Plaintiffs' counsel advised Defendant's counsel that he would file a Motion to Compel if Defendant did not supplement its responses by August 30, 2013. Because a Motion to Compel would be untimely if not filed by August 19, 2013, the parties filed a Joint Stipulation to Extend Deadline, which extended the deadline for Plaintiffs to file a Motion to Compel to August 30, 2013, because "[t]he parties' counsel have been unable to adequately meet and confer due to scheduling conflicts, and need additional time to discuss Plaintiffs' claimed discovery deficiencies and to try and resolve these discovery issues without the assistance of this Court."[16]

Also on August 19, 2013, Defendant's counsel sent Plaintiffs' counsel a letter which states that he "will endeavor to respond to the points in your letter to me, dated August 7, 2013. As some points will require more consultation with...[PHH], which I was unable to do because of recent events, not all points made in your August 7, 2013 letter will be addressed herein, and, even the points addressed herein, may not be addressed fully."[17] Although much of the letter elaborates on Defendant's objections to Plaintiffs' discovery requests, there are several instances where Defendant's counsel states that he is still trying to obtain responsive information. For example, in discussing Plaintiffs' objections to Defendant's answer to Interrogatory 6, Defendant's counsel

---

[15]Dkt. No. 103, Exhibit C at p. 9.

[16]Dkt. No. 87.

[17]Dkt. No. 103, Exhibit D.

states:

> I am attempting to gain an understanding of how any "shared access" platform which PHH may have used in connection with the referral to foreclosure works, if such was used, so as to be able to knowledgeably request information from PHH so that PHH may provided [sic] responsive information, if any, on whatever "shared access" platform may have been used, if any, to supplement PHH's responses if there is additional responsive information.

Thus, clearly, the parties contemplated that Defendant would be supplementing its responses after August 19, 2013.

Defendant served its First Supplemental Answers and Responses on August 30, 2013. Plaintiffs found this supplement to be unsatisfactory, and Defendant's counsel informed Plaintiffs' counsel he would supplement again. Thereafter, Defendant filed a second supplement on September 5, 2013. Still dissatisfied, Plaintiffs' counsel asked for more supplementation, and Defendant supplemented again on September 9, 2013. Plaintiffs' state that they again asked Defendants for more complete answers and Defendant's counsel informed Plaintiffs' counsel "that he would be supplementing and that he had more documents on his desk ready to produce." However, Defendant did not file another supplement. Plaintiffs' counsel sent Defendant's counsel an email on September 24, 2013, asking if any more documents would be forthcoming, but did not receiving a response. Plaintiffs finally filed the instant Motion to Compel on September 27, 2013.

Defendant argues that Plaintiffs' Motion to Compel is untimely because it was filed well after the August 30th deadline to which the parties stipulated. Defendant further contends that "Plaintiffs had a clear opportunity to move to compel if they were not satisfied with PHH's supplemented discovery objections, answers and responses as they stood when the motion to compel deadline approached, or could have sought an additional extension of the clearly stipulated deadline

of [August 30]." However, to the extent that Defendant is asserting that its responses were already supplemented when the August 30th motion to compel deadline approached, this argument misstates the facts almost to the point of being disingenuous. Defendant did not supplement its initial responses until August 30, 2013. Plaintiffs could have filed a Motion to Compel at any time after attempting to confer with Defendant regarding its deficient discovery responses. However, relying on Defendant's assurances that it would produce additional discovery, Plaintiffs agreed to wait for further supplementation in an effort to resolve the issue without court intervention. Had Defendant failed to supplement by August 30 as promised, and Plaintiffs waited until September 27, 2013, to file this Motion to Compel, Defendant's untimeliness argument would be appropriate. However, Defendant did supplement its responses, on the last possible day before Plaintiffs' deadline to file a motion to compel, and Plaintiffs found the supplementation to be unsatisfactory. Plaintiffs continued to attempt to resolve the issue informally before requesting court intervention, and Defendant continued to assure Plaintiffs that additional information would be produced.

Based on the foregoing, the Court finds that any delay in filing the Motion to Compel was the direct result of Defendant's repeated assurances that further responses would be forthcoming. Moreover, Plaintiffs went out of their way to avoid bringing this matter to the Court, which is exactly what the Rules require. *See Ayers v. Continental Cas. Co.*, 250 F.R.D. 216, 225 (N.D.W.V. 2007) (finding that a delay is excusable when the facts show an effort to avoid bringing a motion to compel to the Court because "counsel should not be faulted for complying with the Rules"). Accordingly, Plaintiffs' delay is excusable and their Motion to Compel is not untimely. *See, e.g., Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 193 (N.D. W. Va. 2000) (holding that a motion to compel is not untimely when the delay in bringing it is the result of assurances by the

non-moving party that a response would be forthcoming).

Local Rule 37.02 also mandates that "[a] motion to compel...must be accompanied by a statement setting forth...[t]he specific rule, statute or case authority supporting the movant's position as to each discovery request or disclosure requirement." Defendant contends that Plaintiffs' Motion violates this rule because it "cite[s] no authority supporting their right to the discovery they seek." The Court disagrees. Plaintiffs filed with their motion several exhibits containing all of the information required by the Local Rule. Plaintiffs' exhibit C to which Plaintiffs refer in their Motion, consists of the email Plaintiffs' counsel sent to Defendant's counsel outlining Plaintiffs' position as to each contested discovery response. The Court finds that this email is sufficient to meet the requirements of Local Rule 37.02.

*2. Scope of Discoverable Information and Appropriateness of Defendant's General, Boilerplate Objections to Plaintiffs' Discovery Requests*

In general, parties in a civil action enjoy broad discovery, and "the discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc.*, 967 F.2d 980, 983 (4th Cir.1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). If a party believes that a discovery request exceeds the broad scope of allowable discovery, it may object, but "the party resisting discovery has the burden of clarifying, explaining and supporting its objections." *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins.Co.*, No. 05-CV-41, 2006 U.S. Dist. LEXIS 68744**,** at *1, *17 (N.D.W.Va. Sept. 21, 2006). "The mere recitation of the familiar litany that an interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." *PLX, Inc. v. Prosystems, Inc.*, 220 F.R.D. 291, 293 (N.D.W.Va. 2004). These boilerplate objections to discovery requests are highly disfavored in the Fourth Circuit. *See*

*e.g.*, *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W.Va. 2010) ("[G]eneral objections to discovery, without more, do not satisfy the burden of the responding party . . . because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. East Gulf Coast Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W.V. 2009) ("[B]oilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Mancia v. Mayflower Textile Svcs. Co.*, 253 F.R.D. 354 (D. Md. 2008) (courts disapprove of a general objection asserted "to the extent" that it applies). "Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections." *Mills,* 259 F.R.D. at 132.

Thus, while it is not *per se* unreasonable for a party to object on the basis that a request is overly broad, burdensome, or seeks irrelevant information, the objecting party has an obligation to show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation. Here, Defendant prefaces its responses with a litany of general, boilerplate objections "to the extent" they apply to Plaintiffs' discovery requests. Defendant then incorporates those objections into its responses. In many instances, Defendant merely recites these boilerplate objections without any particularized showing of how they apply to the individual interrogatory or request for production to which it is objecting. Where this is the case, the Court will strike the objections from Defendant's responses.

*3. Relevancy of the Information Sought*

Defendant also objects to many of Plaintiffs' discovery requests as seeking irrelevant information. However, Defendant's arguments take too narrow a view of relevancy in the discovery context. Unless limited by court order, the scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1) which states "[p]arties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). In the discovery context, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. While Defendant is correct that the 2000 amendments to Rule 26 narrowed the scope of permissible discovery from any matter relevant to the subject matter of the action to only those matters relevant to the claims and defenses asserted in the pleadings, "[t]here is no indication that the 2000 amendment to Rule 26's definition of *relevance* for discovery purposes marks a substantial departure from the traditional liberal construction of the term, which is designed to assure access to the information necessary for the achievement of justice and fair trials." 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[3][c] (3d ed. 2004) (emphasis in original). "All that the 2000 Amendment implies is that 'the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery.'"*In re PE Corp. Securities Litigation*, 221 F.R.D. 20, 24 (D. Conn. 2003) (quoting *Moore's Federal Practice* § 26.41[6][c] (3d ed.2004)); *see also Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2001) ("[C]ounsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery. While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer.").

*4. Substantive Analysis*

Plaintiffs' discovery requests fall into four broad categories of information: (1) Defendant's communications with Plaintiffs; (2) Defendant's communications with third parties; (3) Defendant's policies and processes; and (4) Plaintiffs' account file.

a. Information Regarding Defendant's Communications with Plaintiffs

Interrogatories 1, 2, and 17 and Requests for Production 1, 5, and 6 seek information and records regarding Defendant's communications with Plaintiffs.

> **Interrogatory 1**: Please state the names, addresses, job titles of all employees, past and present, supervisory and non-supervisory, who communicated with the Plaintiffs, either directly or indirectly, from January 1, 2010 to present date.

> **Interrogatory 2:** State the names and addresses of all supervisory personnel who controlled the employees who communicated with the Plaintiff, either directly or indirectly, from January 1, 2010 to present date.

Defendant objects that these requests are vague and ambiguous, overly broad, and seek irrelevant information. Without waiving any of its objections, Defendant provided Plaintiffs with the names of 55 individuals who may have communicated with them. However, Defendant only provides job titles for three of the employees it identified, and refuses to provide home addresses for any of the employees, citing privacy concerns. Defendant does not explain how or why these requests are overly broad, so the Court strikes that objection as boilerplate.

Defendant contends that these interrogatories are vague and ambiguous in that they do not define the terms "communicate" and "indirectly." "The party objecting to discovery as vague or ambiguous has the burden of showing such vagueness or ambiguity. A party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories....If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue.'" *Deakins v. Pack*, 2012 WL 242859, at *12 (S.D.W.V. Jan. 25, 2012) (quoting *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D.Kan.2000)) (internal citations omitted). Defendant has not carried its burden to show that these terms are vague and ambiguous. Here, Plaintiffs explicitly define the term communication as "any

written letter, e-mail, facsimile, and/or oral communication." In addition, when taken in context with the rest of the interrogatory, it should be apparent to Defendant that the term "indirectly" refers to communications addressed to Plaintiffs but not delivered directly. Accordingly, this objection is overruled.

As to relevance, the Court finds that information about Defendant's communications with Plaintiffs is clearly relevant. Defendant's communications with Plaintiffs form the basis of several of their claims. In their Complaint, Plaintiffs allege that Defendant employed "threats or coercion in an attempt to collect its debt in violation of *West Virginia Code* §46A-2-124" by continuing to "seek collection of past due amounts that were no longer due." Plaintiffs also allege that Defendant sent "threatening letters misrepresenting the debt and claiming a default when none existed" and "employ[ed] fraudulent and/or misleading representations in an attempt to collect its debt." Additionally, Plaintiffs allege that Defendant "was informed by the Plaintiffs that they were represented by counsel, provided the name and telephone number of counsel, and subsequently communicated with the Plaintiffs when it knew or should have known they were represented by counsel in violation of *West Virginia Code* §46A-2-128(e)." Moreover, a hotly contested factual issue in this case concerns whether Plaintiffs' loan modification took effect in 2009 or 2010. Defendant contends that the effective date of Plaintiffs' modification was October 1, 2009. However, Plaintiffs allege that the original loan modification documents, signed by them in 2009, were later replaced with corrected documents, which were not executed until December of 2010. Thus, Plaintiffs contend that the 2010 agreement "effectively modified their mortgage note and effectively brought their note current and their loan was no longer deemed in default." Plaintiffs base this contention, in part, on conversations they had with Defendant through its employees.

Defendant's objections to providing information about its communications are without merit. Defendant argues that "there can be several types of communications, such as the forwarding of tax documents, that have no relevancy to any of the claims asserted herein." The Court disagrees. Because the communications between Plaintiffs and Defendant are so central to the claims of this case, the Court finds that all communications, no matter the type, are likely to lead to the discovery of admissible evidence. Defendant also contends that information about the identities of the customer service and collection agents who communicated directly with Plaintiffs is not relevant because "there has been no showing that any employees who may have communicated directly with Plaintiffs will have any knowledge about or remembrance of such communication given the nature of their jobs and the time that has passed, or that any of them would be able to provide information from personal knowledge" and without such personal knowledge, any testimony from Defendant's employees would be inadmissible at trial. Putting aside the question of how Plaintiffs could possibly make such a showing without being provided a complete list of employees who communicated directly with them, no such threshold showing is required for information to be discoverable. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including ... the *identity...of persons who know of any discoverable matter*." Fed.R.Civ.P. 26(b)(1) (emphasis added). Moreover, as noted above, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Each and every employee who communicated with Plaintiffs is likely to have information regarding those communications. Therefore, their identities are discoverable. However, the Court agrees with Defendant that information about communications occurring after November 9, 2012, the date of

the Third Amended Complaint, are outside the scope of discovery in this case.

Defendant's privacy objections also lack merit. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including ... the identity and *location* of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1) (emphasis added). Defendant takes the position that the disclosure of home addresses is only required for the purpose of conducting background checks of potential trial witnesses disclosed under Rule 26(a)(1). However, numerous courts have interpreted Rule 26(b)(1) as requiring the disclosure of home addresses. *See, e.g. U.S. E.E.O.C. v. McCormick & Schmick's Seafood Restaurants*, 2012 WL 2577795 (D.Md. July 2, 2012); *Bowman v. Green Tree Servicing, Inc.*, 3:12-CV-31, 2012 WL 4849718 (N.D.W. Va. Oct. 11, 2012); *Fausto v. Credigy Services Corp.*, 251 F.R.D. 427, 431 (N.D.Ca. 2008). Defendant also argues that "[i]t is the clear and unambiguous holding in this federal circuit that there is a strong public policy against disclosing personnel files and information in them, such as home addresses." However, the cases Defendant cites in support of this proposition all involve public disclosure of employee information under the Freedom of Information Act or requests for the complete personnel files of employees. The discovery requests here are much more limited in scope and purpose. The Court finds that Plaintiffs are entitled to home addresses of the employees listed in response to these interrogatories.

Plaintiffs Motion is **GRANTED** with respect to Interrogatories 1 and 2. Defendant is ordered to fully respond to Interrogatories 1 and 2 by providing the names, job titles, and home addresses of **ALL** employees who communicated with Plaintiffs, or supervised employees who communicated with Plaintiffs, from January 1, 2010 to the date of Plaintiffs' Third Amended Complaint.

> **Interrogatory No. 17:** Please identify who made collection calls on behalf of PHH on the Plaintiffs' account from January 1, 2010 to the

present. Please specify the name of the person, the entity for whom they are employed, where they are employed, the telephone number they were using. Include calls that are routed to a collection agent from any automated dialer system so employed to dial the Plaintiffs' telephone number.

Defendant objects to Interrogatory 17 for the same reasons that it objected to Interrogatory 1. The Court overrules those objections for the same reasons it overruled Defendant's objections to Interrogatory 1. Defendant also contends that this request is burdensome, but does not explain how responding to the request would create a burden. Accordingly, the Court strikes this objection. Plaintiffs' Motion regarding Interrogatory No. 17 is **GRANTED**.

> **Request for Production 1**: All records of Defendant's communications (including but not limited to computer logs and per the Instructions/Definitions above, to include communications to and from PHH and Plaintiffs) with the Plaintiffs from January 1, 2010 to the present date.

Defendant contends that it produced all the documents it has that are responsive to this request. Plaintiffs contend that Defendant has not fully responded to this request because Defendant produced no escrow analysis documents, interest notices, account statements, or insurance and tax documents. Plaintiffs also assert that Defendant only provided documents up to May of 2012 even though the complaint alleges facts occurring later.

In general, the Court "cannot compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the producing party is withholding them." *Susko v. City of Weirton*, 2011 WL 98557 at *5 (N.D.W.V. January 12, 2011). Here, however, Plaintiffs have good reason to suspect that Defendant is withholding responsive documents. In an email to Plaintiffs' counsel, counsel for Defendant states:

> In your objection to PHH's response, you mention the lack of certain documents such as escrow statements, insurance and tax documents,

> interest notices etc. You also specifically mention a "performance payment" which PHH received on the one year anniversary of the HAMP loan due to on time payments. I will request PHH supplement with escrow statements, insurance documents, and interest notices which reflect communications PHH had with Plaintiffs *to the extent they are discoverable with respect to the claims Plaintiffs have asserted. However, I do not read the Third Amended Complaint as making any claim regarding tax payments.*

(emphasis added). By stating to Plaintiffs that it will produce all documents it determines to be relevant, Defendant's response "hides the ball" by leaving Plaintiffs "wondering...what documents are being withheld." *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998); *see also Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 248 (M.D.N.C. 2010) ("By appending the adjective "relevant" as a qualifier to their otherwise sweeping declaration of compliance with Defendants' requests and by reiterating that they produced documents "subject to" certain objections, Plaintiffs' foregoing response confuses more than it clarifies."). As discussed above, all communications between Defendant and Plaintiffs are highly relevant to this case and must be produced. Defendant cannot pick and choose which documents it deems discoverable. Accordingly, Plaintiffs Motion is **GRANTED** with respect to Request for Production No. 1. Defendant is ordered to produce ALL records of ALL communications it had with Plaintiffs from January 1, 2010 to November 9, 2012, the date of the Third Amended Complaint.

> **Request for Production 5**: If not already provided in response to this Request for Production of Documents, please provide a copy of all documents referred to or used to answer these Interrogatories. If claiming that said documents are proprietary and/or privilege, please provide a confidentiality agreement/protective order for release of said information.

Defendant objects that this request seeks irrelevant information because by "asking for documents 'referred to,' [it] is not limited to documents containing information used in answering

Plaintiffs' Interrogatories and, as phrased, would include all documents looked at, even if such documents were discarded because they did not contain responsive information." Defendant also objects because the request may be construed as including documents protected by the attorney-client privilege or the work-product doctrine, but Defendant provides no privilege log. Defendant produced documents responsive to this request; however, Plaintiffs contend that Defendant did not produce the employee codes necessary to determine the names of the employees listed in the call logs. The Court finds that Defendant's objections are impermissible boilerplate objections. Plaintiffs Motion with respect to Request for Production 5 is **GRANTED** as framed.

> **Request for Production 6**: Produce any and all records/communications/call logs of the automatic dialing systems that PHH employed in the attempt to collect on the Plaintiffs' account. Please include and produce any chart(s) with codes that may be necessary to review the records/call logs as well as the full debt collectors names that are not readily apparent from the logs. If information is redacted from this production please provide details as to why information is being redacted in your privilege log.

Defendant objects to producing any responsive documents for communications prior to January 2009 as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs do not explain why information about Defendant's debt collecting activity prior to 2009 is relevant to their claims. Because all of Plaintiffs' claims involving Defendant's debt collecting activities are limited to events occurring after January 1, 2009, the Court agrees that this request should be limited in that respect. Accordingly, the Court **GRANTS IN PART** Plaintiffs' Motion with respect to Request for Production 6. Defendant is ordered to respond to the request by producing all responsive documents from January 1, 2009 to November 9, 2012, the date of the Third Amended Complaint.

b. Information Regarding Defendant's Communications with Third Parties

Interrogatories 6, 24, and 25, and Requests for Production 3 and 7 seek information and records regarding Defendant's communications with third parties.

> **Interrogatory 6**: Did you communicate with a person(s) that was not the Plaintiffs regarding their account from January 1, 2010 to present date If so, please provide the following information:
> a) Name and address of each person(s);
> b) List phone numbers called if communication(s) was via telephone along with the times and dates;
> c) Substance of communication(s);
> d) How many times you communicated with said person(s) that was not the Plaintiffs; and
> e) State the method of communication (e.g. written, verbal)

Defendant contends that "Plaintiffs have asserted no claims from which communications with third parties would be relevant or reasonably calculated to lead to the discovery of admissible evidence with the sole exception of the claims centering around their allegations PHH wrongfully cancelled their homeowners' insurance policy in communications to USAA." Thus, Defendant only produced its communications with USAA Insurance Company in response to this request.

The Court finds that all communications with all third parties regarding Plaintiffs' mortgage account are relevant and must be disclosed. Plaintiffs allege that Defendant violated West Virginia Code §46A-2-124 by employing threats or coercion in attempting to collect its debt. One of the ways in which a debt collector can violate that section is by making false accusations "to another person, including any credit reporting agency, that a consumer is willfully refusing to pay a just debt, or the threat to make false accusations." Additionally, several of Plaintiffs' claims revolve around whether Defendant knew that the foreclosure sale of Plaintiffs' house occurred in error and intentionally provided false information to USAA Insurance. Thus, any communications with third parties during the applicable time period is likely to lead to the discovery of admissible evidence as to Defendant's

knowledge about the foreclosure sale. Moreover, in Count VII of their Complaint, Plaintiffs allege that Defendant "on multiple occasions from February 2011 to the present, did intentionally direct agents to unlawfully trespass on the residential property of the Plaintiffs in order to carry out debt collection activities." Therefore, information about Defendant's communications with third parties may also lead to the discovery of evidence regarding Plaintiffs' trespass claim.

Accordingly, Plaintiffs' Motion with respect to Interrogatory No. 6 is **GRANTED**. Defendant is ordered to provide the information requested by the interrogatory from January 1, 2010 to the date of the Third Amended Complaint. Further, if Defendant withholds information based on privilege, Defendant is ordered to produce a privilege log.

> **Interrogatory 24**: Please describe each and every communication and/or transfer of information to and from PHH with Teays Valley Trustee regarding the Plaintiffs' account from January 1, 2010 to the present.
>
> **Interrogatory 25**: Please describe each and every communication and/or transfer of information to and from PHH with Morris Hardwick & Schneider regarding the Plaintiffs' account from January 1, 2010 to the present.

Defendant contends that its communications with Teays Valley and Morris Hardwick & Schneider are only relevant to Plaintiffs' unauthorized practice of law and fraud claims both of which were dismissed by Memorandum Opinion and Order on March 27, 2013. As discussed above, ALL communications regarding Plaintiffs' account with ALL third parties from January 1, 2010 to the date of the Third Amended Complaint is relevant to Plaintiffs' claims. Accordingly, Plaintiffs' Motion with respect to Interrogatories 24 and 25 is **GRANTED**. Defendant is ordered to provide the information requested from January 1, 2010 to the date of the Third Amended Complaint. Further, if Defendant withholds information based on privilege, Defendant is ordered to produce a

privilege log.

> **Request for Production 3**: All communications sent to any other person or business (including Teays Valley Trustees, LLC and Morris Hardwick Schneider, PC) which concerned the Plaintiffs from January 1, 2010 to present date. Please include credit reporting made to the credit reporting agencies with respect to the Plaintiff's [sic] account.

Defendant raises the same objections that it raised to Interrogatories 6, 24, and 25. Defendant further contends reports to credit agencies are not relevant because "[n]owhere is there any <u>pending</u> claim about reports to credit reporting agencies." However, facts do not have to directly correlate with a factual allegation in the complaint to be discoverable; they just have to be germane to the claims. Clearly, Defendant's reports to credit agencies are germane to Plaintiffs' claims that Defendant knew Plaintiffs were not in default. Additionally, Plaintiffs assert that there are contractors listed in email chains Defendant produced, yet Plaintiffs have not been provided with those emails. Plaintiffs also note that there are several data entries referencing someone named Joan Hayes from LOGS, LLC who reviewed Plaintiffs account and removed the hold on the account thereby allowing the foreclosure process to go forward, yet Plaintiffs have been provided no records of communications with her or LOGS, LLC. All of these communications are unquestionably relevant to the instant dispute. As discussed above, the Court finds that ALL communications with ALL third parties about Plaintiffs' account are relevant to Plaintiffs' claims and must be produced. Plaintiffs' Motion with respect to Request for Production 3 is **GRANTED**. Defendant must produce all records of its communications regarding Plaintiffs account with all third parties from January 1, 2010 to the date of the Third Amended Complaint.

> **Request for Production 7**: Produce any and all documents in possession of any third party collection and/or independent contractor (including Teays Valley Trustess, LLC and Morris Hardwick

Schneider, PC) to which this Defendant has access to relating to the
Plaintiffs' account from January 1, 2010 to present date.

Defendant contends that "it is obligated only to produce documents in its possession, custody, or control, meaning documents to which it has a legal right. No rule requires the production of documents to which a party has 'access,' whatever is meant by that." Defendant also objects that no third party documents are relevant other than USAA documents. Additionally, Defendant argues that Teays Valley and Morris Hardwich Schneider were both named defendants in this action, "and Plaintiffs had every opportunity to obtain the requested documents through discovery, making the burden of obtaining the documents equal."

The Court agrees that Defendant is only obligated to produce documents in its possession, custody, or control. Thus, to the extent there are documents responsive to this request in Defendant's possession, custody, or control, Defendant must produce them. As discussed above, all communications with all third parties relating to Plaintiffs' account are relevant. Defendant's objection that Plaintiffs "had every opportunity to obtain the requested documents" also lacks merit. *See Alberts v. Wheeling Jesuit University*, 2010 WL 1539852 at *2 (N.D.W.Va. April 19, 2010) ("The fact that the information sought is already known to the interrogator is not a valid ground for objection to the interrogatories. Interrogatories are not limited to facts which are exclusively or peculiarly within the knowledge of the interrogated party. The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable.") (internal citations omitted). Accordingly, Plaintiffs Motion with respect to Request for Production 7 is **GRANTED**. Defendant is ordered to produce all responsive documents in its possession, custody, or control.

c. Defendant's Internal Policies and Processes

Interrogatories 3, 3, 5, 12, 14, 15, 18, and 19 seek information regarding Defendant's internal policies and processes.

> **Interrogatory 3:** What policies existed within PHH from January 1, 2010 to present date regarding telephonic, written, or other communication with a consumer who is in default? Specifically describe in detail who is responsible for communications with the consumer, by what means they communicate with the consumer and how many time per day PHH and/or its representatives can communicate directly with consumer who is in default.

> **Interrogatory 4:** What policies existed within PHH from January 1, 2010 to present date to investigate claims by a consumer, that PHH has deemed to be in default, that he/she is not in default but has met his/her obligations under the note and/or deed of trust or a loan modification and/or trial loan modification. Please specify the procedures employed to investigate such a consumer to confirm or dispel the claim that no default exists.

> **Interrogatory 5:** What policies existed within PHH from January 1, 2010 to present date regarding telephonic, written, or other communication with a consumer who has informed you that he/she is represented by counsel? Explain in detail if PHH and/or its representatives can continue to communicate directly with consumer, etc.

Defendant objects to these interrogatories on the grounds that the information sought is irrelevant, unduly burdensome, overly broad, and confidential business information. Plaintiffs contend that Defendant's internal policies are relevant to their WVCCPA claims because Defendant asserted the defense of bona fide error.

As an initial matter, Defendant does not explain how responding to these requests would result in an undue burden, nor does Defendant explain how the requests are overly broad in relation to the issues in this litigation. Accordingly, these objections are impermissible boilerplate objections, and the Court will disregard them. Defendant also objects that "[s]uch policies are confidential business documents." Defendant is free to seek a protective order to protect its proprietary

information, but this is not a valid reason to withhold production. *See Susko v. City of Weirton*, 2011 WL 98557 at \*5 (N.D.W.V. January 12, 2011) ("Although information is not shielded from discovery on the sole basis that the information is confidential, a party may request the court to enter a protective order pursuant to Fed.R.Civ.P. 26(c) as a means to protect such confidential information. To obtain a protective order, the party resisting discovery must establish that the information sought is covered by Fed.R.Civ.P. 26(c) and that it will be harmed by disclosure.").

The heart of the dispute over these interrogatories centers on relevance. Defendant contends that information about its internal policies and procedures is not relevant because "[a]ll of Plaintiffs' claims in this civil action center around whether or not PHH did or did not do certain acts," and "the existence or non-existence of such policies would not make it more or less likely that PHH engaged in the conduct, or failed to undertake certain conduct." As noted above, information is discoverable when it is relevant not just a party's *claims*, but also to a party's *defenses*. Here, several of Plaintiffs' WVCCPA claims involve actions Defendant allegedly took in attempting to collect a debt. Specifically, Plaintiffs allege that Defendant (1) employed threats or coercion in an attempt to collect its debt in violation of West Virginia Code § 46A-2-124; (2) misrepresented the amount of the obligation due and employed fraudulent representations in an attempt to collect its debt in violation of West Virginia Code § 46A-2-127; and (3) continued to communicate directly with Plaintiffs even after they were represented by counsel in violation of West Virginia Code § 46A-2-128.

Although Defendant is correct that these *claims* do not involve Defendant's policies and procedures or lack thereof, Defendant's *affirmative defense* of bona fide error clearly does. Pursuant to West Virginia Code § 46A-5-101(8), a creditor faced with allegations that its debt collection practices violate the WVCCPA may assert a statutory "bona fide error defense" by arguing that its

actions were "the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error." W. Va. Code § 46A-5-101(8); *see also Stover v. Fingerhut Direct Marketing, Inc.*, 2010 WL 1507182 at *4 (S.D.W.V. March 19, 2010). ("The 'maintenance of procedures reasonably adapted to avoid any such violation or error' discussed in § 46A-5-101(8) refers to the adaption of a creditor's debt collection procedures to avoid violating the requirements of the WVCCPA."). As discussed above in relation to information about Defendant's communications with Plaintiffs, Defendant's employees' contact with Plaintiffs forms the basis of several of Plaintiffs' WVCCPA claims. Thus, Defendant's policies governing that contact form the basis of its bona error defense. Evidence that Defendant's debt collection procedures are designed to avoid the violations of the WVCCPA for which they are accused can be used by Defendant to avoid liability. Similarly, evidence that Defendant's procedures were substandard or non-existent can be used by Plaintiffs to counter the bona fide error defense. *See Clements v. HSBC Auto Finance, Inc.*, 2010 WL 4281697 at *12 (S.D.W.V. October 19, 2010) (granting summary judgment on the issue of Defendant's bona fide error defense and finding it not applicable because "none of the measures recited by Defendant...demonstrate that its procedures were reasonably adapted to avoid the specific error at issue in this case"). Thus, by pleading the defense of bona fide error in response to Plaintffs' WVCCPA claims, Defendant placed its internal debt collection policies squarely at issue, and its assertions to the contrary lack merit. Accordingly, Plaintiffs' Motion is **GRANTED** with respect to Interrogatories 3, 4, & 5. Defendant is ordered to produce policies responsive to this request or state that it has none.

> **Interrogatory 12**: Please describe the process by which PHH offered a trial loan modification and loan modification to the Plaintiffs, how such application was received, what process or procedure was used to analyze if said loan modification would be accepted and then the

procedure by which the loan modification was completed and executed by both parties and then recorded.

Although Defendant provided an answer to this interrogatory, Plaintiffs contend that the answer is incomplete because it fails to describe the process by which the modification is analyzed and the procedure by which the modification is executed and recorded. The Court agrees that Defendant's answer is incomplete. For example, Plaintiffs asked how their loan modification application was analyzed by Defendant, and Defendant merely states "Plaintiffs were evaluated for a HAMP mortgage loan modification." Moreover, Defendant does not even attempt to describe the process by which the finalized modification was executed and recorded; it merely states "[o]nce PHH received the signed corrected 2009 HAMP Agreement in December 2010, it was signed by PHH." The Court **GRANTS** Plaintiffs' Motion with regard to Interrogatory No. 12.

> **Interrogatory 14**: Please describe the computer system used by PHH to manage the Plaintiffs' mortgage accounts, the receipt of payments, calculations of escrow, generation of monthly or periodic statements as well as the amortization of the loan. Please state the system used, who is responsible for the supervision of the system, maintenance and updating of the system. Please state who has access to this system and what if any limitations each person has with respect to changing, altering, adding or deleting information from the system.

Defendant flatly refuses to answer this interrogatory on the grounds that (1) it seeks confidential business information; (2) it is overly broad; (3) it would be burdensome to answer; and (4) it seeks irrelevant information. Defendant does not explain how the request is overly broad or why the request would be burdensome to answer, so these objections are impermissible, boilerplate objections as discussed above. Further, as previously noted, Defendant is free to seek a protective order regarding its confidential business information, however Defendant must still answer the interrogatory.

Furthermore, information about Defendant's computer system is relevant. As discussed above, by asserting a bona fide error defense, Defendant placed its internal systems and process at issue to the extent they relate to Plaintiffs' WVCCPA claims. Information about the system used by Defendant to manage Plaintiffs' account clearly relates to several of Plaintiffs' WVCCPA claims, such as their allegations that Defendant failed to provide them with monthly account statements and failed to properly apply several mortgage payments to their account. Interestingly, Defendant does not actually dispute that information about its software system is relevant to Plaintiffs' claims. Instead, Defendant contends that the term "computer system" refers solely to computer hardware, which is irrelevant to Plaintiffs' claims. In the letter Defendant's counsel sent to Plaintiffs' counsel elaborating on Defendant's objections to Plaintiffs' discovery requests, Defendant's counsel further states:

> In your objection, you appear to believe Plaintiffs asked for information about the *software or programs* PHH uses. However, no reference is made in Interrogatory No. 14 to software or computer programs. PHH is not obligated to guess what Plaintiffs likely meant and then answer an interrogatory Plaintiffs did not ask.

The Court finds that Defendant's response is evasive almost to the point of being gamesmanship. Plaintiffs prefaced their discovery request with a list of definitions, one of which defines the term "system" as "any computer, computer program and/or computer software which is capable of receiving data entries and processing data." Moreover, the interrogatory itself so clearly indicates the information Plaintiffs are seeking that Defendant's contentions to the contrary are almost absurd. Accordingly, Plaintiffs' Motion to Compel is **GRANTED** with regard to Interrogatory 14. Defendant shall fully answer this interrogatory by providing information about the

computer system[18] it used to manage Plaintiffs' mortgage account.

> **Interrogatory 15**: Please describe the process by which Plaintiffs'
> loan was approved for a loan modification was changed, altered or
> modified in PHH's mortgage servicing system to reflect the changed,
> altered or new terms that are provided for in a mortgage loan which
> has been modified. Please identify who is responsible for making the
> necessary changes to the system to reflect the terms of the loan
> modification.

Defendant objects that the request is confusing, ambiguous, and seeks irrelevant information.

Defendant contends that it "is not obligated to guess or draw any assumptions about an interrogatory

which does not make sense as worded." The Court disagrees. As noted above, "[a] party responding

to discovery requests 'should exercise reason and common sense to attribute ordinary definitions

to terms and phrases utilized in interrogatories.'"*Deakins v. Pack*, 2012 WL 242859, at *12

(S.D.W.V. Jan. 25, 2012) (quoting *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D.Kan.2000)).

Defendant's objections are without merit. Plaintiffs' Motion is **GRANTED** with respect to

Interrogatory 15.

> **Interrogatory 18**: Please describe where customer service calls were
> routed made by the Plaintiffs from January 1, 2010 to the present
> regarding their mortgage accounts. Please describe how PHH
> representatives note the accounts, and records such communications.
> Please also state who has access to view the information contained in
> the system.

Defendant contends such information is irrelevant because "[n]one of the allegations made

by Plaintiffs' concern issues to which information on the routing of telephone calls or notations in

records and recording of communication, as well as who has access to view them, would be relevant,

let alone any of the claims resting on those allegations." As discussed above, many of Plaintiffs'

---

[18]As defined by Plaintiffs on page 9 of Plaintiffs' First Set of Interrogatories and First Request for
Production of Documents.

WVCCPA claims center around actions Defendant took in attempting to collect a debt from Plaintiffs. Plaintiffs allege that they received collection calls from one department of PHH and were subsequently transferred to customer service agents who told Plaintiffs to ignore the collection calls because the collection agents were not able to view the entire account file. Plaintiffs also allege that in some instances, even the customer service agents could not view all of the information in Plaintiffs' account file resulting in Plaintiffs being transferred to other internal departments such as the HAMP and Loss Mitigation departments. Thus, contrary to Defendant's contentions, information about the procedures Defendant's employees use to transfer calls and view account files directly bears on Plaintiffs' claims. Moreover, these procedures are also relevant to Defendant's bona fide error defense, as discussed more fully above. Accordingly, Plaintiffs' Motion is **GRANTED** with respect to Interrogatory 18.

> **Interrogatory 19**: Describe the system used to manage escrow funds to pay property taxes and insurance fees AND indicate why payments for insurance and property taxes were not made on the Plaintiffs' account.

Defendant refuses to answer this interrogatory and incorporates its objections to Interrogatory 14. It further objects to the portion of the interrogatory asking why payments were not made because it incorporates an unproven fact and because it does not specify a time period during which such payments were not made. The Court finds that the information about the system used to manage escrow funds to pay property taxes and insurance fees is highly relevant to Plaintiffs' claims. However, the Court agrees that the second party of the interrogatory is objectionable because it is not limited by time and because it incorporates an unproven fact. Accordingly, Plaintiffs' Motion with respect to Interrogatory 19 is **GRANTED IN PART.** Defendant must respond to the part of the interrogatory that asks it to "[d]escribe the system used to manage escrow funds to pay

property taxes and insurance fees."

d. Plaintiffs' Complete Account File

Request for Production 4 seeks Plaintiffs' entire account file from the date of the origination of the initial mortgage loan.

> **Request for Production 4**: A complete copy of Plaintiffs' file kept by PHH including electronically stored data, communication logs, life of loan history with accounting of all payments, payments of insurance fees, payments for property taxes, a current account balance, evaluation notes, correspondence, memorandums [sic], e-mails, reports and electronic messages from the inception of the loan to the present date.

Defendant asserts that this request is overly broad because it seeks documents outside the time period relevant to Plaintiffs' claims. Defendant also contends that some of the information requested, such as information about payments of property taxes, is not relevant to any of Plaintiffs' claims. The Court disagrees. Plaintiffs have asserted a breach of contract claim relating to the initial mortgage note signed by the parties in 2006, as well as the modified loan. Thus, all information about that loan is relevant. Additionally, Plaintiffs' entire account file is relevant to several of Defendant's affirmative defenses, including waiver and estoppel. Accordingly, Plaintiffs' Motion with respect to Request for Production 4 is **GRANTED.** Defendant is ordered to produce a complete copy of Plaintiffs' file.

*C. Decision*

Plaintiffs' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**, because the discovery sought is reasonably calculated to lead to the discovery of admissible evidence, and no valid claims of burden, over-broadness, or privilege have been advanced by Defendant. The Court does, however, find that all of the requests except for Request for Production 4 must be

limited to the time period January 1, 2010, to November 9, 2012. With respect to Request for Production 4 Defendant is ordered to produce a complete copy of Plaintiffs' file with all documents from the origination of the loan to November 9, 2012.

## IV. DEFENDANT'S MOTION TO COMPEL DISCOVERY

There is no need for the Court to reach the merits of Defendant's Motion to Compel because Defendant failed to confer with Plaintiffs' prior to filing the Motion as required by Federal Rule of Civil Procedure 37 and this district's Local Rules. Federal Rule of Civil Procedure 37 states that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In *Shuffle Master, Inc. v. Bally's Grand, Inc.*, 170 F.R.D. 166 (D.Nev.1996), the District of Nevada interpreted the good faith language, under the Federal Rules, to require "a personal or telephonic consultation during which the parties engage in meaningful negotiations or otherwise provide legal support for their position." Additionally, this District's Local Rules mandate that "[b]efore filing any discovery motion...counsel for each party shall make a good faith effort to meet in person or by telephone to narrow the areas of disagreement to the greatest extent possible. It shall be the responsibility of counsel for the moving party to arrange for the meeting." LR Civ. P. 26.04(b). The failure to follow the requirement to confer, or attempt to confer, is grounds for the court to deny the motion to compel. *See, e.g., Ambu, Inc. v. Kohlbrat & Bunz Corp.*, 2000 WL 17181, at 2 (W.D.N.C. 2000) (stating "the fact that Defendants did not confer with opposing counsel and attempt to resolve this dispute before filing the motion to compel is sufficient reason to deny the motion"); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 n. 13 (D.Md. 1997) (stating that there must "have been good faith efforts to resolve

the [discovery] dispute before filing the motion [to compel]").

"'Good faith' under 37(a)(2)(B) contemplates, among other things, honesty in one's purpose to meaningfully discuss the discovery dispute, freedom from intention to defraud or abuse the discovery process, and faithfulness to one's obligation to secure information without court action....Accordingly, good faith cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention; rather it mandates a genuine attempt to resolve the discovery dispute through non-judicial means." *Shuffle Master, Inc. v. Bally's Grand, Inc.*, 170 F.R.D. 166 (D.Nev.1996). Here, although Defendant claims that it "communicated with Plaintiffs' [sic] about its objections to their objections, answers and responses," and that "further meeting to confer will be fruitless" the Court finds that Defendant did not *in fact* make a good faith effort to confer with Plaintiffs before filing the instant Motion to Compel. Defendant's counsel sent Plaintiffs' counsel an email on Saturday, October 19, 2013, at 7:58 p.m., seeking supplementation of Plaintiffs' discovery responses. The email concludes with "I would appreciate supplementation by 5:00 p.m., on Monday, October 21, 2013, so, if necessary, I may file any required motion to compel by the close of discovery on Tuesday, October 22, 2013." Plaintiffs' counsel did not receive the email until Monday morning, and replied to Defendant's counsel that he needed more time than one day to confer with his clients. However, Plaintiffs' depositions were scheduled for the next day, October 22, 2013, and Plaintiffs' counsel stated in the email that he "would be happy to meet and confer after the Patrick depositions so [sic] address any unanswered questions or issues that might remain after the depositions." The next day, October 22, 2013, after Plaintiffs' depositions, Plaintiffs' counsel sought to confer with Defendant's counsel about the discovery dispute, however, Defendant had already filed the Motion to Compel. The Court finds that

Defendant's actions amount to mere lip service to the meet and confer requirements of the Federal and Local Rules. Defendant went through the motions of conferring with Plaintiffs, but it made no *good faith* attempt to actually resolve the dispute before filing the instant motion to compel. Accordingly, Defendant's Motion to Compel is **DENIED**.

## V. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs contend that Defendant's Response to Plaintiffs' Motion to Compel violates Local Rule of Civil Procedure 7.02(b) because it was filed more than fourteen days after service of the Motion to Compel and because it exceeds twenty-five pages in length. Plaintiffs ask the Court to strike Defendant's Response. Local Rule of Civil Procedure 7.02(b)(1) provides that "responses to motions shall be filed and served within fourteen (14) days from the date of service of the motion." L.R. Civ. P. 7.02(b)(1). Local Rule 7.02(b) also states that "[t]he memoranda in response may not exceed twenty-five (25) pages..." L.R. Civ. P. 7.02(b)(1)(iii). In some cases, a Court may extend the time for filing responsive pleading pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), which provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time...on a motion made after the time has expired if the party failed to act because of excusable neglect."

Here, Plaintiffs filed their Motion to Compel on September 27, 2013, and Defendant filed its Response twenty-six days later, on October 23, 2013. In addition, Defendant's Response was forty-six pages long. Thus, Defendant's Response violates the Local Rule. Although the Court has the discretion to extend the time in the case of excusable neglect, Defendant did not move this Court to do so, nor did Defendant present any reason that its Response was late. Moreover, because this Court ordered Defendant to file a compilation of its objections to Plaintiffs' discovery requests, the

34

Court finds that striking Defendant's response will cause Defendant no prejudice. Accordingly, Plaintiffs' Motion to Strike Defendant's Response is **GRANTED**.

## VI.  REASONABLE EXPENSES

Rule 37 of the Federal Rules of Civil Procedure governs imposition of expenses and sanctions for discovery violations.  If a motion to compel "is granted in part and denied in part...the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).  If a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party...who opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys' fees." *Id.* at  37(a)(5)(B). In both cases, the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust. Plaintiffs shall submit within fourteen (14) days of this Order an affidavit of reasonable expenses in relation to their Motion to Compel and Defendant's Motion to Compel. Defendant shall have fourteen (14) days to respond. After the Court is in receipt of those documents, the Court will give Defendant an opportunity to be heard as to why reasonable expenses should not be awarded pursuant to Rule 37(a).

## VII.  CONCLUSION

Plaintiffs' Motion to Compel Responses to Interrogatories 1, 2, 3, 4, 5, 6, 12, 14, 15, 17, 18, 24, and 25, and Requests for Production 1, 3, 4, 5, and 7 is **GRANTED**. Plaintiffs' Motion to Compel a Response to Interrogatory 19 and Request for Production 6 is **GRANTED IN PART AND DENIED IN PART.** Defendant is **ORDERED** to respond to Plaintiffs' discovery requests, as directed by this Order, within seven (7) days of the date of this Order. Defendant's Motion to

Compel is **DENIED**. Plaintiffs' Motion to Strike Defendant's Response is **GRANTED**. Plaintiffs shall submit within fourteen (14) days of this Order an affidavit of reasonable expenses in relation to their Motion to Compel and Defendant's Motion to Compel. Defendant shall have fourteen (14) days to respond.

Filing of objections does not stay this Order.

Any party may, within fourteen [14] days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED**.

DATED: December 12, 2013

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE