**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**RUSSELL PATRICK and
MONA PATRICK,**

       Plaintiffs,

**v.**                          **CIVIL ACTION NO. 3:12-CV-39
(JUDGE GROH)**

**PHH MORTGAGE CORPORATION,**

       Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

      Currently pending before the Court is Defendant PHH Mortgage Corporation's Motion for Summary Judgment filed on November 22, 2013.  On January 14, 2014, Plaintiffs filed their Response to Defendant PHH Mortgage Corporation's Motion for Summary Judgment.  On January 31, 2014, Defendant filed its Reply.  Therefore, the motion has been fully briefed and is ripe for this Court's review.  For the following reasons, the Court **GRANTS IN PART** Defendant PHH Mortgage Corporation's Motion for Summary Judgment [Doc. 139].

## I.  FACTUAL BACKGROUND

      On October 31, 2006, Plaintiffs, Russell and Mona Patrick, entered into a Deed of Trust with InstaMortgage.com wherein their property located at 85 Buckskin Court, Charles Town, West Virginia, was granted to the trustee as security for a loan.  Def.'s Mem., Ex. 4.  After falling behind in their mortgage loan payments, Plaintiffs obtained a modification of their mortgage loan.  Plaintiffs initially received a packet of information

and an application for a mortgage loan modification in May 2009.  Def.'s Mem. Ex. 10,

Req. for Admis. No. 1.  On September 22, 2009, Plaintiffs signed a Home Affordable

Modification Agreement ("HAMP").  Def.'s Mem., Ex. 5.

Thereafter, Plaintiffs failed to make the following mortgage payments in 2010:

January, April, July, October, and December.  Def.'s Mem., Ex. 10, Req. for Admis. No.

12.  Plaintiffs also failed to make additional payments to bring current the payments

missed in 2010.  Id., Req. for Admis. No. 13.  Plaintiffs averred that they were "awaiting

a final loan modification after being informed by PHH that the modification agreement

executed by the Plaintiffs and delivered to PHH after the successful trial period

contained errors." Def.'s Mem., Ex. 10.

In May 2010, Plaintiffs received a set of documents from PHH concerning the

modification to Plaintiffs' mortgage loan and the need for Plaintiffs to sign a corrected

HAMP agreement as the previous one contained errors.  See Def.'s Mem. Ex. 10, Req.

for Admis. No. 6.  On December 1, 2010, Plaintiffs signed a second Home Affordable

Modification Agreement ("HAMP").  Def.'s Mem., Ex. 6.  Plaintiffs and PHH were still

bound by the terms and conditions of the Deed of Trust "except as otherwise specifically

provided" in the HAMP agreements.

On October 11, 2011, Plaintiffs received a letter from the Substitute Trustee,

Teays Valley Trustees, LLC ("TVT"), stating that their client, PHH, had referred

Plaintiffs' loan to them because the loan was in default.  Third Am. Compl., Ex. F.  In

that letter, TVT stated that Plaintiffs owed PHH $263,026.97 as of October 3, 2011 and

they had been instructed to proceed with foreclosure.  Id.

On January 30, 2012, Plaintiffs received a letter from TVT, stating that they were

going to foreclose on the property and sell it at a public auction on February 23, 2012, at 2:00 p.m. in Charles Town, West Virginia.  Third Am. Compl., Ex. G.  On February 9, 2012, Plaintiffs faxed a written letter to TVT; PHH Mortgage/InstaMortgage.com; and Morris & Hardwick Law Offices.  Plaintiffs notified the entities that it disputed the debt on their loan, and they asserted that they were current on their payments under the HAMP loan modification.  Third Am. Compl., Ex. H.  On February 10, 2012, TVT confirmed that they had received Plaintiffs' fax that disputed the foreclosure on their property.  Third Am. Compl, Ex. I.  TVT stated that it had put the foreclosure sale on hold until Plaintiffs received the requested documentation.

On February 23, 2012, a PHH representative left a notice on Plaintiffs' doorknob requesting Plaintiffs call PHH at the number provided on the notice.  Third Am. Compl, Ex. J.  On February 28, 2012, Plaintiffs received a letter from TVT stating that on February 23, 2012, "due to a computer error a sales crier . . . attend[ed] the auction and the property reverted to PHH." Third Am. Compl, Ex. M.  TVT represented that it had notified PHH that the sale was in error and would not be consummated.  Id.

On February 29, 2012, PHH notified USAA Insurance that Plaintiffs' property was foreclosed upon as of February 23, 2012.  Third Am. Compl., Ex. O.  On March 14, 2012, USAA Insurance sent Plaintiffs a letter notifying them that their homeowners insurance policy would be canceled on April 14, 2012 due to the foreclosure status of their home.  Third Am. Compl., Ex. Q.  On June 30, 2012, USAA Insurance sent Plaintiffs a copy of the second bill sent to PHH.  Third Am. Compl, Ex. V.  USAA Insurance stated that they had not yet received payment of their insurance premium. Id.

On July 30, 2012, PHH sent a letter to Plaintiffs stating that their payment of

$1,440.42 would be returned because it was insufficient to bring their account current. Third Am. Compl, Ex. R. On September 5, 2012, PHH sent a letter to Plaintiffs returning their payment of $2,880.04 because it was insufficient to bring their account current. Third Am. Compl., Ex. T.

## II. PROCEDURAL HISTORY

On March 6, 2012, Plaintiffs filed their Complaint in the Circuit Court of Jefferson County, West Virginia alleging that Defendant PHH Mortgage Corporation ("PHH") violated the West Virginia Consumer Credit and Protection Act § 46A-2-101 *et seq.* ("WVCCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* On April 27, 2012, the defendants removed the case to the Northern District of West Virginia at Martinsburg pursuant to 28 U.S.C. §§ 1441 and 1446.

Plaintiffs later amended their complaint two times to add claims for violations of the FDCPA, tortious interference with contractual relations, trespass, fraud, and breach of contract. On December 10, 2012, Defendant filed a Motion to Dismiss Plaintiffs' Third Amended Complaint. On March 27, 2012, this Court entered a Memorandum Opinion and Order granting in part and denying in part Defendant's motion. This Court denied Defendant's Motion to Dismiss nine claims under the WVCCPA, a breach of contract claim, a tortious interference with contract claim, and a tort of trespass claim.

Thereafter, the parties engaged in discovery. On September 27, 2013, Plaintiffs filed their motion to compel. On November 22, 2013, Defendant filed this Motion for Summary Judgment on all remaining claims. On December 11, 2013, Plaintiffs requested an extension of time to file their Response to Defendant's Motion for Summary Judgment because their motion to compel was still pending in front of

4

Magistrate Judge Seibert.  Therefore, Plaintiffs requested an extension of thirty days to file their response after Judge Seibert entered an Order regarding the pending motion to compel.  On December 12, 2013, this Court granted Plaintiffs' request.  Accordingly, Plaintiffs were required to file their response to PHH's Motion for Summary Judgment as follows: (1) if the motion to compel was granted in whole or in part, Plaintiffs had thirty days from the date the discovery responses were due to file their response to PHH's Motion for Summary Judgment, but (2) if the motion to compel was denied, Plaintiffs had thirty days from the date of Magistrate Judge Seibert's Order to file their response.

On December 12, 2013, Magistrate Judge Seibert entered an order granting in part Plaintiffs' motion to compel.  Defendant was ordered to respond to Plaintiffs' discovery requests within seven days of the date of Magistrate Judge Seibert's Order. Therefore, Plaintiffs were required to file their Response to PHH's Motion for Summary Judgment thirty days from December 19, 2013.  On January 14, 2014, Plaintiffs filed their Response to Defendant's Motion for Summary Judgment.  On January 31, 2014, Defendant filed its Reply.

### III.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. See Fed. R. Civ. P. 56.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

5

242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. Pursuant to Rule 56(c)(3), the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

## IV. ANALYSIS

The Court addresses two issues below: Plaintiffs' Federal Rule of Civil Procedure 56(d) motion made in their Response and (2) Defendant's Motion for Summary Judgment on all remaining claims.

### 1. Plaintiffs' Federal Rule of Civil Procedure 56(d) Motion

Generally, summary judgment should only be granted "after adequate time for discovery." See Celotex Corp., 477 U.S. 317, 322 (1986). Rule 56(d) of the Federal Rules of Civil Procedure applies when facts are unavailable to the nonmovant. Section 56(d) states:

6

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it
> cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "Summary judgment *before* discovery forces the non-moving

party into a fencing match without a sword or mask."  McCray v. Md. Dep't of Transp.,

Md. Transit Admin., 2014 WL 323272 at *3, ___ F.3d ___ (4th Cir. 2014).  A court must

grant a Rule 56(d) motion "where the nonmoving party has not had the opportunity to

discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet

Domain Names, 302 F.3d 214, 244 (4th Cir. 2002).  However, the Rule 56(d)

declaration must specify the material facts the party needs to discover.  McCray, 2014

WL 323272 at *3 (noting the party filed a declaration that identified the material facts

she needed to discover).

   In this case, at the time Plaintiffs' response was initially due in early December

2013, this Court granted Plaintiffs' request for additional time to respond due to the

unresolved discovery issues.  The Court crafted a remedy that permitted Plaintiff an

additional thirty days to file its response from the date Defendant responded to Plaintiffs'

outstanding discovery requests.  Despite the Court granting additional time for Plaintiffs

to prepare their response, Plaintiffs attached no supporting affidavits or exhibits to their

response.  Instead, Plaintiffs assert that there are "numerous facts which are not only in

dispute but prove the Plaintiffs['] claims . . . ." Resp., p. 13.  Therefore, Plaintiffs filed a

declaration pursuant to Rule 56(d).

   The Fourth Circuit Court of Appeals has held that a Rule 56(d) request may be

denied if "the additional evidence sought for discovery would not have by itself created a

genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted); McKinnon v. Blank, Civil Action No. 12-1265, 2013 WL 781617 at *10 (D. Md. Feb. 28, 2013) (denying a Rule 56(d) request because it amounted to a "fishing expedition").  Plaintiffs did not identify the material facts they still need to discover. Rather, Plaintiffs declaration vaguely states they will "seek information held by third parties who appear to have been vendors and/or agents of PHH who participated in the handling of the Plaintiffs' mortgage account" and "seek supplemental and additional discovery from PHH."  These broad assertions do not demonstrate that additional evidence sought for discovery would create a genuine issue of material fact sufficient to defeat summary judgment.  Indeed, Plaintiffs state that with additional discovery they may "uncover *additional* facts and evidence in support of their claims and to defeat the Defendant's defenses."  Although Plaintiffs may desire additional evidence to support their claims, Plaintiffs engaged in sufficient discovery to present facts essential to justify their opposition to Defendant's Motion for Summary Judgment

Plaintiffs also state that they "intend to depose PHH's corporate representative about evidence that is described but has not been produced."  As Defendant aptly pointed out in its Reply, Plaintiffs set the Rule 30(b)(6) representative's deposition at least six times, and they have unilaterally postponed the deposition five times.  For example, Plaintiffs had scheduled the Rule 30(b)(6) deposition for December 20, 2013, but it was postponed when the Court granted Plaintiffs' Motion to Modify the Amended Scheduling Order on December 19, 2013.  Therefore, Plaintiffs have delayed the taking of the Rule 30(b)(6) representative for nearly five months from the date it was first set to

8

take place.  A nonmoving party does not receive Rule 56(d) protection where the nonmoving party had an opportunity to conduct discovery but chose not to.  McCray, 2014 WL 323272 at *3 (citing Harrods, 302 F.3d at 246).

Therefore, this Court does not find that Plaintiffs are entitled to the protections of Rule 56(d).  Plaintiffs failed to specify material facts in their declaration that they still need to discover that are "essential" to justify its opposition.  Fed. R. Civ. P. 56(d).  Plaintiffs have also been dilatory in pursing discovery.  The parties have been engaging in discovery since at least June 22, 2012, over a year and a half from the date of this order.  This is not a case where Plaintiffs have not had the ability or time necessary to engage in any discovery.  Compare Harrods, 302 F.3d at 245 (holding the district court improperly denied a Rule 56(d) motion where summary judgment was granted six weeks after the complaint was filed and there had been almost no discovery conducted in the case).  Indeed, the Court even granted a significant extension in responding to Defendant's Motion for Summary Judgment until after the remaining outstanding discovery issues were resolved.  Plaintiffs' inability to gather evidence to respond to Defendant's Motion for Summary Judgment is due to their own delay.  Accordingly, Plaintiffs' Rule 56(d) motion is **DENIED**.

### 2.      Defendant's Motion for Summary Judgment on Plaintiffs' Remaining Claims

Defendant moves for summary judgment on Plaintiffs' remaining twelve claims.  The Court addresses each claim below.

### a.      Statements of Accounts – West Virginia Code § 46A-2-114

Plaintiffs allege that PHH on multiple occasions violated West Virginia Code      §

9

46A-2-114 "by failing to provide the Plaintiffs with a statement of their account or monthly statement showing the receipt of payment and application of the payment to the outstanding debt, from February 2011 to the filing of this Amended Complaint." Compl. ¶ 108.

First, PHH argues that under West Virginia Code § 46A-2-114(1), it was not required to provide a receipt without a request because Plaintiffs did not pay with "coin or currency." Section 46A-2-114(1) provides that the creditor must "deliver or mail to the consumer, without a request, a written receipt for each payment by coin or currency." Although "coin or currency" is not defined by this statute, a different title and section under the  West Virginia Code, § 29-22B-331(4), compares "coin or currency" to tokens and implies that it is limited to tangible money. Additionally, in the Merriam Webster's dictionary "coin" is commonly defined as "a usually flat piece of metal issued by governmental authority as money" and "currency" is defined as "the money that a country uses: a specific kind of money." Russell Patrick admitted in his deposition that payments were never made by coin or currency. Plaintiffs have not provided any evidence, through affidavit or otherwise, that creates a genuine issue of material fact regarding this issue.

Second, PHH argues that Plaintiffs admitted they never made a written request to PHH for a statement of their account. West Virginia Code § 46A-2-114(2) provides that upon a written request by the consumer, the creditor must "provide a written statement of the dates and amounts of payments made within the past twelve months and the total amount unpaid." Plaintiff Russell Patrick also admitted that he never requested a statement of his account. Plaintiffs have not pointed to any affidavit or

evidence to the contrary to create a genuine issue of material fact.  Therefore,

Defendant's Motion for Summary Judgment on this claim must be **GRANTED**.

### b.  Limitation on Default Charges – West Virginia Code § 46A-2-115

Plaintiffs allege that PHH held "multiple payments made by the Plaintiffs and

failed to properly apply the payments to principal and interest as required by the terms

of the note, deed of trust and applicable legal provisions . . . from February 2011 to the

filing of this Amended Complaint."  Compl. ¶ 109.  PHH argues that Plaintiffs have not

pointed to any evidence or raised a genuine issue of material fact that PHH held

multiple payments and failed to properly apply them to principal and interest.

The statute provides that "[a]ll amounts paid to a creditor arising out of any

consumer credit sale or consumer loan shall be credited upon receipt against payments

due . . . ." W. Va. Code § 46A-2-115.   Defendant has pointed to an absence of a

genuine issue of material fact, specifically by attaching Exhibit 11, the Customer

Account Activity Statement, which does not reveal any instance where PHH failed to

properly apply Plaintiffs' payments to principal and interest.  Plaintiffs did not produce

any evidence or affidavits showing that there was in fact a genuine issue of material fact

regarding this claim.   Therefore, Defendant's Motion for Summary Judgment as to this

claim is **GRANTED**.

### c.  Threats or Coercion – West Virginia Code § 46A-2-124

Plaintiffs alleged that PHH threatened or coerced them in an attempt to collect its

debt in violation of West Virginia Code § 46A-2-124. Compl. ¶ 110.  Additionally,

Plaintiffs alleged that PHH made statements to USAA Insurance providing false

11

information–that Plaintiffs were foreclosed upon–that resulted in the cancellation of Plaintiffs' homeowners insurance policy.   Compl. ¶ 94.

West Virginia Code § 46A-2-124 provides that "[n]o debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce."  W. Va. Code § 46A-2-124.  Section 46A-2-124 also provides a list of non-exclusive conduct that is deemed to violate the section. Id. Specifically, section 46A-2-124(c) provides that "[f]alse accusations made to another person, including any credit reporting agency, that a consumer is willfully refusing to pay a just debt, or the threat to so make false accusations." Id.  Also, "[t]he use, or express or implicit threat of use, of violence or other criminal means, to cause harm to the person, reputation or property of an person" is deemed to violate this section.

Defendant argues that the only "threats" made by PHH was the threat to foreclose upon Plaintiffs' home.  Defendant also argues that there is an absence of a genuine issue of material fact because no threats of personal or bodily injury were made by PHH and its representatives.  In his deposition, Plaintiff Russell Patrick stated that the threats came from "[l]etters of foreclosure, envelopes left on my doorstep, people coming to my property leaving envelopes and telling me that it is imperative that I speak with these people."  Additionally, he stated that he felt that "bodily injury could come to [h]im."  He felt that he could not "leave my home thinking that the possibility that [he] could come home and [his] stuff could be out on the lawn or packed up in trucks and being locked out of [his] home."

Defendant argues that the threats of foreclosure did not violate § 46A-2-124 because Defendant had a legal right to foreclose.  See Westover Realty Co., Inc. v.

Estate of John Wassick, 523 S.E.2d 267 (W. Va. 1999).  In Westover, the plaintiff had

previously defaulted on four notes guaranteed by defendant. Id. at 269.   Subsequently,

the plaintiff entered into a consolidated note with the defendant in exchange for the

defendant agreeing to forego foreclosure with respect to the deeds of trust securing the

four previous notes.  Id.   Later, the plaintiff argued the consolidated note was

unenforceable because the defendant's threats of foreclosure made the plaintiff enter

into the consolidate note under duress.  Id. at 272.  The court upheld the jury's verdict

that the plaintiff entered into the consolidated note voluntarily without duress.  Id.  The

court held that "[t]hreatening to do something that you have a legal right to

do–foreclosure–does not amount to duress."  Id.

In this case, Plaintiffs admit that they failed to make mortgage payments for the

following months in 2010: January, April, July, October, and December.  Def.'s Mem.,

Ex. 10.  However, Plaintiffs also claimed that they "were awaiting a final loan

modification after being informed by PHH that the modification agreement executed by

the Plaintiffs and delivered to PHH after the successful trial period contained errors."

Plaintiffs also claim that they "were not told what their actual payment was and were told

by PHH that it would be sending them a new modification agreement."   Last, Plaintiffs

stated that they were told "their modification would be effective as of January 2011 after

it was executed by PHH and properly recorded."  Therefore, a genuine issue of material

fact exists as to whether Defendant had a legal right to foreclose because the parties'

dispute when the modification agreement took effect and what the amount of monthly

payment were under the modification agreement.  If Defendant did not have the legal

right to foreclose, then its actions threatening foreclosure may have violated West

Virginia Code § 46A-2-124.  Accordingly, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

> **d.** **Fraudulent, Deceptive or Misleading Representations – West Virginia Code § 46A-2-127**

Plaintiffs alleged that PHH misrepresented the amount of the obligation due and used fraudulent and misleading representations in an attempt to collect its debt in violation of West Virginia Code § 46A-2-127.  Compl. ¶ 112.  Plaintiffs stated that PHH improperly charged or represented charges not permitted by their contract or law as well as used fraudulent and misleading representations in attempting to collect its debt.  Compl. ¶¶ 113-114.  Plaintiffs specifically allege that PHH sought "collection of past due amounts that were no longer due and violated the terms of the HAMP agreement."  Compl. ¶ 42.  Also, Plaintiffs state that PHH sent "threatening letters misrepresenting the debt and claiming a default when none existed."  Compl. ¶ 50.  Plaintiffs also alleged that PHH improperly charged default interest, late fees, and property preservation fees on Plaintiffs' account even though they were in full compliance with the terms of the HAMP agreement.  Compl. ¶¶ 43-45.

West Virginia Code provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127.  The section provides an example of conduct that violates this section: "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding."  Id.  Section 46A-2-127 provides a second pertinent example of conduct that violates it: "[a]ny representation that an existing obligation of

14

the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." W. Va. Code § 46A-2-127(g).

Defendant points to Russell Patrick's deposition as well as other exhibits to demonstrate the absence of a genuine issue of material fact. Plaintiffs, in Russell Patrick's responses to Defendant's Requests for Admissions, admitted that the modification agreement states it would bring Plaintiffs' loan current by endorsing the HAMP agreement. However, Plaintiffs deny that their loan was brought current as a result of the HAMP agreement because Plaintiffs did not receive a copy of the HAMP agreement until May 2010 and it was not finalized until December 2010. Plaintiffs further averred that PHH's agents misrepresented the character and extent of the amount due because they were told that their first payment was not due until January 2011. Accordingly, a genuine issue of material fact exists regarding whether PHH made fraudulent, misleading, or deceptive representations in violation of West Virginia Code § 46A-2-127, and Defendant's Motion for Summary Judgment in regards to this claim is **DENIED**.

> **e.** **Unfair or Unconscionable Means – West Virginia Code § 46A-2-128**

Plaintiffs allege that PHH "employ[ed] unfair and/or unconscionable means in an attempt to collect its debt beginning February 2011 and continuing each month until the filing of this Amended Complaint in violation of *West Virginia Code* § 46A-2-128." Compl. ¶ 115. Plaintiffs specifically allege that PHH "was informed by the Plaintiffs that they were represented by counsel, provided the name and telephone number of

15

counsel, and subsequently communicated with the Plaintiffs when it knew or should have known they were represented by counsel in violation of *West Virginia Code* § 46A-2-128(e)."  Compl. ¶ 116.

Section 46A-2-128 provides that "[n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim."  W. Va. Code § 46A-2-128.  The statute designates conduct that is "deemed to violate this section" including "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication." W. Va. Code § 46A-2-128(e).

By February 28, 2012, Plaintiffs had retained counsel.  Pl.'s Third Am. Compl., Ex. L.  On July 30, 2012, PHH directly contacted Plaintiffs regarding their debt rather than contacting Plaintiffs' counsel.  Id. Ex. R, Ex. S.  On September 5, 2012, PHH directly contacted Plaintiffs regarding their debt rather than contacting Plaintiffs' counsel.  Id., Ex. T, Ex. U.

Defendant argues that the communications are not an attempt to collect a debt, therefore, it could not have engaged in unfair or unconscionable means to collect a debt in violation of West Virginia Code § 46A-2-127.  See Spoor v. PHH Mortg. Corp., Civil Action No. 5:10-CV-42, 2011 WL 883555 (N.D.W. Va. Mar. 11, 2011).  In Spoor, the Court held that defendant's evaluation of a loan modification request by the plaintiff did "not involve the collection of a debt."  Id. at *7.  The Court found that the defendant was not engaging in debt collection because "no payment is received in connection with

16

simply considering a loan modification." Id.  Defendant argues that like Spoor the communications did not concern the collection of a debt because Plaintiffs' payments were actually returned to them. Although Defendant returned Plaintiffs' payments, Defendant also stated that the amount was being "returned as it is insufficient to bring [Plaintiffs'] account current" and that they should contact the foreclosure attorney to bring their account current or to determine the amount necessary to bring their account current.  Therefore, Defendant's letter specifically concerned an existing debt and instructed them how to bring their account current.  Thus, a genuine issue of material fact exists as to whether PHH knew or had reason to know Plaintiffs were represented by counsel at the time PHH sent them the July 2012 and September 2012 letters. Accordingly, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

### f.      Unreasonable Publication– West Virginia Code § 46A-2-126

Plaintiffs alleged that PHH unreasonably publicized "information relating to any alleged indebtedness of the Plaintiffs when it knew or had reason to know that the debt was not owed as claimed by the Defendants in violation of *West Virginia Code* § 46A-3-126." Compl. ¶ 125.  West Virginia Code § 46A-2-126 provides that "[n]o debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer."  W. Va. Code § 46A-2-126.  Conduct that is deemed to violate this section includes "[t]he disclosure, publication or communication of information relating to a consumer's indebtedness to any other person other than a credit reporting agency, by publishing or posting any list of consumers, commonly known as 'deadbeat lists,' except lists to prevent the fraudulent use of credit accounts or credit cards, by advertising for sale any claim to enforce payment thereof, or in any manner other than through proper

legal action, process or proceeding." W. Va. Code § 46A-2-126(c).

On February 9, 2012, Plaintiffs sent a letter to PHH disputing the amount of debt they owed on their mortgage loan.  They asked PHH to cancel the foreclosure sale and issue a letter stating their loan, as modified, was current.  Pl.'s Third Am. Compl., Ex. H. On February 10, 2012, a representative of TVT confirmed that the February 23, 2012 foreclosure sale was put on hold.  Id., Ex. I. However, "due to a computer error a sales crier did attend the auction and the property reverted to PHH. [Teays Valley Trustees] notified [PHH] that such sale was in error."  Id., Ex. M.

Plaintiffs' exhibits create a genuine issue of material fact as to whether PHH unreasonably publicized information relating to Plaintiffs or their alleged indebtedness as the foreclosure sale was supposed to be cancelled until Plaintiffs' indebtedness and the propriety of the sale was determined, but it proceeded as a result of a computer error.  Additionally, after the erroneous foreclosure sale, PHH contacted USAA Insurance to notify them of the foreclosure sale and to cancel the policy.  Id., Ex. O. Plaintiffs have presented sufficient evidence to demonstrate a genuine issue of material fact as to whether the foreclosure sale was proper and whether PHH provided false information to USAA Insurance in violation of West Virginia Code § 46A-2-126. Accordingly, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

### g. Delinquency Charges on Precomputed Consumer Credit Sales or Consumer Loans– West Virginia Code § 46A-3-112

Plaintiffs allege that PHH violated this section by improperly charging and representing as charged late fees or default fees on Plaintiffs' account beginning in February 2011 and continuing each month until the filing of Plaintiffs' Amended

Complaint.  Compl. ¶ 124.

West Virginia Code § 46A-3-112 provides that "[n]o delinquency charge may be collected on an installment which is paid in full within ten days after its scheduled or deferred installment due date, even though an earlier maturing installment or a delinquency or deferral charge on an earlier installment may not have been paid in full." W. Va. Code § 46A-3-112(3).

Defendant has pointed to an absence of a genuine issue of material fact—mainly, that no late charges, if any, were wrongfully charged.  In reviewing Defendant's attached exhibits as well as the other documents on file and attached to Plaintiffs' Third Amended Complaint, there is no evidence that any late charges were filed.  Indeed, the Plaintiffs' Loan Activity does not show any late charges posted to Plaintiffs' account. Def.'s Mem., Ex. 13.  Also, letters from PHH Mortgage in April 2011 and May 2011, specifically state that "$.00 in late charges have also accrued."  <u>See</u> Def.'s Mem., Ex. 13, p. 23-24.  Accordingly, the Defendant's Motion for Summary Judgment as to this claim is **GRANTED** because there is no genuine issue of material fact and no evidence that Defendant even charged a delinquency fee beginning in February 2011.

> **h.    Additional Charges- West Virginia Code § 46A-3-109 and Advances to Perform Covenants of Consumer- West Virginia Code § 46A-3-115**

West Virginia Code § 46A-3-109 provides that a creditor "may contract for and receive the following additional charges in connection with a . . . consumer loan: (2) Charges for insurance as described in subsection (b) of this section."  Subsection (b) provides that a creditor "may take, obtain or provide . . . reasonable insurance on any

19

real or personal property offered as security." Also, "[w]hen the insurance is obtained or provided by or through a creditor, the creditor may collect from the consumer or include . . . as part of the principal of a consumer loan . . . the identifiable charge." W. Va. Code § 46A-3-109(b)(3). Section 46A-3-109 also provides that "[a]n insurer, seller or creditor who fails to refund any unused insurance premium or provide the proper notification of payoff is liable for civil damages up to three times the amount of the unused premium . . . ." W. Va. Code § 46A-3-109(b)(8).

In this case, Plaintiffs alleged that PHH collected and escrowed funds paid by Plaintiffs for purposes of paying their insurance and that PHH then failed to pay Plaintiffs' insurance premiums from the escrowed funds. Compl. ¶ 130. In Defendant's Motion for Summary Judgment, Defendant argues that Plaintiffs have provided no evidence that PHH ever failed to pay insurance premiums.  Plaintiffs' Third Amended Complaint attached a letter from USAA Insurance, the insurance company providing their homeowners policy, stating that their mortgage company had not paid their premium. Exhibit V.  The letter stated that it was a copy of the second bill sent to PHH Mortgage, and that they had not received payment of their premium.  The notice also stated that Plaintiffs' premium would be added to their next bill if USAA Insurance did not receive payment within twenty days.  However, Plaintiffs provided no evidence that PHH failed to pay the insurance premium or that USAA Insurance cancelled Plaintiffs' insurance due to nonpayment.  Therefore, Plaintiffs failed to demonstrate a genuine issue of material fact, and Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

### i. General Consumer Protection- West Virginia Code § 46A-6-101 *et seq.*

Plaintiffs allege PHH violated West Virginia Code § 46A-6-101 *et seq.* by failing to pay insurance premiums to USAA Insurance from funds collected from Plaintiffs and escrowed to pay the insurance funds and by representing to USAA Insurance that Plaintiffs' property was foreclosed upon.  Plaintiffs allege PHH's actions constituted an unfair and deceptive practice.  Compl. ¶¶ 94, 105.  West Virginia Code § 46A-6-104 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Additionally, West Virginia Code § 46A-6-102 defines "unfair methods of competition and unfair or deceptive acts or practices" to include, but not be limited to "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" and "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omissions of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby."  W. Va. Code § 46A-6-102(L), (M).

Plaintiffs allege that PHH knew the foreclosure sale had occurred in error and that no trustee's report of foreclosure sale had been filed, no deed recorded or other evidence confirming the foreclosure sale and that PHH on February 29, 2012, intentionally and willfully provided false information to USAA Insurance in an attempt to seek the cancellation of the Plaintiffs' homeowners insurance policy. Compl. ¶ 94.  In

21

this case, it is unclear when PHH knew the February 23, 2012 foreclosure sale occurred in error.  In its memorandum, PHH states that on February 23, 2012, TVT logged an entry in a document sharing platform, which indicated to PHH that the foreclosure sale had been held.  PHH relies on Exhibit 20, entry number 178, for this proposition.  Exhibit 20 was not attached to PHH's memorandum; therefore, they have not pointed to an absence of a genuine issue of material fact.  Indeed, in reviewing the exhibits on file and attached to Plaintiffs' Third Amended Complaint, TVT represented that the foreclosure sale was put on hold and would not occur.  See Pl.'s Third Am. Compl., Ex. L.  Then, on February 28, 2012, the Substitute Trustee stated that they notified their client PHH that the sale occurred in error.  Pl.'s Third Am. Compl, Ex. M.  However, on February 29, 2012, PHH notified USAA Insurance of the foreclosure sale.  Therefore, a genuine issue of material fact exists regarding when PHH knew the foreclosure sale occurred in error, specifically whether PHH knew the foreclosure sale occurred in error before it notified USAA Insurance of the foreclosure sale.  Accordingly, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

### j.    Plaintiffs' Count V: Breach of Contract

In Count V, Plaintiffs claim that PHH "breached the terms of the note and deed of trust as originally executed by the parties and later modified by agreement upon due consideration and agreement as well as executed under the provisions of the Home Affordable Modification Program."  Compl. ¶ 150.  In support of their breach of contract claim, Plaintiffs allege the following: (1) PHH was compensated for participating in the HAMP program and received funds based upon Plaintiffs' successful participation in HAMP; (2) PHH intentionally and willfully breached its contractual obligations by refusing

to pay the homeowners insurance premiums required to preserve and protect the residential property, despite having escrowed the funds and having sufficient funds to remit immediate payment; (3) PHH failed to pay the homeowners insurance premiums in retaliation against Plaintiffs for filing this civil action; and, (4) Plaintiffs advanced money for homeowners insurance to preserve and protect the property despite having already advanced funds necessary for the payment of insurance and taxes to PHH.  Compl.  ¶¶ 151-53.

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach.  See Wince v. Easterbrooke Cellular, Corp., 681 F. Supp. 2d 688, 693 (N.D.W. Va. 2010).  Additionally, "[a] modification of a contract requires the assent of both parties to the contract and mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."  Wheeling Downs Racing Ass'n v. W. Va. Sportservice, 199 S.E.2d 308, 311 (W. Va. 1973).

In Defendant's Motion for Summary Judgment, Defendant argues that Plaintiffs have provided no evidence and point to no proof that PHH ever failed to pay insurance premiums.   Plaintiffs' Third Amended Complaint attached a letter from USAA Insurance, the insurance company providing their homeowners policy, stating that their mortgage company had not paid their premium. Exhibit V.  The letter stated that it was a copy of the second bill sent to PHH Mortgage, and that they had not received payment of their premium.  The notice also stated that the unpaid premium would be added to the next bill if it went unpaid.  However, Plaintiffs provided no evidence that the insurance policy was

actually cancelled or that PHH failed to pay USAA Insurance within twenty days of receiving the second bill.  Therefore, Plaintiffs have failed to demonstrate a genuine issue of material fact, and Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

### k.    Plaintiffs' Count VI: Tortious Interference with Contract

Under West Virginia law, there are four essential elements for a tortious interference with a contract claim.  Hatfield, 672 S.E.2d at 403.  A plaintiff must prove the following four elements: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and                (4) damages.  Id.

Defendant argues that summary judgment should be granted on Plaintiffs' claim for tortious interference with a contract.  First, PHH argues that Plaintiffs suffered no damages because there was no lapse in coverage.  On March 14, 2012, USAA Insurance sent a letter to Plaintiffs indicating that their homeowners policy would be cancelled on April 14, 2012. Pl.'s Third Am. Compl., Ex. Q.  On June 30, 2012, USAA Insurance sent a copy of a second bill sent to PHH Mortgage that reveals the policy was cancelled on April 14, 2012, but the cancellation was reversed on the same date.  Pl.'s Third Am. Compl., Ex. V.  Defendant argues, in its memoranda, that Exhibit 23 "clearly shows[] the policy was reinstated with no lapse in coverage."  Def.'s Mem., p. 29. However, Defendant failed to attach an Exhibit 23.  Accordingly, a genuine issue of material fact exists as to whether there was a lapse in Plaintiffs' homeowners insurance policy and whether they suffered any damages.

24

Second, PHH argues that it did not wrongfully interfere with the USAA Insurance contract.  PHH contends it properly informed USAA Insurance that the property had been sold at foreclosure because Plaintiffs had not filed a civil action to set aside the foreclosure sale at the time PHH sent its letter to USAA Insurance.  PHH relies on Lucas v. Fairbanks Capital Corp., 618 S.E.2d 488 (W. Va. 2005), to argue that a borrower's only remedies for wrongful foreclosure are to file suit to enjoin it or file suit to set it aside. In Lucas, the borrowers argued that the trustee had a fiduciary duty to consider the legitimate objections of the grantor/homeowner prior to a foreclosure sale.  Id. at 497. However, the West Virginia Supreme Court of Appeals held that the trustee in a trust deed has limited powers and "may not consider a trust grantor's objections to the foreclosure sale.  Instead, where the trust grantor wishes to challenge a foreclosure, the proper remedy is for the grantor to seek an injunction or to file an action to have the foreclosure sale set aside."  Id. at 498.

In this case, PHH was not the trustee, and it did not have an obligation to consider Plaintiffs' objections to the foreclosure sale.  However, the issue is whether PHH knew the February 23, 2012 foreclosure sale occurred in error.  In its memorandum, PHH states that on February 23, 2012, TVT logged an entry in a document sharing platform, which indicated to PHH that the foreclosure sale had been held.  PHH relies on Exhibit 20, entry number 178, for this proposition.  Exhibit 20 was not attached to PHH's memorandum.  Therefore, PHH has not pointed to an absence of a genuine issue of material fact.  Indeed, in reviewing the exhibits on file and attached to Plaintiffs' Third Amended Complaint, TVT represented that the foreclosure sale was put on hold and would not occur.  See Pl.'s Third Am. Compl., Ex. L.  Therefore, a genuine issue of

material fact exists regarding whether PHH intentionally interfered with Plaintiffs' insurance contract with USAA Insurance.  Accordingly, Defendant's Motion for Summary Judgment as to this claim is **DENIED**.

### I.        Plaintiffs' Count VII: Tort of Trespass

"Under West Virginia law, to constitute a trespass, the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property."  Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 96 (4th Cir. 2011); see also Hark v. Mountain Fork Lumber Co., 34 S.E.2d 348, 352 (W. Va. 1945) ("Trespass is defined . . . as an entry on another man's ground *without lawful authority*, and doing some damage, however inconsiderable, to his real property." (emphasis added)).  If an owner has consented to an alleged trespass, "they cannot recover in an action of tort for the harm resulting from it."  Perrine v. E.I. du Pont de Nemours & Co., 694 S.E.2d 815, 846 (W. Va. 2010) (quoting Restatement (Second) of Torts § 892A(1) (1979)).

PHH argues that Plaintiffs consented to PHH making reasonable entries upon their land.  The HAMP Agreement provides that Plaintiffs are bound by and will comply with all of the terms and conditions of the Loan Documents. Ex. 5, ¶ 4.F.; Ex. 6, ¶ 4.F. The Deed of Trust at Uniform Covenant Number 7 provides that the "Lender or its agent may make reasonable entries upon and inspections of the Property."  Def.'s Mem., Ex. 4. Additionally, PHH was only required to give notice at the time or prior to an interior inspection of the property. Id.  PHH and Plaintiffs agreed to these provisions permitting PHH and its agent to make reasonable entries.

Plaintiffs admit that they were not prevented from possessing their property by a

26

PHH agent placing a door hanger on their door and coming to their door and asking when they would vacate their home.  Therefore, PHH's agents did not unreasonably enter the property by hanging a notice on Plaintiffs' doorknob or knocking on their door. See Webb v. Green Tree Servicing, LLC, Civil Action No. ELH-11-2105, 2013 WL 5442423, *23-24 (D. Md. Sept. 30, 2013) (granting summary judgment on the plaintiff's claim of trespass when the plaintiff consented to the lender's reasonable entries and the lender's agents entered the property and looked into the front window of the empty home); Moseley v. CitiMortgage, Inc., No. C 11-5349RJB, 2011 WL 5175598 (W.D. Wash. Oct. 31, 2011) (granting summary judgment on the plaintiff's claim of trespass when he consented to the lender's reasonable entries and lender's agent merely placed notices on the home's doorknob).  Plaintiffs have failed to point to any evidence demonstrating that PHH or its agents' limited entries were unreasonable.  Accordingly, Defendant's Motion for Summary Judgment as to this claim is **GRANTED**.

### V.   CONCLUSION

Accordingly, the Court **ORDERS** the following:

1. Plaintiffs' Motion pursuant to Federal Rule of Civil Procedure 56(d) is **DENIED**;

2.  Defendant's Motion for Summary Judgment on the following claims is **DENIED:**

       a.  Threats or Coercion- West Virginia Code § 46A-2-124;

       b.  Fraudulent, Deceptive or Misleading Representations- West Virginia Code § 46A-2-127;

       c.  Unfair or Unconscionable Means- West Virginia Code § 46A-2-128;

       d.  Unreasonable Publication- West Virginia Code § 46A-2-126;

e.  General Consumer Protection- West Virginia Code § 46A-6-101, *et seq.*; and

f.  Count VI: Tortious Interference with Contract.

3.  Defendant's Motion for Summary Judgment on the following claims is **GRANTED**:

a.  Statements of Accounts- West Virginia Code § 46A-2-114;

b.  Limitation on Default Charges- West Virginia Code § 46A-2-115;

c.  Delinquency Charges on Precomputed Consumer Credit Sales or Consumer Loans- West Virginia Code § 46A-3-112;

d.  Additional Charges- West Virginia Code § 46A-3-109 and Advances to Perform Covenants of Consumer- West Virginia Code § 46A-3-115;

e.  Count V- Breach of Contract; and,

f.  Count VII- Tort of Trespass.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** February 25, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE